# EXHIBIT B

Letter from the Ohio Attorney General to Governor DeWine dated June 27, 2025



Administration
Office 614-728-5458
Fax 614-466-5087

June 27, 2025

The Honorable Mike DeWine
Governor of the State of Ohio
77 S. High St., 30th Fl.
Columbus, OH 43215

Re: Browns Brook Park Stadium Project and Unclaimed Funds Escheatment Language in House Bill (HB) 96

Dear Governor DeWine:

I am writing to urge you to exercise your line-item veto authority on language that would escheat taxpayer dollars toward sports stadium construction projects statewide.

As you are aware, the legislature has proposed the establishment of a statutory right for the state to escheat existing unclaimed funds that are at least 10 years old as of January 1st, 2026. This timeline makes Ohio an outlier nationally and risks inadvertently harming taxpayers unaware they have money in the state's unclaimed funds.

All 50 states have enacted some form of unclaimed property law.[1] "Although one purpose of such acts is to protect the missing owners, the primary rationale behind this legislation is its use as a revenue raising device."[2] Generally, those laws ensure that "the state receives the use of the property as well as any income that it may provide" until there is a valid "a claim by the missing owner."[3]

But just because some states use unclaimed property for revenue, cutting off property rights definitively after 10 years would deviate from the norm. As one commentator described the general rule, state unclaimed property "statutes require the return of the property (or its value, if it was sold) to the owner on demand, regardless of how much time has elapsed."[4] Indeed, the Uniform Unclaimed Property Act ensures that

---

[1] *See What is Unclaimed Property?,* Nat'l Ass'n Unclaimed Prop. Administrators, http://www.unclaimed.org/what/ (last visited June 27, 2025).
[2] *Louisiana Health Serv. & Indem. Co. v. McNamara*, 561 So. 2d 712, 716 (La. 1990).
[3] *Ibid.*
[4] John V. Orth, *Escheat: Is state the last heir?* 13 Green Bag 2d 73, 80 (2009).

the rightful owner of property can always state their claim. As the comment to Section 16 of the 1995 version of that model legislation explains, "The owner's rights are never cut off; under this Act, the owner's rights exist in perpetuity."[5] The comments to the 2016 version of the Uniform Unclaimed Property Act, which ten states have enacted, are even clearer; under that model legislation, "states are not entitled to use these funds, without ensuring that the funds will be available to apparent owners if and when they come to claim them."[6]

Even states that have not adopted the Uniform Unclaimed Property Act make clear that the state must pay a rightful claim. For example, consider Pennsylvania's law, which directs unclaimed funds be used to pay the victims of crime, but also makes clear that "[n]otwithstanding any other provision of this subsection, the State Treasurer shall make reimbursements and prompt payment of claims for funds received."[7]

The proposal in the budget is quite different from this mainstream principle. It not only uses unclaimed funds for public benefit in the interim until a claim is made, but fully cuts off claims after 10 years, starting in 2036.[8]

While I appreciate funding was provided to the Department of Commerce to advertise these funds, I remain concerned that many Ohioans—some still unaware they are entitled to **their** monies—will lose out due to this change. The statutory taking of public funds without clear public benefit is poor policy.

Billionaires should finance their own stadiums—full stop. The $600 million handout for a single professional sports facility raises serious concerns about fiscal sustainability and fairness. While public-private partnerships can sometimes support community development, this provision risks prioritizing one private entity over more urgent statewide needs—such as lowering childcare costs to boost workforce participation or easing the property tax burdens that weigh heavily on **every** Ohio homeowner. Most Ohioans will never set foot in the proposed Brook Park stadium or similar venues—whether due to lack of interest, team affiliation, or the unaffordable cost of attending professional sporting events. Too often, Ohio taxpayers are left on the sidelines while the wealthiest score with public money.

Moreover, what about Ohio's other major sports teams? As the saying goes, if you give a mouse a cookie, they'll want a glass of milk—public money is not the milk.

---

[5] Comment, Unif.Unclaimed Property Act 1995 §16.
[6] Comment, Unif.Unclaimed Property Act 2016 §804.
[7] 72 Pa. Stat. Ann. §1301.18(a)(6).
[8] *See* HB96, Section 169.08(I)).

While the proposed Cultural and Sports Facility Performance Grant Fund aims to cover all venues, how can we be certain it will remain solvent for years to come? What happens when the Guardians and Reds seek similar funding to replace aging stadiums? And what occurs when the unclaimed funds well inevitably runs dry?

This is an opportunity to pause and reconsider the best way to support economic development while maintaining public trust. A thoughtful pause now would allow policymakers to explore options that are more fiscally responsible and beneficial to the 11.9 million Ohioans you and I serve.

I continue to appreciate your leadership on behalf of the State of Ohio and appreciate your consideration of my request.

Yours,

Dave Yost
Ohio Attorney General