UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MARY BLEICK**, *et al.*, | ) Case No.: 2:25-cv-01140 |
| Plaintiffs, | ) Judge Algenon L. Marbley |
| v. | ) |
| **SHERYL MAXFIELD**, in her official capacity as Director of Commerce, *et al.*, | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION TO DISMISS OR STAY PLAINTIFFS' COMPLAINT ON ABSTENTION GROUNDS**

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941), and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), Defendants Sheryl Maxfield (in her official capacity as Director of the Ohio Department of Commerce), Akil Hardy (in his official capacity as Superintendent of the Ohio Division of Unclaimed Funds), Robert Sprague (in his official capacity as Ohio Treasurer), and Joy Bledsoe (in her official capacity as Executive Director of the Ohio Facilities Construction Commission) move to dismiss or stay Plaintiffs' Complaint.

This case should be dismissed or stayed under the *Colorado River*, *Pullman*, and/or *Burford* abstention doctrines. Plaintiffs filed a virtually identical lawsuit in Ohio state court, where there are now-pending ripe motions to dismiss and to strike class allegations.[1] Plaintiffs had sought an extension of time to respond to those motions in state court but have now missed that extended

---

[1] The differences between the state court lawsuit and the Complaint here appear to be: (1) the addition of another named Plaintiff (who does not assert any claims different from the other Plaintiffs); (2) updated references from the Ohio Rules of Civil Procedure to the Federal Rules of Civil Procedure; and (3) an update of certain claims to address state versus federal court nuances.

deadline. Instead, the day after their deadline to respond to those motions passed, they filed this lawsuit, seeking identical relief, while their state court action remains pending. While they are apparently looking for a more favorable forum in which to assert their claims, their gamesmanship runs afoul of the *Colorado River*, *Pullman*, and *Burford* abstention doctrines, which counsel in favor of either a dismissal or stay of this lawsuit.[2]

In accordance with Local Rule 7.1(a)(1), this Motion is accompanied by a memorandum in support.

Respectfully submitted,

*/s/ Aneca E. Lasley*
Aneca E. Lasley (OH 0072366)
Andrea E. Howell (OH 0101138)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, Ohio 43215
Tel: (614) 462-2700/Fax: (614) 462-5135
Aneca.Lasley@icemiller.com
Andrea.Howell@icemiller.com

Joshua Klarfeld (OH 0079833)
ICE MILLER LLP
600 Superior Ave East, Suite 1300
Cleveland, OH 44114
Tel: (216) 394-5063
Joshua.Klarfeld@icemiller.com

*Special Counsel for Defendants Sheryl Maxfield (in her official capacity as Director of the Ohio Department of Commerce), Akil Hardy (in his official capacity as Superintendent of the Ohio Division of Unclaimed Funds), Robert Sprague (in his official capacity as Ohio Treasurer), and Joy Bledsoe (in her official capacity as Executive Director of the Ohio Facilities Construction Commission)*

---

[2] Defendants preserve all defenses to this lawsuit, including those based on sovereign immunity, the failure of the Complaint to state a claim upon which relief can be granted, and the impropriety of having this case proceed as a class action. Should this case proceed, Defendants intend to file one or more appropriate motions raising defenses available to them at that stage in the proceedings.

2

**MEMORANDUM IN SUPPORT**

I. **INTRODUCTION**

Plaintiffs and their counsel have been vocal in the press about their displeasure with a newly enacted Ohio state law, portions of Ohio House Bill 96 ("H.B. 96") that have been codified into Ohio Revised Code § 169. Plaintiffs contend that the recently amended statute results in an unconstitutional taking of their unclaimed, but abandoned, funds from Ohio's Unclaimed Funds Trust Fund ("UFTF"), and they are displeased that those funds will be used to support the construction of cultural and sports facilities.

