# IN THE COURT OF COMMON PLEAS
# FRANKLIN COUNTY, OHIO

|  |  |  |
|---|---|---|
| MARY BLEICK, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 25CV005715 |
| | ) | |
| v. | ) | Judge David C. Young |
| | ) | |
| SHERYL MAXFIELD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS
### (Oral Hearing Requested)

Pursuant to Ohio Rules of Civil Procedure 12(F), 23(A), and 23(B), Defendants Sheryl Maxfield (in her official capacity as Director of the Ohio Department of Commerce), Akil Hardy (in his official capacity as Superintendent of the Ohio Division of Unclaimed Funds), Robert Sprague (in his official capacity as Ohio Treasurer), and Joy Bledsoe (in her official capacity as Executive Director of the Ohio Facilities Construction Commission) move to strike the class allegations from Plaintiffs' Complaint.

As set forth in the accompanying Memorandum in Support, Plaintiffs' proposed class fails to meet the requirements for certification under Civ.R. 23. The deficiencies are apparent on the face of the Complaint and cannot be cured through discovery. Accordingly, the Court should strike the class allegations at the pleadings stage to avoid unnecessary burden and expense.

Pursuant to Local Rule 21.01, Defendants respectfully request an oral hearing on this Motion.

Respectfully submitted,

*/s/ Aneca E. Lasley*
Aneca E. Lasley (0072366) (Trial Attorney)
Andrea E. Howell (0101138)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, Ohio 43215
Tel:  (614) 462-2700/Fax:  (614) 462-5135
Aneca.Lasley@icemiller.com
Andrea.Howell@icemiller.com

Joshua Klarfeld (0079833)
ICE MILLER LLP
600 Superior Ave East, Suite 1300
Cleveland, OH 44114
Tel:  (216) 394-5063
Joshua.Klarfeld@icemiller.com

John D. French (#37629-53)
*(Pro Hac Vice pending)*
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
Tel:  (317) 236-2100/Fax:  (317)-236-2219
JD.French@icemiller.com

*Special Counsel for Defendants Sheryl
Maxfield (in her official capacity as Director
of the Ohio Department of Commerce), Akil
Hardy (in his official capacity as
Superintendent of the Ohio Division of
Unclaimed Funds), Robert Sprague (in his
official capacity as Ohio Treasurer), and Joy
Bledsoe (in her official capacity as Executive
Director of the Ohio Facilities Construction
Commission)*

## IN THE COURT OF COMMON PLEAS
## FRANKLIN COUNTY, OHIO

| | | |
|---|---|---|
| MARY BLEICK, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 25CV005715 |
| | ) | |
| v. | ) | Judge David C. Young |
| | ) | |
| SHERYL MAXFIELD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS

## I.  INTRODUCTION

In this putative class action, Plaintiffs Mary Bleick, Todd Butler, and Allen Skierski seek to represent a group of individuals challenging H.B. 96, codified into R.C. 169. Plaintiffs contend that the recently amended statute results in an unconstitutional taking of their unclaimed, but abandoned funds from Ohio's Unclaimed Funds Trust Fund ("UFTF"), and they are displeased that those funds will be used to support the construction of cultural and sports facilities. Although their allegations concerning the statute at issue in this lawsuit, the Cleveland Browns, and its ownership are attention grabbing (to say nothing of being unfounded and inaccurate), the proposed class suffers from multiple, incurable defects:

1. **Federal law preempts claims for certain funds** held in the UFTF, rendering portions of the proposed class definition invalid.

2. **Plaintiffs cannot satisfy the commonality and typicality** requirements under Civ.R. 23(A).

3. **The proposed class is not ascertainable**, including individuals who have suffered no injury and cannot be identified without individualized inquiry.

4. **Plaintiffs cannot satisfy the requirements of Civ.R. 23(B)**, particularly the standard for injunctive relief under subsection (B)(2).

1

These deficiencies are evident from the face of the Complaint and cannot be remedied through discovery. Accordingly, the Court should strike the class allegations and preclude Plaintiffs from proceeding with this case as a class action.[1]

## II.     FACTS AND BACKGROUND

### A.      THE OHIO UNCLAIMED FUNDS FRAMEWORK

As laid out more thoroughly in Section II(A) of Defendants' Motion to Dismiss, Ohio's Unclaimed Funds Statute, R.C. 169.01, *et seq.*, provides that certain funds are to be deposited with, and held in trust by, the State of Ohio in the UFTF. Pursuant to R.C. 169.02, the property to be deposited into the UFTF includes certain unclaimed bank account funds, certificates of deposit, and insurance proceeds.

