# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **MARY BLEICK**, *et al.*, | ) Case No.: 2:25-cv-01140 |
| Plaintiffs, | ) Judge Algenon L. Marbley |
| v. | ) |
| **SHERYL MAXFIELD**, in her official capacity as Director of Commerce, *et al.*, | ) |
| Defendants. | ) |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR STAY PLAINTIFFS' COMPLAINT ON ABSTENTION GROUNDS

## I.  INTRODUCTION

Plaintiffs' Memorandum in Opposition [Doc. 15] to Defendants' Motion to Dismiss or Stay Plaintiffs' Complaint on Abstention Grounds [Doc. 3] is premised on two fallacies: (1) that abstention motions do not fall within Rule 12(b)(1) of the Federal Rules of Civil Procedure; and (2) that Defendants' Motion rises and falls on whether there is a parallel state court proceeding. In this Circuit, courts routinely address abstention arguments under Rule 12(b)(1). Further, setting aside abstention based on *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) (which Defendants address in Section IV, below), the law does not require a parallel state court proceeding as a prerequisite to a federal court abstaining under either *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941), or *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

Plaintiffs' Opposition ignores the positions they have already taken in this dispute and the facts that plainly give rise to abstention under either the *Pullman* doctrine, the *Burford* doctrine, or both.

## II. DEFENDANTS PROPERLY RAISED THEIR ABSTENTION ARGUMENTS UNDER FEDERAL RULE 12(B)(1).

Plaintiffs erroneously contend that Defendants were "incorrect as a matter of law" to raise their abstention arguments under Rule 12(b)(1). (*See* Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss (the "Opposition"), ECF No. 15, PageID 215.) Plaintiffs' position ignores the law in this Circuit where courts routinely use Rule 12(b)(1) as the vehicle to address abstention motions that do not seek dismissals on the merits, like this one. *See, e.g.*, *Everett Cash Ins. Co. v. Howell*, 2025 WL 1756889, *2 (S.D. Ohio June 25, 2025) ("[B]ecause courts have found a Rule 12(b)(1) motion a useful mechanism to consider [whether a court should exercise discretion in hearing cases when faced with abstention challenges], this Court does the same"); *Kornhauser v. Notting Hill, LLC*, 2018 WL 2208294, *3 (S.D. Ohio May 14, 2018), *report and recommendation adopted*, 2018 WL 4625552 (S.D. Ohio Sept. 27, 2018) ("The Court agrees with other federal district courts that have determined that a motion to dismiss on comity or abstention grounds is 'sufficiently analogous' to a challenge to the court's subject matter jurisdiction to warrant review under Fed. R. Civ. P. 12(b)(1)."); *Niehaus v. City of Cincinnati*, 2012 WL 7801715, *2 (S.D. Ohio Dec. 14, 2012), *report and recommendation adopted*, 2013 WL 1196613 (S.D. Ohio Mar. 25, 2013) (agreeing that abstention issues arise under Rule 12(b)(1)); *OMT Addiction Centers, LLC v. Freedom Healthcare Props. of Texas, LLC*, 770 F. Supp. 3d 1090, 1101-02 (M.D. Tenn. 2025) (collecting cases).

Defendants have properly presented their abstention arguments in a motion filed under Rule 12(b)(1).

## III. THIS CASE SHOULD BE DISMISSED OR STAYED BASED ON THE *PULLMAN* AND/OR *BURFORD* ABSTENTION DOCTRINES.

### A. NEITHER DOCTRINE REQUIRES A PARALLEL STATE COURT PROCEEDING.

In an effort to sidestep Defendants' abstention arguments, Plaintiffs repeatedly implore this Court to deny Defendants' Motion because, at present, there is no pending parallel state court

action. (*See* Opp., ECF No. 15, PageID 216 ("there is no basis for abstention here given the lack of any pending state court case"); *id*. at PageID 220 (arguing, in part, that *Pullman* abstention should not apply because "there is no pending state proceeding"); *id*. at PageID 221 (arguing, in part, that *Burford* abstention should not apply because "there is no pending state proceeding").

With respect to *Pullman* abstention, Plaintiffs argue that "[w]ithout a live state forum, *Pullman* abstention has no application," and, purportedly in support, they cite to *Hill v. Snyder*, 878 F.3d 193 (6th Cir. 2017) with a parenthetical stating: "Pullman [is] inapplicable absent a realistic opportunity for state-court review." (Opp., ECF No. 15, at PageID 220.) A plain reading of *Hill*, however, reveals that it has nothing to do with *Pullman* abstention whatsoever; indeed, the word "*Pullman*" appears nowhere in the case. Plaintiffs do not even attempt to cite any authority for the proposition that *Burford* abstention requires a parallel state court action.