That unhappiness prompted Plaintiffs to file a lawsuit on July 7, 2025 in state court that is virtually identical to this lawsuit. In the state court action, Plaintiffs are facing two motions, which they failed to oppose. Instead of responding to those motions, Plaintiffs seek to try their hand in a new court, in the hopes they will find a more sympathetic ear. Their claims are no better here than in state court, and the result – dismissal and/or having their class allegations stricken – should be the same. This Court should never reach those issues, though, because Plaintiffs' tactical maneuvers have placed them squarely within the abstention doctrines set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941), and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and their progeny. As Plaintiffs recognized when they filed their original lawsuit, the claims they have asserted, which address the validity of an Ohio statutory and regulatory issue, should be addressed (and disposed of) by the Ohio state courts. Nothing has changed that should permit Plaintiffs to proceed now in federal court.

II. **BACKGROUND**

On July 7, 2025, three of the Plaintiffs in this lawsuit (Mary Bleick, Todd Butler, and Allen Skierski) filed a lawsuit in the Franklin County Court of Common Pleas against the same

1

Defendants named here. That case is captioned *Mary Bleick, et al. v. Sherly Maxfield, et al.*, Franklin County Common Pleas Case No. 25CV005715 (the "State Court Lawsuit"). The Complaint in the State Court Lawsuit purports to assert the following counts, all arising from the enactment of H.B. 96:

| | |
|---|---|
| Count I: | Takings Clause (U.S. Const. amend. V, XIV; 42 U.S.C. § 1983); |
| Count II: | Due Process Clause (U.S. Const. amend. XIV; 42 U.S.C. § 1983); |
| Count III: | Violation of Article I, Section 19 of the Ohio Constitution; |
| Count IV: | Breach of Fiduciary Duty under Ohio Revised Code § 169.01, *et seq.*; |
| Count V: | Violation of the Ohio Constitution – Single Subject Rule; |
| Count VI: | Injunctive Relief Under Ohio Law; and |
| Count VII: | Mandamus; and |
| Count VIII: | Abuse of Legislative Authority/Ultra Vires Act. |

Plaintiffs also attempted to assert those claims on behalf of a class. A copy of the Complaint in the State Court Lawsuit is attached as Exhibit 1.[3]

On September 3, 2025, Defendants filed a Motion to Dismiss and a Motion to Strike Class Allegations (the "State Court Motions"). The State Court Motions should dispose of the State Court Lawsuit in its entirety, given the fundamental and incurable flaws in the legal theories on which Plaintiffs' lawsuit is premised. Copies of the State Court Motions are attached as Exhibits 2 and 3, respectively.

---

[3] Abstention motions are properly asserted under Rule 12(b)(1). *See, e.g.*, *Everett Cash Ins. Co. v. Howell*, 2025 WL 1756889, *2 (S.D. Ohio June 25, 2025); *OMT Addition Ctrs., LLC v. Freedom Healthcare Props. of Texas, LLC*, 770 F. Supp. 3d 1090, 1102 (M.D. Tenn. 2025) (citing *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 916 (6th Cir. 1986)). Where, as here, a defendant challenges subject matter jurisdiction, "the *plaintiff* has the burden of proving jurisdiction in order to survive the motion." *Rogers*, 798 F.2d at 915 (emphasis in original); *see also Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007). A Rule 12(b)(1) motion "can challenge…the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). A factual attack challenges the factual existence of subject matter jurisdiction. *Ritchie*, 15 F.3d at 598. In the case of a factual attack, the Court has broad discretion on what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings. *Id*. The Court may weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. *Id*.

By Rule, Plaintiffs' responses to the State Court Motions were due on September 17, 2025. *See* Ohio R. Civ. P. 6; Franklin County Common Pleas Loc. R. 21.01. On September 12, 2025, Plaintiffs asked Defendants if they would agree to a 14-day extension of time for them to respond to the State Court Motions (until and including October 1, 2025), and Defendants agreed. The Parties filed a joint motion to extend the briefing schedule on the State Court Motions on September 15, 2025, which the State Court granted the next day.