Holders that report and remit funds to the Ohio Department of Commerce adhere to detailed notice requirements at the time of deposit. After those notice procedures are completed, the Ohio Department of Commerce, Division of Unclaimed Funds is charged with administering the trust fund and Ohio's Unclaimed Funds law. *See* R.C. 169.05. Individuals are able to search a government-run, publicly available database through the Ohio Department of Commerce (https://unclaimedfunds.ohio.gov/app/claim-search) to identify funds reported to belong to them.[2] Once individuals determine they have funds in the UFTF, they are able to initiate claims for the

---

[1] Consistent with the Court's August 15, 2025 Order, Defendants are filing a separate Motion to Dismiss contemporaneously with this Motion to Strike. In the event the Court grants the Motion to Dismiss, that would render this Motion to Strike moot.

[2] The Court is permitted to take judicial notice of government websites. *See, e.g.*, *State ex rel. Banker's Choice, LLC v. Cincinnati*, 2020-Ohio-6864, ¶ 7-8 (citing Evid. R. 201(E)) ("While generally limited to the allegations stated in a complaint, a trial court may take judicial notice of 'appropriate matters'…A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *U.S. ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) ("Public records and government documents are generally considered 'not to be subject to reasonable dispute.' This includes public records and government documents available from reliable sources on the Internet."); *Grimes v. Navigant Consulting, Inc.*, 185 F. Supp. 2d 906, 903 (N.D. Ill. 2002) (taking judicial notice of stock prices posted on a website); *Cali v. E. Coast Aviation Servs., Ltd.*, 178 F. Supp. 2d 276, 287 (E.D.N.Y. 2001) (taking judicial notice of documents from state and federal agencies).

funds through the same website.[3] Once the claim is processed and approved, the funds (plus accrued interest) are paid to the individuals. *See* R.C. 169.08.

Recent amendments enacted through H.B. 96 establish an escheat process for funds that remain unclaimed for ten years. Beginning January 1, 2026 (and continuing on a rolling basis), at the expiration of the ten year period, following report and remission, such funds are deemed abandoned, then escheat to the State. *See* R.C. 169.08. However, the statute preserves a recovery mechanism: claimants may still file a claim to recover escheated funds, including interest, until January 1, 2036. *See* R.C. 169.08(I)(1)(3)(b) (as amended by H.B. 96).

### B.    PLAINTIFFS' CLAIMS

Plaintiffs claim they are Ohio residents and that they are "rightful owners of property currently held in trust by the State of Ohio pursuant to Ohio Revised Code Chapter 169 in an account otherwise known as the 'Unclaimed Funds Account[.]'" Compl. ¶ 6. They allege they have "confirmed" that "the State is currently holding property to which they are entitled, either as original owners or heirs of the original owners." *Id*. ¶ 8. They do not include any allegations about the length of time those funds have been in the UFTF or the identity of the depositor of the funds. Despite having actual notice, Plaintiffs do not allege they made any effort to comply with the process for claiming those funds.

The Complaint attempts to assert eight causes of action: (1) Violation of the Takings Clause of the U.S. Constitution, (2) Violation of the Due Process Clause of the U.S. Constitution, (3) Violation of the Ohio Constitution, (4) Breach of Fiduciary Duty under R.C. 169.01, (5) Violation of the Single Subject Rule, (6) Injunctive Relief Under R.C. 2727.01, (7) Mandamus Relief, and (8) Abuse of Legislative Authority/Ultra Vires Act. As relevant to this Motion, Plaintiffs propose

---

[3] *See* https://unclaimedfunds.ohio.gov/app/claim-funds.

proceeding with those claims as class representatives, representing a class they propose defining as: "All individuals and entities whose funds are being held in the Ohio Unclaimed Funds Trust Fund as of June 30, 2025." Compl. ¶ 64. As discussed below, this proposed class definition is legally deficient and cannot satisfy the requirements for certification under Civ.R. 23.