In reality, neither of those two abstention doctrines requires a pending state court action as a prerequisite to their application. Instead, there are only two questions courts in the Sixth Circuit must answer before applying the *Pullman* abstention doctrine: (1) whether an unclear state law exists; and (2) whether there is a likelihood that the state court's decision on the state law issue would "obviate the necessity for a decision of the federal constitutional question or substantially modify the constitutional issue." *Tyler v. Collins*, 709 F.2d 1106, 1108 (6th Cir. 1983). The *Burford* abstention doctrine permits federal courts to abstain from exercising jurisdiction when the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989) (quotation omitted); *see also Ada-Cascade Watch Co. v. Cascade Res. Recovery, Inc.*, 720 F.2d 897, 903 (6th Cir. 1983) (stating that *Burford* enunciated two factors, the existence of either of

which justifies abstention, namely the presence of a complex state regulatory scheme which would be disrupted by federal review, and the existence of a state-created forum with specialized competence in the particular area).

Plaintiffs' argument to the contrary notwithstanding, neither doctrine treats the existence of a pending state court case as a factor in the analysis.

> B. **PLAINTIFFS' ARGUMENT AGAINST *PULLMAN* ABSTENTION IGNORES THEIR OWN LITIGATION CONDUCT AND POSITIONS THEY HAVE ALREADY TAKEN.**

At the heart of *Pullman* abstention is the directive that "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state court an opportunity to settle the underlying state-law question, and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris Ct. Comm'rs Court v. Moore*, 420 U.S. 77, 83 (1975). Plaintiffs' lawsuit is based on application of state statutes – portions of H.B. 96 codified into Ohio Revised Code § 169 – which Plaintiffs claim will result in an unconstitutional taking of their property. As articulated in the Complaint, Plaintiffs' claims are based on two Ohio Supreme Court cases: *Sogg v. Zurg*, 121 Ohio St. 3d 449 (2009), and *City of Norwood v. Horney*, 110 Ohio St.3d 353 (2006). (*See* Compl., ECF No. 1, PageID 6, 12.) And, while they run from it now in an effort to downplay their brazen forum shopping, to the extent this lawsuit should have been filed at all, Plaintiffs correctly filed it in state court in Ohio. As Plaintiffs recognized when they filed this case there, the Ohio state courts provide a proper forum to resolve this dispute, which is based on the interpretation of state law.

Plaintiffs are correct when they note that *Pullman* abstention is appropriate where: "(1) the case involves a sensitive area of social policy better left to state resolution; [and] (2) a definitive state-court ruling on state law could avoid or substantially narrow the federal constitutional issue." (Opp., ECF No. 15, PageID 219.) With respect to the first factor, Plaintiffs' failure to acknowledge

4

the policy issues at play here disregards their own Complaint. The Complaint is riddled with allegations surrounding Plaintiffs' displeasure with the escheat process set forth in Revised Code Chapter 169. (*See generally* Compl., ECF No. 1.) Plaintiffs' policy arguments include lengthy discussions about how the escheated funds will be used, including pages of allegations about the Cleveland Browns' history and Ohio's political landscape. (*Id*. at PageID 7-13.) Plaintiffs' Complaint relies on a letter from the Ohio Attorney General which states that the statutes at issue make for "poor policy," and Plaintiffs contend that the challenged statutes make for "[p]oor policy indeed." (*See* Compl. Exh. B, ECF. No. 1-6, PageID 46; Compl., ECF No. 1, PageID 12.) Plaintiffs themselves have characterized this dispute as being about policy. Now that that characterization is inconvenient for them from an abstention perspective, they simply ignore it.

Plaintiffs also ignore the argument from Defendants' opening brief about how proceeding in state court would obviate the need for federal court intervention, which is relevant to the second factor they identify. (*See* Defs.' Mot. to Dismiss or stay Pls.' Compl. on Abstention Grounds (the "Motion"), ECF No. 3, PageID 91.) If Plaintiffs' claims have merit, the statutes will be struck down as unconstitutional in the Ohio courts and there will be no need for this Court to resolve the dispute; if they are wrong, and the Ohio state courts determine that the statute is a true escheat statute that does not result in a taking, there also will be nothing left for this Court to resolve. *See Texaco, Inc. v. Short*, 454 U.S. 516, 530 (1982) ("[A]fter abandonment, the former owner retains no interest for which he may claim compensation."); *Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322, 1334-35 (recognizing that under the United States Supreme Court's decision in *Texaco*, property interests under an escheatment statute are extinguished). As with their own prior allegations, Plaintiffs cannot avoid *Pullman* abstention by ignoring facts and arguments that support its application.