Plaintiffs did not file responses to the State Court Motions on the October 1 deadline they requested. Nor have they filed anything else in the State Court Lawsuit since their request for extension of the briefing deadline. Instead, on October 2, 2025, Plaintiffs filed their Complaint in this case [Doc. 1] ***without dismissing their action in the State Court Lawsuit***.[4] The Complaint in this case is virtually identical to the Complaint in the State Court Lawsuit. It is still premised on Plaintiffs' displeasure with H.B. 96, and purports to assert the following (still deficient) claims:

| | |
|---|---|
| Count I: | Takings Clause (U.S. Const. amend. V, XIV; 42 U.S.C. § 1983) (unchanged from State Court Lawsuit); |
| Count II: | Due Process Clause (U.S. Const. amend. XIV; 42 U.S.C. § 1983) (unchanged from State Court Lawsuit); |
| Count III: | Violation of Article I, Section 19 of the Ohio Constitution (unchanged from State Court Lawsuit); |
| Count IV: | Breach of Fiduciary Duty under Ohio Revised Code § 169.01, *et seq.* (unchanged from State Court Lawsuit); |
| Count V: | Violation of the Ohio Constitution – Single Subject Rule (unchanged from State Court Lawsuit); |
| Count VI: | Declaratory Judgment (in place of Injunctive Relief Under Ohio Law); and[5] |
| Count VII: | Abuse of Legislative Authority/Ultra Vires Act (unchanged from State Court Lawsuit). |

As before, Plaintiffs still seek to assert those claims on behalf of a class.

---

[4] Defendants anticipate this filing will prompt Plaintiffs to dismiss the State Court Lawsuit; however, for the reasons explained below, that should not change the outcome of this Motion. Even if they dismiss the State Court Lawsuit, they still should not be permitted to proceed here until the Ohio state court resolves the parties' dispute.

[5] Plaintiffs omitted the mandamus claim from the Complaint filed in this Court.

3

Nothing has changed between the time Plaintiffs filed the State Court Lawsuit and the filing of the Complaint in this case, except the passage of time and that the State Court Motions have been filed and are now ripe for ruling.

### III. ARGUMENT

#### A. THE *COLORADO RIVER* ABSTENTION DOCTRINE COUNSELS IN FAVOR OF DISMISSING OR STAYING THIS CASE IN FAVOR OF THE STATE COURT LAWSUIT.

The United States Supreme Court has "held that in certain circumstances, the principles of wise judicial administration, conservation of judicial resources, and comprehensive disposition of litigation may warrant abstention on account of parallel state litigation." *Red Roof Inns, Inc. v. A.C. Furniture Co., Inc.*, 2012 WL 628541, *4 (S.D. Ohio Feb. 27, 2012) (citing *Colo. River Water Conserv. Dist.*, 424 U.S. 800 at 817). "The [Supreme] Court recognized that duplicative litigation is wasteful. This is so especially considering that in many cases, the first court to render a judgment will divest the other court of jurisdiction because of the doctrine of *res judicata.*" *Id*. (citation omitted). Thus, the U.S. Supreme Court has authorized federal courts to abstain from taking up certain cases where, as here, there is parallel state litigation.

Under the *Colorado River* doctrine, a federal court is permitted to abstain from ruling in an action where: (1) there is "parallel" litigation pending in state and federal courts, and (2) the proposed litigation in federal court would be duplicative or unwise. *Colo. River Water Conserv. Dist.*, 424 U.S. at 817-18. "[C]onsiderations of judicial economy and federal-state comity may justify abstention in suits involving the contemporaneous exercise of jurisdiction by state and federal courts" under the doctrine. Courts undertake a two-step process in considering whether the *Colorado River* doctrine supports abstention in any particular case: First, the Court "must determine whether the state and federal proceedings are parallel" to one another. *Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390, 393 (6th Cir. 2019) (citation omitted). Second,

4

if the proceedings are parallel, the Court must then examine whether judicial economy warrants abstention. To make this second determination, the Court considers the following eight factors:

> (1) whether the state court has assumed jurisdiction over any res or property;
> (2) whether the federal forum is less convenient to the parties;
> (3) avoidance of piecemeal litigation;
> (4) the order in which jurisdiction was obtained;
> (5) whether the source of governing law is state or federal;
> (6) the adequacy of the state court action to protect the federal plaintiff's rights;
> (7) the relative progress of the state and federal proceedings;
> (8) the presence or absence of concurrent jurisdiction.