## III.  LEGAL STANDARD

### A.  PLAINTIFFS HAVE THE BURDEN TO ESTABLISH THAT THIS CASE SHOULD PROCEED AS A CLASS ACTION.

Class actions are the exception—not the rule—in civil litigation. To justify proceeding on behalf of a class, Plaintiffs must affirmatively demonstrate that each requirement of Ohio Civil Rule 23 is satisfied. *Cullen v. State Farm Mut. Auto. Ins. Co.*, 2013-Ohio-4733, ¶ 2; *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) ("A class action is an exception to the general rule that litigation is conducted by and on behalf of the named parties only, and therefore, to justify a departure from this rule, the representative of the putative class is required to affirmatively demonstrate that each requirement of Civ.R. 23 has been satisfied.") (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)) ("The class action is an 'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"). To meet this burden, a party seeking to maintain a class action must establish the following:

1.  An identifiable and unambiguous class definition;

2.  That the named representatives are members of the class;

3.  Numerosity—joinder of all members is impracticable;

4.  Commonality—questions of law or fact common to the class;

5.  Typicality—the representatives' claims or defenses are typical of the class;

6.  Adequacy—the representatives will fairly and adequately protect the class's interests; and

7.  That the class qualifies under one of the subsections of Civ.R. 23(B).

*See Cicero v. U.S. Four, Inc.*, 2007-Ohio-6600, ¶ 11 (10th Dist.); *Frisch's Rest. Inc. v. Kielmyer*, 2005-Ohio-5426, ¶¶ 15-16 (10th Dist.). The Court must engage in a rigorous analysis to consider what Plaintiffs will have to prove at trial for each of their claims and whether those issues can be presented by common—versus individual—proof. *Cullen* at ¶ 17. Failure to establish even one of these requirements defeats class certification. *Cicero* at ¶ 12; *Frisch's* at ¶ 18.[4]

### B. PLAINTIFFS' CLASS ALLEGATIONS ARE NOT SUPPORTED BY THE OPERATIVE FACTS AND SHOULD BE STRICKEN.

At the pleadings stage, Plaintiffs must allege operative facts—not mere recitations of Civ.R. 23's elements—that, if true, would support class certification. *See Cubberley v. Chrysler Corp.*, 70 Ohio App.2d 263, 267-68 (8th Dist. 1981); *see also S. Health Facilities, Inc. v. Somani*, 1995 WL 765161, *6 (10th Dist. Dec. 29, 1995) (affirming rejection of class and explaining that "[a] party seeking class certification pursuant to Civ.R. 23 must allege operative facts in his pleadings which, if true, would be sufficient to demonstrate that the requirements of Civ.R. 23(A) and (B) have been met." (internal quotation omitted)); *Waterman v. Christy*, 1988 WL 33623, *2 (10th Dist. March 15, 1988) ("The pleadings were insufficient. It is well-established that a complaint is subject to a motion to strike…where there is a failure to properly plead operative facts."). For class allegations to survive the pleadings stage, the plaintiff must adequately allege that the requirements set forth in Civ.R. 23(A) are satisfied and that the action falls within at least one of the categories described in Civ.R. 23(B).

A court may strike class allegations even before a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011); *see also Rikos v.*

---

[4] Because the requirements of Fed. R. Civ. P. 23 are virtually identical to those of Ohio Civ.R. 23, the Ohio Supreme Court recognizes that federal authority is an appropriate aid to interpret Ohio's Rule. *Cullen* at ¶ 14.

*Proctor & Gamble Co.*, 2012 WL 641946, *4 (S.D. Ohio February 28, 2012). Striking class allegations is particularly appropriate when the class is facially uncertifiable and discovery will not "alter the central defect in th[e] class claim." *Pilgrim* at 949 (affirming judgment striking class allegations before discovery where defect in class action involved "a largely legal determination" that "no proffered or potential factual development offer[ed] any hope of altering" the outcome); *see also Pettrey v. Enter. Title Agency, Inc.*, 242 F.R.D. 384, 386 (N.D. Ohio 2007) (granting motion to strike and finding it would be "unjust not to hold Plaintiffs to task for their own overbroad class definition. To hold otherwise gives class action plaintiffs a strategic incentive to propose unwieldy and burdensome classes – assured in the knowledge that if the original class does not [sic] slip by the Court a more limited class will be certified.").