Finally, Plaintiffs ask this Court to apply a third requirement in the *Pullman* analysis: that "the relevant state law is genuinely uncertain or ambiguous, such that its interpretation could materially affect the constitutional analysis." (Opp., ECF No. 15, PageID 219.) Plaintiffs cite three cases purportedly in support of that requirement, *United States v. Anderson Cnty., Tenn.*, 705 F.2d 184 (6th Cir. 1983), *Am. Motors Sales Corp. v. Runke*, 708 F.2d 202 (6th Cir. 1983), and *Heitmanis v. Austin*, 899 F.2d 521 (6th Cir. 1990). None of those cases supports Plaintiffs' position.

In *Anderson Cnty.*, the court explained that "*Pullman* abstention may be appropriate to moot a federal issue in the presence of some unsettled question of state law *or* when there is a need to interpret an ambiguous state statute." *Anderson Cnty.*, 705 F.2d at 187 (emphasis added). Here, as outlined above, the first part of that sentence is satisfied. The ***alternative*** – the existence of ambiguous statutes – is just that, an alternative, and it is unnecessary here. *See id*.

In *Runke*, the Court explained as follows:

> Runke's final argument is that the District Court should abstain in this case in order that Kentucky be given an opportunity to construe its statute in a constitutional manner. ***This argument clearly fits within the* Pullman *abstention doctrine which requires a federal court to abstain pending state court determination of potentially dispositive issues of state law***.

*Runke*, 708 F.2d at 207 (6th Cir. 1983) (emphasis added). The court ultimately declined to abstain under *Pullman* on ambiguity grounds, noting that "[i]f a challenged state law is clear and unambiguous…the District Court should not abstain." *Id*. Importantly, though, the court was explicit when it stated that "unambiguous" in this context means that the statute is "not fairly subject to a state court interpretation that will render it constitutional." *Id*. As explained above, the statutes here most certainly can (and should) be interpreted by the Ohio courts in a way that will

render them constitutional. Thus, even if this Court recognizes ambiguity as a factor in the *Pullman* analysis, the way ambiguity is defined in this context puts this case squarely within the doctrine.[1]

### C. PLAINTIFFS FAIL TO ACCOUNT FOR THE BROAD REGULATORY SCHEME AT PLAY AS IT RELATES TO *BURFORD* ABSTENTION.

Plaintiffs argue that *Burford* abstention does not apply here because Plaintiffs are not seeking a review of a technical administrative determination and because the Unclaimed Funds Trust Fund (the "UFTF") claim process is not a "complex state administrative regime." (Opp., ECF No. 15, PageID 221.) Plaintiffs simultaneously read *Burford* too narrowly and ignore the robust regulatory scheme at play in Ohio, which this lawsuit seeks to – and, indeed, would – upend.

An overarching blind spot in Plaintiffs' lawsuit is their refusal to follow the well-established administrative procedures that would make them whole. (*See* Motion, ECF No. 3, PageID 92-94.) If they would follow the administrative process available to them, they would recover every penny of funds they are entitled to from the UFTF and could not possibly suffer any harm by the enactment of the statutes they seek to invalidate. In their Opposition, Plaintiffs downplay the robust administrative scheme in Ohio that they have refused to follow, but that scheme places this case directly within the *Burford* abstention doctrine.

In *Saginaw Housing Comm'n v. Bannum, Inc.*, the Sixth Circuit explained that "[w]hile the presence of a state agency is not conclusive proof that *Burford* abstention is appropriate, the Supreme Court has found that the presence of such a process does indicate that a court should consider *Burford* abstention." *Saginaw Housing Comm'n v. Bannum, Inc.*, 576 F.3d 620, 626 (6th Cir. 2009). The Sixth Circuit continued its analysis by recognizing that "the creation of an agency to promulgate and administer the state policy has served as evidence of the state's level of concern and of its desire for uniform application of the policy." *Id*. (collecting cases).

---

[1] The court in *Heitmanis* did not address the ambiguity issue at all.

Defendants raised this argument in their Motion and, while Plaintiffs rely on *Saginaw Housing* in their Opposition, they disregard the facts that demonstrate that the relevant state agency here does exactly what the court in *Saginaw Housing* described. As Defendants explained – and Plaintiffs fail to rebut – Ohio has created the very type of agency described in *Saginaw Housing*:

- The Division of Unclaimed Funds, which sits within the Ohio Department of Commerce (the "Division"), was created by Ohio law. Ohio Rev. Code § 121.08(J).

- The Division has powers and duties delegated to it by statute. *Id*.

- The Division is charged with specialized duties related to overseeing and administering unclaimed funds – including processing claims. *See* Ohio Rev. Code §§ 169.01, *et seq*.