*Id*. at 395. These factors are not a "mechanical checklist" but must be carefully balanced in a given case. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983).

### 1. The Federal and State Court Case Are Parallel.

This case easily satisfies the first prong of *Colorado River* – the parallel proceedings prong. The two cases do not need to be completely identical to qualify as parallel proceedings; instead, they just need to be "substantially similar." *See Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998) ("[E]xact parallelism" is not required; "[i]t is enough if the two proceedings are substantially similar." (internal quotations omitted; modifications in original)); *Emerald Logistics, Inc. v. Crutcher*, 2008 WL 3926441, *3, 6 (S.D. Ohio Aug. 25, 2008) (Marbley, J.) (granting stay of federal proceeding under *Colorado River* in favor of state court where complaint raised the same claims as parallel proceeding in state court that had advanced further than the federal proceedings); *Standard Radio Inc. v. Martz*, 2007 WL 9811313, *1 (N.D. Ohio Feb. 15, 2007) (holding that first prong of *Colorado River* is satisfied where "the issues of this [federal court] case are substantially similar to those of the state case.").

Here, Plaintiffs have named the same three defendants as the ones they named in the State Court Lawsuit. Of the seven claims they assert here, six are the same ones they asserted in the

5

State Court Lawsuit.[6] At their core, both lawsuits challenge the constitutionality of H.B. 96. Both lawsuits seek class relief. There is no credible argument that these lawsuits are not parallel.

### 2. "Balancing the [*Colorado River*] Factors and Given the Facts at Hand, Abstention is Proper."[7]

Application of the *Colorado River* factors weigh strongly in favor of abstention.

**Factor 3**: This case presents the very type of "piecemeal litigation" the *Colorado River* doctrine is intended to avoid. *See Emerald Logistics*, 2008 WL 3926441, *4 (identifying the problem with piecemeal litigation);[8] *Healthcare Cap., LLC v. Healthmed, Inc.*, 213 F. Supp. 2d 850, 859 (S.D. Ohio 2002) (Marbley, J.) (granting motion to dismiss based on *Colorado River* abstention doctrine because, among other things, abstention would avoid piecemeal litigation and jurisdiction was obtained by state court seven weeks prior). The Sixth Circuit "defines piecemeal litigation as occur[ing] when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Standard Radio Inc.*, 2007 WL 9811313, *3 (quotations omitted); *Romine*, 160 F.3d at 341 ("In *Moses H. Cone*, the Supreme Court noted 'the consideration that was paramount in *Colorado River* itself – the danger of piecemeal litigation.'") (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 19). Here, both cases ask the Courts to address whether H.B. 96 is constitutional and whether Plaintiffs (and the class they

---

[6] The Sixth seeks similar relief to one of the claims they asserted in the State Court Lawsuit (declaratory judgment instead of an injunction).

[7] *Standard Radio Inc.*, 2007 WL 9811313, *3.

[8] This Court's *Emerald Logistics* decision is one of the leading cases in the Southern District of Ohio on *Colorado* abstention. *See, e.g.*, *Brand Energy Svcs., LLC v. Enerfab Power & Industrial, Inc.*, 2016 WL 6600644, *4 (Nov. 8, 2016) ("As Judge Marbley remarked in *Emerald Logistics*…in concluding that abstention was appropriate under *Colorado River*: It would be especially wasteful to simultaneously litigate this dispute in two [fora] considering that the [state] court will almost certainly render a judgment first and thereby deprive this Court of jurisdiction to resolve the matter because *of res judicata*."); *Red Roof Inn*, 2012 WL 628541, *6 (same, and adding: "But this is not the only cost. The race to judgment also creates perverse incentives for each party to accelerate or stall proceedings in one of the [fora] in order to ensure that the court most likely to rule in its favor will decide a particular issue first." (citations omitted)).

propose to represent) are entitled to relief. Proceeding as Plaintiffs propose is the very definition of "piecemeal litigation."