### C.     PLAINTIFFS MUST SATISFY BOTH CIV.R. 23(A) AND 23(B)

To proceed as a class action, Plaintiffs must first satisfy the threshold requirements of Civ.R. 23(A): numerosity, commonality, typicality, and adequacy. They must also demonstrate that the class is ascertainable—i.e., objectively defined and capable of identification without individualized inquiry. *See Williams v. Kisling Nestico & Redick, LLC*, 2023-Ohio-4510, ¶ 7 (9th Dist.); *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016). If those requirements are met, Plaintiffs must then show that the class qualifies under one of the subsections of Civ.R. 23(B).

Plaintiffs here invoke Civ.R. 23(B)(2), which applies only where the defendant has acted or refused to act on grounds generally applicable to the class, making injunctive or declaratory relief appropriate for the class as a whole. Civ.R. 23(B)(2); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). Here, the Court should not need to reach the Rule 23(B) part of the analysis, as Plaintiffs' class allegations cannot survive the threshold analysis of Rule 23(A), and

no amount of discovery will cure the deficiencies. Even if it did reach the Rule 23(B) part of the

analysis, there still is no basis for this lawsuit to proceed as a class action.

## IV.    ARGUMENT

### A.    PLAINTIFFS' PROPOSED CLASS IS NOT MAINTAINABLE UNDER FEDERAL LAW.

Plaintiffs define their proposed class as follows:

> The proposed class is defined as:
>
> "**All individuals and entities whose funds are being held in the Ohio Unclaimed Funds Trust Fund as of June 30, 2025**."

Compl. ¶ 64. This definition is overly broad and includes individuals whose claims are preempted

by federal law.

Federal law provides that:

- In certain situations, the Federal Deposit Insurance Corporation ("FDIC") must make payments of insured deposits "either by cash or by making available to each depositor a transferred deposit in a new insured depository institution…in an amount equal to the insured deposit of such depositor." 12 U.S.C § 1821(f)(1).

- "If an insured depositor fails to make a claim for his, her, or its insured or transferred deposit within 18 months after the [FDIC] initiates the payment of insured deposits under [12 U.S.C § 1821(f)]…the [FDIC] shall deliver the deposit to the custody of the appropriate State as unclaimed property." 12 U.S.C. § 1822(e)(2)(B).

- ***"If a depositor does not claim the deposit delivered to the custody of the appropriate State…within 10 years of the date of delivery, the deposit shall be immediately refunded to the [FDIC] and become its property. All rights of the depositor against the appropriate State with respect to such deposit shall be barred as of the date of the refund to the FDIC."*** 12 U.S.C. § 1822(e)(5) (emphasis added).

For purposes of this lawsuit, the implications of those statutes are twofold: First, by

operation of federal law, there are funds that have been delivered to the Ohio UFTF that must be

(or will be required to be) refunded to the FDIC. What funds, if any, that will be returned to the

FDIC is unknown until the expiration of the ten years. For proposed class members (as Plaintiffs

seek to define the class) who had funds delivered to the Ohio UFTF by the FDIC and who fail to

claim those funds within 10 years of the date of delivery, federal law precludes those putative class members from claiming those funds, as they must be returned to the FDIC. Thus, Plaintiffs' proposed class definition improperly includes individuals and entities that cannot be members of any such class, because funds previously belonging to them must be "immediately refunded to the [FDIC] and become [the FDIC's] property." 12 U.S.C. § 1822(e)(5). Subjecting Defendants to claims concerning those funds expressly conflicts with Defendants' obligations to the FDIC under federal law (12 U.S.C. § 1822(e)(5)).

Second, any claims asserted against Defendants "with respect to such deposit [is] barred as of the date of the refund to the FDIC." *Id*. Thus, claims falling within the proposed class definition are expressly preempted by federal law.

### B.     PLAINTIFFS ALSO CANNOT MEET THE CIV.R. 23(A) REQUIREMENTS.[5]

#### 1.     Plaintiffs Cannot Establish Commonality Under Civ. R. 23(A)(2).

"What matters to class certification…is not the raising of common 'questions'—even in droves—but rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart Stores* at 350 (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)) (emphasis in original); *see also Davis v. Cintas Corp.*, 717 F.3d 476, 487 (6th Cir. 2013) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("The crucial inquiry, the court explained, is the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. In other words, Plaintiffs must have a common question that will

---

[5] For purposes of this Motion only, Defendants are not challenging Plaintiffs' ability to satisfy the "numerosity" requirement of Civ.R. 23(A)(1). Defendants do not concede that Plaintiffs can satisfy that requirement, and, should this case proceed to discovery, Defendants reserve the right to challenge that requirement in a subsequent motion.

connect many individual promotional decisions to their claim for class relief." (internal citations and citation marks omitted)).