- Ohio Revised Code Chapter 169 establishes an administrative process for individuals to claim unclaimed funds held in the UFTF; when claimants believe they have property in the UFTF, they may file a claim with the Division, including through a public website maintained by the Division. Ohio Rev. Code § 169.08; Ohio Admin. Code § 1301:10-4-01(A).

- The Division evaluates the claim and can consider evidence. Ohio Rev. Code § 169.08(B); Ohio Admin. Code § 1301:10-4-01(B). A hearing on the claim must be held if the claimant requests one. Ohio Rev. Code § 169.08(B); Ohio Admin. Code §§ 1301:10-4-01(B), 1301:10-2-02. From there, the Division decides the claim, and that decision is subject to appeal. Ohio Admin. Code § 1301:10-2-02.

On the face of the applicable statutory and regulatory structure, Plaintiffs' unsupported contention that the Division's role is merely to "administer[] a custodial claims process," is incorrect. (Opp., ECF No. 15, PageID 221.) No doubt Plaintiffs are dissatisfied with the recent amendments to Revised Code Chapter 169, but their refusal to utilize the prescribed administrative process to reclaim the money they know is in the UFTF is exactly why this lawsuit runs the risk of usurping Ohio's administrative process designed for ***precisely*** the alleged harm Plaintiffs claim gives rise to this lawsuit – retrieving their unclaimed funds.

This lawsuit is an attempted end-run around the state administrative process, a process that would make Plaintiffs whole if they chose to follow it. The *Burford* abstention doctrine provides this Court with an avenue to avoid using limited judicial resources, where Plaintiffs can obtain

complete relief through the administrative process. On the other hand, permitting this case to proceed in the face of *Burford* would allow Plaintiffs to abrogate by litigation the administrative scheme that Ohioans' duly elected officials put in place.

## IV. DEFENDANTS ARE NOT PROCEEDING UNDER *COLORADO RIVER*.

Unlike the *Pullman* and *Burford* abstention doctrines, the *Colorado River* abstention doctrine does require a pending parallel state court proceeding as a prerequisite to its application. When Defendants filed their Motion, they had not received notice of Plaintiffs' voluntary dismissal of their state court lawsuit. Upon filing their Motion, Defendants learned that there had been a delay in the state court's electronic notice system and, despite Plaintiffs' certificate of service on their notice of dismissal stating that they had served Defendants by email, Plaintiffs had not, in fact, done so. Accordingly, despite their diligence, Defendants had no way to know that Plaintiffs had dismissed their state court action.

Given the record as Defendants currently understand it, there is no pending parallel state court action for *Colorado River* abstention purposes. Therefore, Defendants do not intend to proceed with that argument.

## V. CONCLUSION

Plaintiffs were facing dispositive motions in state court that would have resulted either in a dismissal of their claims or, at a minimum, having those claims severely limited by negating their class allegations. Rather than respond to those motions, Plaintiffs engaged in forum shopping. As Plaintiffs have attempted to proceed here, though, this Court should decline their invitation because this case belongs in state court, if anywhere.

Accordingly, Defendants respectfully ask this Court to enter an order either dismissing or staying this lawsuit under the *Pullman* doctrine, the *Burford* doctrine, or both.

Respectfully submitted,

*/s/ Aneca E. Lasley*
Aneca E. Lasley (OH 0072366)
Andrea E. Howell (OH 0101138)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, Ohio 43215
Tel: (614) 462-2700/Fax: (614) 462-5135
Aneca.Lasley@icemiller.com
Andrea.Howell@icemiller.com

Joshua Klarfeld (OH 0079833)
ICE MILLER LLP
600 Superior Ave East, Suite 1300
Cleveland, OH 44114
Tel: (216) 394-5063
Joshua.Klarfeld@icemiller.com

*Special Counsel for Defendants Sheryl Maxfield (in her official capacity as Director of the Ohio Department of Commerce), Akil Hardy (in his official capacity as Superintendent of the Ohio Division of Unclaimed Funds), Robert Sprague (in his official capacity as Ohio Treasurer), and Joy Bledsoe (in her official capacity as Executive Director of the Ohio Facilities Construction Commission)*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served on this 31st day of October 2025 via the Court's electronic filing system to all counsel of record indicated on the electronic filing receipt.

    */s/ Aneca E. Lasley*
    Aneca E. Lasley (OH 0072366)

*Special Counsel for Defendants Sheryl Maxfield (in her official capacity as Director of the Ohio Department of Commerce), Akil Hardy (in his official capacity as Superintendent of the Ohio Division of Unclaimed Funds), Robert Sprague (in his official capacity as Ohio Treasurer), and Joy Bledsoe (in her official capacity as Executive Director of the Ohio Facilities Construction Commission)*