**Factor 4**: The "order in which jurisdiction was obtained" factor also counsels in favor of abstention. *Plaintiffs* invoked state court jurisdiction in this dispute months before attempting to invoke this Court's jurisdiction. They filed the State Court Lawsuit in July and waited to file this lawsuit until October. This was not even a race to the courthouse – Plaintiffs decided to file in the State Court and only later did they decide to also file in this Court. Just as the court in *Standard Radio Inc.* explained, "the state action is not a reactive suit to attempt to force abstention and forum shop, but was filed first." *Standard Radio Inc.*, 2007 WL 9811313, *3. "*If anything, [Plaintiffs] appear[] to suffer the opprobrium of forum shopping.*" *Id*. (emphasis added).

**Factor 5**: Next, Although some of Plaintiffs' claims purport to arise under federal law, the majority arise under Ohio law. Additionally, Plaintiffs' claims are all premised on the Ohio Legislature's enactment of H.B. 96, which is a state law. These are classic issues of state law, which the State Court is primed to address. Thus, the "source of governing law" factor also favors abstention.

**Factor 6**: There is no reason to believe here that the "state court action" will not "protect the federal plaintiff's rights." Plaintiffs recognized this when they, themselves filed the virtually identical State Court Lawsuit. And, even if Plaintiffs were to argue that the addition of one new individual as a named Plaintiff in the federal court case somehow changes that analysis, they are incorrect. Because Plaintiffs are (misguidedly) challenging the constitutionality of Ohio statutes, all Ohio citizens – including the newly named Plaintiff – are bound by the outcome of those claims. *See Gottlieb v. S. Euclid*, 2004-Ohio-2705, ¶ 33 (8th Dist.) (citing *State ex rel. Horvath v. State Teachers Retirement Bd.*, 1995 WL 141049 (10th Dist.)) ("[A]n individual judgment as to the

7

constitutionality of a statute or ordinance will [i]nure to the benefit of all potential class members because the statute or ordinance will be found either constitutional or unconstitutional.").

**Factor 7**: Next, the state proceedings are more advanced than the proceedings here. There are ripe dispositive motions pending in the State Court Lawsuit. Those motions should resolve that case in its entirety. Proceeding here would amount to an essential "do over" for no reason. This factor also counsels in favor of abstention.[9]

Finally, the Court can and, respectfully, should consider Plaintiffs' forum shopping. "Although forum shopping is not listed as a *Colorado River* factor, 'it is appropriate to consider given the flexible and pragmatic way in which abstention is to be applied.'" *Standard Radio Inc.*, 2007 WL 9811313, *3 (quoting *Am. Int'l Underwriters, Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1259 (9th Cir. 1988)).

To the extent Plaintiffs were justified in filing this meritless lawsuit at all, they were correct to do so in the State Court. This Court should abstain from proceeding here under *Colorado River*, and allow the State Court to resolve this dispute, as Plaintiffs originally requested.

### B. THE *PULLMAN* ABSTENTION DOCTRINE ALSO COUNSELS IN FAVOR OF DISMISSING OR STAYING THIS CASE IN FAVOR OF THE STATE COURT LAWSUIT.

"[W]hen a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state court an opportunity to settle the underlying state-law question, and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris Ct. Comm'rs Court v. Moore*, 420 U.S. 77, 83 (1975) (citing *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941)). This is known as *Pullman* abstention.

---

[9] Factors 1, 2, or 8 do not counsel in favor of abstention. That, however, is not dispositive where the balance of the factors do weigh in favor of abstention. *See Standard Radio Inc.*, 2007 WL 9811313, *3 (recognizing that where limited "factors counseled against abstention, [but] the remainder of the analysis strongly supports abstention," then abstention is appropriate.

When determining whether to apply *Pullman* abstention, the Sixth Circuit asks two questions: (1) whether an unclear state law exists; and (2) the likelihood that the state court's decision on the state law issue would "obviate the necessity for a decision of the federal constitutional question or substantially modify the constitutional issue." *Tyler v. Collins*, 709 F.2d 1106, 1108 (6th Cir. 1983) (quoting 1A Moore's Federal Practice ¶ 0.203[1] (1982)). "If the state courts would be likely to construe the statute in a fashion that would avoid the need for a federal constitutional ruling or otherwise significantly modify the federal claim, the argument for abstention is strong." *Harris*, 420 U.S. at 84; *GTE North, Inc. v. Strand*, 209 F.3d 909, 921 (6th Cir. 2000).