Plaintiffs list six common questions they claim apply to the proposed class:

    a.  Whether the State of Ohio and its officers have a fiduciary duty to preserve unclaimed private property for the rightful owners;

    b.  Whether confiscating an individual's property without a public purpose constitutes an unconstitutional taking;

    c.  Whether confiscating private property to fund a private stadium project constitutes an unconstitutional taking;

    d.  Whether confiscating private property in the absence of a state emergency without compensating the owner first violates Article 1, section 19 of Ohio's Constitution;

    e.  Whether the proposed confiscation of private property violates due process rights;

    f.  Whether such confiscation violates the purpose of ORC Chapter 169.

Compl. ¶ 68. Plaintiffs, however, fail to show that these questions can be answered uniformly across the proposed class, and, for good reason; the Court cannot answer these questions on a class-wide basis in "one stroke." *Wal-Mart Stores* at 350.

Given the vast differences within the proposed class, these questions will require individualized answers, which will depend on multiple factors that would require a claimant-by-claimant analysis. That individualized inquiry would include the following:

    (1)  When each class member's funds were deposited into the UFTF to determine ***both*** whether and when they fall within the 10 year escheatment and abandonment period ***and*** whether they fall within the additional 10 year period to recover escheated property;[6]

    (2)  Who deposited the funds into the UFTF, including to determine whether 12 U.S.C. § 1822(e)(5) is triggered and whether any particular class member's claims are barred or preempted;

---

[6] The Complaint is utterly silent on the post-escheatment recovery mechanism under H.B. 96 and R.C. 169 for abandoned funds in the UFTF.

(3) Whether the proposed class member has made a claim for the funds at issue and the disposition of any such claim;

(4) Whether each proposed class member has met his, her, or its burden to exhaust administrative remedies;

(5) Whether each proposed class member's claims are ripe; and

(6) Whether each proposed class member has standing to pursue the claims brought within the Complaint.

Those questions are not suitable for determination on a class-wide basis. Instead, the parties and the Court would need to examine every deposit into the UFTF to answer those questions. And no amount discovery will change the fact that individualized inquiries will be necessary and, indeed, predominate.

Absent common answers Plaintiffs cannot meet the commonality requirement. *See Huntsman v. Akron Tower Hous. P'ship*, 2007 WL 1464563, *8 (N.D. Ohio May 17, 2007) (denying class certification and finding that commonality and typicality are not met where "[e]ven the nature and extent of the injuries sustained by the named plaintiffs vary drastically."). While Plaintiffs may attempt to present common ***questions***, the absence of common ***answers***, much less common proof supporting those answers, is determinative and precludes proceeding with this case as a class action.

## 2. Plaintiffs Cannot Demonstrate Typicality Under Civ. R. 23(A)(3).

Unless "the claims or defenses of the representative parties" are "typical of the claims or defenses of the class," a lawsuit may not proceed as a class action. Civ.R. 23(A)(3). That "typicality" requirement "serves the purpose of protecting the rights of absent class members by ensuring that the interests of the representative parties are substantially aligned with those of the class." *Grant v. Becton Dickinson & Co.*, 2003-Ohio-2826, ¶ 56 (10th Dist.). To be "typical," a class representative should "possess the same interest and suffer the same injury shared by all

members of the class he represents." *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009) (citing *Schlesinger v. Reservists Com. To Stop the War*, 418 U.S. 208, 216 (1974)).

> A plaintiff subject to unique defenses can be rendered atypical and not representative of the class…. A defense that is peculiar to the named plaintiff can destroy typicality, because such a defense "can distract the named plaintiff to such an extent that his or her representation of the interests of the rest of the class will suffer."

*Harden v. Autovest, L.L.C.*, 2016 WL 4408905, *3 (W.D. Mich. Aug. 19, 2016) (quoting *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 479-481 (W.D. Mich. 1994)).