The argument for abstention is strong here. Plaintiffs seek the same declarations they are seeking in the State Court Lawsuit: that H.B. 96, codified into state law, results in an unconstitutional taking of their property. As Plaintiffs themselves recognized when they filed the State Court Lawsuit, the Ohio state courts provide a proper forum in which that question can be answered. If they are correct, the statutes will be struck down as unconstitutional and there will be no need for this Court to resolve the dispute. If Plaintiffs are wrong, and the Ohio state courts determine that the statute is a true "escheat" statute that does not result in a taking, there also will be nothing left for this Court to resolve. *See Texaco, Inc. v. Short*, 454 U.S. 516, 530 (1982) ("[A]fter abandonment, the former owner retains no interest for which he may claim compensation."); *Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322, 1334-35 (recognizing that under the United States Supreme Court's decision in *Texaco*, property interests under an escheatment statute are extinguished).

Rather than simply letting the case proceed in their chosen state court forum, Plaintiffs are attempting a second bite at the apple at the first sign of trouble presented by Defendants' State

9

Court Motions. As the State Court Motions clarify, Plaintiffs' claims are meritless. Under *Pullman*, that should be decided by the Ohio Courts in the first instance.

### C. THE *BURFORD* ABSTENTION DOCTRINE PROVIDES ANOTHER ALTERNATIVE BASIS TO DISMISS OR STAY THIS CASE.

The *Burford* abstention doctrine dictates that federal courts should abstain from exercising jurisdiction when the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989) (quotation omitted) ("*NOPSI*"); *see also Ada-Cascade Watch Co. v. Cascade Res. Recovery, Inc.*, 720 F.2d 897, 903 (6th Cir. 1983) (stating that *Burford* enunciated two factors, the existence of either of which justifies abstention, namely the presence of a complex state regulatory scheme which would be disrupted by federal review, and the existence of a state-created forum with specialized competence in the particular area). The doctrine guides district courts to "balance[] the strong federal interest in having certain classes of cases…adjudicated in federal court, against the State's interests in maintaining uniformity in the treatment of an essentially local problem, and retaining local control over difficult questions of state law bearing on policy problems of substantial import." *Gray v. Bush*, 628 F.3d 779, 784 (6th Cir. 2010) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996)).

"While the presence of a state agency is not conclusive proof that *Burford* abstention is appropriate, the Supreme Court has found that the presence of such a process does indicate that a court should consider *Burford* abstention." *Saginaw Housing Comm'n v. Bannum, Inc.*, 576 F.3d 620, 626 (6th Cir. 2009) (citing *NOPSI*, 491 U.S. at 361). "[T]he creation of an agency to promulgate and administer the state policy has served as evidence of the state's level of concern and of its desire for uniform application of the policy." *Id.* (collecting cases).

As relevant to this lawsuit (and the parallel State Court Lawsuit), the Division of Unclaimed Funds within the Ohio Department of Commerce (the "Division") was created by Ohio law. Ohio Rev. Code § 121.08(J). The Division has powers and duties delegated to it under Ohio revised Code Chapter 169. *Id.* Throughout Chapter 169, the Division is charged with specialized duties related to overseeing and administering unclaimed funds—including processing claims. *See* R.C. §§ 169.01 *et seq.*

Chapter 169 establishes an administrative process for individuals to claim unclaimed funds held in the UFTF. When claimants believe they have property in the UFTF, they may file a claim with the Division, including through a public website maintained by the Division. R.C. 169.08; Adm.Code 1301:10-4-01(A).[10] The Division evaluates the claim and can consider evidence and subpoena witnesses and documents as necessary. R.C. 169.08(B); Adm.Code 1301:10-4-01(B). A hearing on the claim must be held if the claimant requests one. R.C. 169.08(B); Adm.Code 1301:10-4-01(B); Adm.Code 1301:10-2-02. From there, the Division decides the claim, and that decision is subject to appeal. Adm.Code 1301:10-2-02.