Here, Plaintiffs cannot establish that their claims are typical of the putative class's, as they have pled circumstances unique to themselves in the Complaint. Unlike the members of the class they seek to represent (*i.e.*, those individuals and entities whom Plaintiffs claim stand to have their funds escheated without sufficient notice), the named Plaintiffs have actual notice that they have funds in the UFTF. *Compare* Compl. ¶¶ 6, 8 *with* Compl. ¶ 22. Notice is a crucial (and, again, individualized) fact; it is necessary to determine the viability of each potential class member's claims, at least as Plaintiffs have pled their Complaint. As detailed in Defendants' contemporaneously filed Motion to Dismiss, knowledge gives rise to defenses unique to the named Plaintiffs that will not be shared among those purported class members who, as Plaintiffs allege, lack knowledge. Those defenses include lack of exhaustion, ripeness, standing, and failure to mitigate.[7] Given that Plaintiffs concede knowledge of funds in the UFTF, while seeking to represent class members who lack that knowledge, they plead themselves out of the ability to act as class representatives because they cannot establish typicality. *See, e.g.*, *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc) (typicality cannot be established where "[e]ach

---

[7] Those are just the unique defenses that are apparent at the pleadings stage. In the event this case continues to discovery as a putative class action, Defendants reserve the right to assert the existence of additional defenses that further preclude the named Plaintiffs from acting as class representatives.

claim…depend[s] on each individual's particular interactions with" the defendant and those interactions "varied from person to person."); *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991) (typicality is absent if the representative plaintiffs are "subject to unique defenses that would divert attention from the common claims of the class").

Plaintiffs' own allegations preclude them from satisfying the typicality requirement.

## C. PLAINTIFFS' PROPOSED CLASS IS NOT ASCERTAINABLE BECAUSE IT IS NOT OBJECTIVELY DEFINED AND IT IS OVERBROAD.

In addition to the Rule 23(A)'s requirements, plaintiffs in putative class actions "must establish that an identifiable class exists and that its definition is unambiguous, and that the named representatives are members of the class." *Williams* at ¶ 7 (quoting *Winrod v. City of Lorain*, 2020-Ohio-157, ¶ 4 (9th Dist.)); *see also Cole* at 541. "These prerequisites are commonly referred to as ascertainability and class membership." *Williams* at ¶ 7 (quoting *Winrod* at ¶ 4).

Under an ascertainability analysis, courts examine whether a class definition is overbroad and includes individuals who were not injured or who can show no damages. *See Givens v. Van Devere, Inc.*, 2012 WL 4092738, *5 (N.D. Ohio September 17, 2012) ("A proposed class may be deemed overbroad if it would include members who have not suffered harm at the hands of the defendant and are not at risk to suffer such harm."). Where individual "issues relating to liability with respect to each individual plaintiff's claims make it impossible to prove or disprove the claims of all the members of the class on a simultaneous, classwide basis, class certification is inappropriate." *Hoang v. E*Trade Group, Inc.*, 2003-Ohio-301, ¶ 28 (8th Dist.); *see also Linn v. Roto Rooter, Inc.*, 2004-Ohio-2559, ¶¶ 15-16 (8th Dist.) (class certification denied on similar grounds).

Ascertainability requires Plaintiffs to have defined a precise and identifiable class. *Maestle v. Best Buy Co.*, 2011-Ohio-5833, ¶¶ 12, 17 (8th Dist.). "If…a class is defined so broadly as to

include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification." *Stammco L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 243 (2013) (alteration in original); *see also Barber v. Meister Protection Services*, 2003-Ohio-1520, ¶¶ 33, 34 (8th Dist.) (rejecting class definition as overly broad and necessarily resulting in individualized inquiries). Vague and overbroad class allegations are improper, as they carry the potential for unfair and excessive liability. *See Pettrey* at 386 (granting motion to strike class allegations based on overbroad class definition); *Weinraub v. Bank of Am., N.A.*, 2025 WL 2263689, *8 (N.D. Ga. Aug. 7, 2025) (rejecting plaintiff's "contention that he could simply amend the class definition to fix [a] problem" and instead striking improper, overly broad class allegations).

Here, the Court would be required to conduct an individualized assessment for each potential class member to determine membership. Among other inquiries, the Court would be required to evaluate when each individual's funds were deposited into the UFTF, what type of funds were deposited, whether each individual had made a claim for those funds, and the outcome of any such claim. Just because funds are in the UFTF does not mean the funds will automatically escheat on January 1, 2026, that an injury occurs on that date, or even that an injury will ever occur. Indeed, claimants who utilize the statutorily prescribed mechanism to recover unclaimed funds that have not escheated, and even to recover already-escheated funds, and those individuals whose previously owned funds were returned to the FDIC, will never experience any compensable loss whatsoever. Plaintiffs' proposed class definition does nothing to account for those individualized issues.