Here, the exercise of federal jurisdiction would usurp the administrative process prescribed by Ohio statute for settling this inherently local dispute concerning Ohioans' unclaimed funds. Plaintiffs' claims are entirely premised on their allegations that they have funds in the UFTF. (*See* Complt. ¶¶ 87, 88.) Put simply, they do not want their funds to remain in the UFTF, where their funds will escheat. (*Id.* ¶ 92.) But Plaintiffs can get their unclaimed money back by following the carefully prescribed administrative procedure. They have not pled that this administrative process

---

[10] *See also* Ohio Department of Commerce Division of Unclaimed Funds, *Ohio Unclaimed Funds – Claim Your Lost Money*, https://com.ohio.gov/divisions-and-programs/unclaimed-funds (accessed Aug. 16, 2025).

11

is unavailable to them, nor that it would be burdensome for them to submit to the administrative process.

Allowing Plaintiffs to pursue their claims in federal court would vitiate the administrative scheme set forth by the Ohio General Assembly. Indeed, any plaintiff with funds in the UFTF could simply file a claim in federal court, sidestepping the administrative process entirely. Accordingly, the "exercise of federal review" here would be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *NOPSI*, 491 U.S. at 361. Ohio has been explicit in its desire for uniform application of its policy with respect to unclaimed funds – that is, it has expressed that policy in statute, created the Division to administer the statute, and prescribed steps that claimants must follow. Because "the creation of an agency to promulgate and administer the state policy" evidences that desire for uniformity, *Saginaw*, 576 F.3d at 626, this Court should decline Plaintiffs' invitation to dismantle the claims process – both for themselves and for future plaintiffs.

## IV. CONCLUSION

Plaintiffs filed their lawsuit in state court in Ohio. In the face of dispositive motions that would gut their case, Plaintiffs chose not to respond and instead sought a do over in this court. Three separate abstention doctrines warrant rejecting their blatant forum shopping efforts.

Accordingly, for the foregoing reasons, Defendants Sheryl Maxfield (in her official capacity as Director of the Ohio Department of Commerce), Akil Hardy (in his official capacity as Superintendent of the Ohio Division of Unclaimed Funds), Robert Sprague (in his official capacity as Ohio Treasurer), and Joy Bledsoe (in her official capacity as Executive Director of the Ohio Facilities Construction Commission) respectfully ask this Court to enter an order either dismissing or staying this lawsuit.

Respectfully submitted,

*/s/ Aneca E. Lasley*
Aneca E. Lasley (OH 0072366)
Andrea E. Howell (OH 0101138)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, Ohio 43215
Tel:  (614) 462-2700/Fax:  (614) 462-5135
Aneca.Lasley@icemiller.com
Andrea.Howell@icemiller.com

Joshua Klarfeld (OH 0079833)
ICE MILLER LLP
600 Superior Ave East, Suite 1300
Cleveland, OH 44114
Tel:  (216) 394-5063
Joshua.Klarfeld@icemiller.com

*Special Counsel for Defendants Sheryl Maxfield (in her official capacity as Director of the Ohio Department of Commerce), Akil Hardy (in his official capacity as Superintendent of the Ohio Division of Unclaimed Funds), Robert Sprague (in his official capacity as Ohio Treasurer), and Joy Bledsoe (in her official capacity as Executive Director of the Ohio Facilities Construction Commission)*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served on this 6th day of October 2025 via the Court's electronic filing system to all counsel of record indicated on the electronic filing receipt.

/s/ *Aneca E. Lasley*
Aneca E. Lasley (OH 0072366)

*Special Counsel for Defendants Sheryl Maxfield (in her official capacity as Director of the Ohio Department of Commerce), Akil Hardy (in his official capacity as Superintendent of the Ohio Division of Unclaimed Funds), Robert Sprague (in his official capacity as Ohio Treasurer), and Joy Bledsoe (in her official capacity as Executive Director of the Ohio Facilities Construction Commission)*

4911-7158-8463.2