The proposed class would include other members who have suffered no injury. For example, the proposed class is vague and broad enough to include individuals whose funds were

*just* deposited as of June 30, 2025, and are at no risk of being deemed "abandoned" or going through the escheatment process laid out within R.C. 169 for years, if ever. The proposed class also includes individuals, like Plaintiffs, who have notice of the existence of funds in the UFTF and can take action to recover those funds both before they are escheated and deemed abandoned on January 1, 2026, or even subsequently. As Plaintiffs have attempted to define the class, it would include members who have not been injured, which precludes class certification. *See Stammco L.L.C.* at 243; *see also Colley v. P&G*, 2016 WL 5791658, *8 (S.D. Ohio Oct. 4, 2016) (internal quotes omitted) ("Plaintiffs' proposed classes and subclasses are overbroad because they would include millions of consumers who suffered no injury and thus have no standing to bring claims or recover on them. [T]he only way to distinguish between the two sets of individuals is to engage in individualized fact-finding, which makes the…class definition unsatisfactory.").

Plaintiffs' proposed class is flawed and fails on ascertainability grounds.

### D. PLAINTIFFS CANNOT MEET THE REQUIREMENTS FOR PROCEEDING UNDER CIV.R. 23(B).

#### 1. Plaintiffs' Allegations Are Insufficient to Allow Them to Proceed With a Class Action Under Civ.R. 23(B)(2).

Plaintiffs seek certification under Civ.R. 23(B)(2), which applies only when the defendant's conduct affects the class uniformly and injunctive or declaratory relief is appropriate for the class as a whole. Here, the viability of each claim depends on individualized facts and legal defenses. Relief for one claimant does not imply relief for others. Rule 23(B)(2) is therefore inapplicable.

As discussed above, membership in the class will depend on a litany of individualized facts and circumstances, not a generalized determination. Additionally, the viability of each class member's claims would depend on an in-depth analysis related to multiple legal theories including notice, exhaustion, standing, ripeness, and preemption. Whether the named Plaintiffs ultimately

may or may not be entitled to recovery dictates nothing about whether any other class member may or may not be entitled to recovery. Even if the named Plaintiffs suffered a redressable harm, it does not follow that other class members have as well. Thus, Plaintiffs' requested relief cannot "apply generally to the class," making Rule 23(B)(2) an inappropriate basis to proceed here.

### 2. Plaintiffs Also Cannot Satisfy Civ.R. 23(B)(1) or (3).

Although Plaintiffs address only subsection (2) of Civ.R. 23(B) in the body of their Complaint, they alternatively ask the Court in the *ad damnum* clause to "declare, adjudge, and decree that this action is a proper class action and certify the proposed class and/or any other appropriate subclasses under Civ.R. 23(b)(1), (b)(2), and/or (b)(3) [sic], appoint Plaintiffs as a [sic] Class Representatives and appoint Plaintiffs' Counsel as Class Counsel." Plaintiffs provide no factual basis to support certification under Civ.R. 23(B)(1) or (3), which alone requires a rejection of certification under those subsections. *See, e.g.*, *Cubberley*, 70 Ohio App.2d at 267-68; *S. Health Facilities* at *6; *Waterman* at *2.

Regardless, certification under Civ.R. 23(B)(1) and (3) would be improper based on the allegations that are contained in the Complaint. Proceeding under either of those subsections requires Plaintiffs to have satisfied the requirements of Civ.R. 23(A) which, as explained above, they cannot do. *See* Civ.R. 23(B) (identifying satisfaction of Civ.R. 23(A) as a prerequisite to proceeding to Civ.R. 23(B)). Even then, a Rule 23(B)(1) class action can be maintained only when separate actions would create a risk of (1) inconsistent adjudications that would establish incompatible standards of conduct for the defendants, or (2) adjudication would substantially impair or impede the interest of other members who are not a party to the action.

Rule 23(B)(3) applies only where "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The

predominance requirement is similar to commonality, though the former "is far more demanding." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997), *see also Cicero* at ¶ 37. It is insufficient "that common questions merely exist; rather, the common questions must represent a significant aspect of the case and they must be able to be resolved for all members of the class in a single adjudication." *Cicero* at ¶ 37 (quoting *Schmidt v. Avco Corp.*, 15 Ohio St.3d 310, 313 (1984)).

The Complaint presents no basis to proceed under either subsection. As explained above, numerous individualized defenses apply both to the named Plaintiffs' claims and to the claims of any putative class members. That will require case-by-case inquiries to determine which defenses preclude the claims of each named Plaintiff and any proposed class members. Moreover, individual class members could, in theory, have multiple, separate funds within the UFTF, which could all escheat at different times and give rise to different defenses even as to the same named Plaintiff and putative class member. This would impact each defense not only on an individual-by-individual basis, but also on an account-by-account basis.

"An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof.' *Littler v. Ohio Ass'n of Pub. Sch. Emples.*, 2020 WL 1861646, *11 (S.D. Ohio April 14, 2020). Here, individual issues predominate, as shown above. Resolving the named Plaintiffs' and putative class members' claims would necessarily require individualized discovery directed to each such claimant and devolve into impermissible mini-trials.

Plaintiffs cannot demonstrate that common issues predominate because their claims, even if they survive dismissal, ultimately require individualized fact-specific inquiries. The class allegations should be stricken because this case is not one that is proper for class adjudication.

E.     CLASS ALLEGATIONS ARE NOT NECESSARY WHERE A PLAINTIFF CHALLENGES
       THE CONSTITUTIONALITY OF A STATE STATUTE, SUCH AS R.C. 169.

Plaintiffs do not seek monetary damages. *See generally* Compl. Instead, Plaintiffs seek a declaration that the newly enacted escheatment process as laid out within R.C. 169 is unconstitutional and injunctive relief from its enforcement. As Ohio courts have repeatedly held "it is not necessary to certify a Civ.R. 23(B)(2) injunctive class where an individual judgment as to the constitutionality of a statute or ordinance will enure to the benefit of all potential class members because the statute or ordinance will be found either constitutional or unconstitutional." *Gottlieb v. S. Euclid*, 2004-Ohio-2705, ¶ 33 (8th Dist.) (citing *State ex rel. Horvath v. State Teachers Retirement Bd.*, 1995 WL 141049 (10th Dist.)). Further, certifying a class where it is not necessary will lead to unnecessary and extraneous discovery. *See Horvath*, 1995 WL 141049, at *7 ("Certification of the cause as a class action prior to the determination of the constitutionality of the statute may result in unnecessary discovery procedures and the unjustified and unnecessary expenditure of judicial time and energy needed to determine a class action."). Simply put, allowing this case to proceed as a class action will not change the ultimate outcome.

V.     CONCLUSION

Plaintiffs' proposed class is fundamentally flawed. It includes individuals whose claims are preempted by federal law, fails to meet the threshold requirements of Civ.R. 23(A), and cannot be objectively defined or administered without individualized inquiry. Moreover, Plaintiffs cannot satisfy the requirements of Civ.R. 23(B). No amount of discovery can cure these defects. Because the deficiencies are apparent on the face of the Complaint and render class treatment inappropriate, Defendants respectfully request that the Court strike the class allegations in their entirety.

Respectfully submitted,

*/s/ Aneca E. Lasley*
Aneca E. Lasley (0072366) (Trial Attorney)
Andrea E. Howell (0101138)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, Ohio 43215
Tel:  (614) 462-2700/Fax:  (614) 462-5135
Aneca.Lasley@icemiller.com
Andrea.Howell@icemiller.com

Joshua Klarfeld (0079833)
ICE MILLER LLP
600 Superior Ave East, Suite 1300
Cleveland, OH 44114
Tel:  (216) 394-5063
Joshua.Klarfeld@icemiller.com

John D. French (#37629-53)
*(Pro Hac Vice Pending)*
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
Tel:  (317) 236-2100/Fax:  (317)-236-2219
JD.French@icemiller.com

*Special Counsel for Defendants Sheryl
Maxfield (in her official capacity as Director
of the Ohio Department of Commerce), Akil
Hardy (in his official capacity as
Superintendent of the Ohio Division of
Unclaimed Funds), Robert Sprague (in his
official capacity as Ohio Treasurer), and Joy
Bledsoe (in her official capacity as Executive
Director of the Ohio Facilities Construction
Commission)*

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via the Court's e-filing system on

this 3rd day of September, 2025 upon all counsel of record.

/s/ Aneca E. Lasley
Aneca E. Lasley (0072366)