## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **MARY BLEICK,** *et al.*, | ) | **Case No.: 2:25-cv-01140** |
| | ) | |
| **Plaintiffs,** | ) | **Judge Edmund A. Sargus, Jr.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SHERYL MAXFIELD, in her official** | ) | |
| **capacity as Director of Commerce**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND FOR TEMPORARY RESTRAINING ORDER

## COMBINED TABLE OF CONTENTS AND
## LOCAL RULE 7.2(a)(3) SUMMARY

**Page**

I.  INTRODUCTION.................................................................................1

II. FACTS AND BACKGROUND .........................................................2

    A.  Ohio's Unclaimed Funds Law Is Codified in Ohio Revised Code Chapter 169 ............................................................................2

    B.  The Ohio General Assembly Amended the Unclaimed Funds Statutes............4

    C.  Two of the Defendants Have Roles in Administering the UFTF; Two Do Not.............................................................................5

    D.  Plaintiffs Have Challenged Portions of H.B. 96 .................................5

    E.  Plaintiffs Have Shown No Urgency for the Relief Plaintiffs Now Seek ...........6

III. ARGUMENT .....................................................................................6

    A.  Legal Standard ............................................................................6

    B.  The Supreme Court's *Knick* Decision Is Fatal to Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order Because Plaintiffs Have an Adequate Remedy at Law ................................................8

        1.  Plaintiffs Improperly Ask this Court to Rely on the Pre-*Knick Taylor* Cases from the Ninth Circuit.............................................10

        2.  Plaintiffs' Efforts to Manufacture an Irreparable Injury Lack Support.................................................................................11

**Summary**: The United States Supreme Court decision in *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180 (2019), is dispositive of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. In that case, the Supreme Court held that, in a case like this one, injunctive relief was inappropriate: "[B]ecause the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable. As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking." *Id.* at 201. Even if this Court were to assume the challenged legislation would constitute a taking under federal law, Plaintiffs cannot show that they will suffer an irreparable harm that could not be remedied with a monetary judgment. Therefore, "there is no basis to enjoin the government's action effecting a taking." *Id*.

**C.**      **Plaintiffs Cannot Demonstrate a Strong Likelihood of Success on the Merits** .......................................................................................................**11**

      **1.**      **The Eleventh Amendment Bars Plaintiffs' State Law claims** ..............**12**

**Summary**: The Eleventh Amendment "prohibits suits naming the state or one of its agencies," including suits brought against state officials in their official capacity. *In re Ohio Execution Protocol Litig.*, 709 F. App'x 779, 783 (6th Cir. 2017) (citations omitted). None of the exceptions to the Eleventh Amendment's sovereign immunity apply here to permit Plaintiffs to pursue any of their state-law claims. Because the Court lacks jurisdiction over those claims, those claims cannot serve as the basis for this Court issuing injunctive relief.

      **2.**      **The Amended Statutes do not result in a taking** ...................................**14**

**Summary**: Escheat statutes, like those that Plaintiffs challenge here, have been around and have withstood constitutional challenges for decades. The United States Supreme Court's decisions in *Standard Oil Co. v. New Jersey*, 341 U.S. 428 (1951), and *Texaco, Inc. v. Short*, 454 U.S. 516 (1982), control. Those cases both recognize that states are permitted to deem property rights abandoned if the property owner does not act on those rights within a specified period of time. *See Standard Oil Co.*, 341 U.S. at 436; *Texaco, Inc.*, 454 U.S. at 526. In *Texaco* specifically, the Court held that "the State has the power to condition the permanent retention of [a] property right on the performance of reasonable conditions that indicate a present intention to retain the interest." *Texaco, Inc.*, 454 U.S. at 526. Those cases and their progeny recognize that escheat statutes like the ones at issue here do not result in unconstitutional takings for which a prior owner must be compensated.

      **3.**      **Plaintiffs are unlikely to prevail on their Due Process claims** .............**19**

**Summary**: Plaintiffs' Due Process claims fail, as the statutes in question provide for adequate notice and, in fact, Plaintiffs themselves had **actual notice** that their funds were held in Ohio's Unclaimed Funds Trust Fund. The notice provisions in the challenged statutes comply with the standards set forth in *Jones v. Flowers*, 547 U.S. 220 (2006), and *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950). In fact, Plaintiffs themselves have referred to Ohio's notice requirements as bearing a "striking similarity" to the notice requirements in California's Unclaimed Property Law, and the notice provisions in California's law have been held constitutionally adequate.

      **4.**      **Defendants have defenses to Plaintiffs' claims that are likely to result in a defeat of those claims on the merits** .................................................**22**

**Summary**: Plaintiffs' state law claims, which they try to use to bolster their request for injunctive relief, all fail because Plaintiffs have not exhausted their administrative remedies. *See, e.g.*, *Merkel v. Scovill, Inc.*, 570 F. Supp. 133, 139 (S.D. Ohio 1983), *rev'd on other grounds*, 787 F.2d 174 (6th Cir. 1986); *Baker v. Warren Cnty. Fiscal Ct. ex rel. City-County Planning Comm'n*, 2007 WL 486739, at *2 (W.D. Ky. Feb. 12, 2007). Ohio has a clear and accessible administrative process that Plaintiffs could have utilized – and can still use now, **and even after January 1, 2026** – to claim property held in Ohio's Unclaimed Trust Fund. Plaintiffs' refusal to do so bars their state law claims for failure to exhaust administrative remedies.

Plaintiffs' claims also fail because Plaintiffs lack standing and their claims are not ripe. *See, e.g.*, *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)) ("Standing is 'the threshold question in every federal case.'"). Among other things, standing requires Plaintiffs to show that they have suffered an actual or threatened injury due to alleged illegal conduct of a defendant. *Barber v. Charter Twp. of Springfield, Michigan*, 31 F.4th 382, 390 (6th Cir. 2022); *Coyne*, 183 F.3d at 494. Plaintiffs cannot make that showing here for two reasons. First, Plaintiffs cannot self-inflict an injury to obtain standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) ("self-inflicted injuries" did not give plaintiffs' standing); *Buchholz*, 946 F.3d at 866 (collecting cases) ("[Plaintiff's] alleged injury looks like a self-inflicted injury, in which case he lacks standing to sue[.]"). Second, Plaintiffs will not suffer any harm until January 1, ***2036***, at the earliest, and the year 2036 is not imminent; it is more than a decade off. They also can avoid that harm altogether if they make valid claims under the existing administrative procedures.

The basic rationale behind the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over [governmental] policies, and also to protect the [governmental entity] from judicial interference until a[]…decision has been formalized and its effects felt in a concrete way by the challenging parties." *Barber*, 31 F.4th at 388 (cleaned up). In the same way Plaintiffs have not exhausted their administrative remedies, and for the same reasons they lack standing, Plaintiffs also do not have claims that will be ripe until at least 2036. They could have asserted, and still can assert, claims under the available administrative procedures and recover their funds that are in the Ohio Unclaimed Funds Trust Fund.

    **D.**      **The Remaining Injunction Factors Counsel Against Granting One Here .....28**

          **1.**      **The issuance of an injunction would cause substantial harm to others ..........................................................................28**

          **2.**      **The issuance of an injunction is not in the public interest ..................29**

**Summary**: Granting the requested injunction would harm the State of Ohio and its taxpayers and doing so is not in the public interest. A governmental body can be substantially harmed by an injunction preventing the enforcement of a constitutional law. *See, e.g.*, *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). The injunction Plaintiffs request here would harm the State and its taxpayers by holding up a law that is designed ultimately to generate revenues. Plaintiffs' attempt to elevate their personal judgments over those of Ohio's duly elected officials should not serve as the basis for injunctive relief.

**IV.**    **CONCLUSION ...............................................................................................30**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.F. v. Ass'n of Am. Med. Colleges,*
  678 F. Supp. 3d 952 (S.D. Ohio 2023) ...................................................................... 7

*Abbott Labs. v. Gardner,*
  387 U.S. 136 (1967) ................................................................................................. 28

*ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.,*
  219 F. Supp. 3d 665 (S.D. Ohio 2016) ...................................................................... 7

*Accent Grp., Inc. v. N. Randall,*
  2005-Ohio-5345 (8th Dist.) ...................................................................................... 25

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles,*
  559 F.3d 1046 (9th Cir. 2009) ................................................................................. 11

*Ammex, Inc. v. Wenk,*
  936 F.3d 355 (6th Cir. 2019) ............................................................................... 7, 28

*Avaya Inc. v. Ohio Dep't of Commerce, Div. of Unclaimed Property,*
  2021-Ohio-4626 (10th Dist.) ..................................................................................... 2

*Baker v. Warren Cnty. Fiscal Ct. ex rel. City-County Planning Comm'n,*
  2007 WL 486739 (W.D. Ky. Feb. 12, 2007). ........................................................... 23

*Barber v. Charter Twp. of Springfield, Michigan,*
  31 F.4th 382 (6th Cir. 2022) ............................................................................... 26, 28

*Bd. of Educ. of Shelby Cnty., Tenn. v. Memphis City Bd. of Educ.,*
  911 F. Supp. 2d 631 (W.D. Tenn. 2012) .................................................................. 28

*Bigelow v. Mich. Dep't of Nat. Res.,*
  970 F.2d 154 (6th Cir. 1992) ................................................................................... 28

*Blanchette v. Connecticut General Ins. Corporations,*
  419 U.S. 102 (1974) ................................................................................................. 28

*Boler v. Earley,*
  865 F.3d 391 (6th Cir. 2017) ................................................................................... 12

*Buchholz v. Meyer Njus Tanick, PA,*
  946 F.3d 855 (6th Cir. 2020) ................................................................................... 26

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*,
  511 F.3d 535 (6th Cir. 2007) ............................................................. 12

*CHKRS, LLC v. City of Dublin*,
  984 F.3d 483 (6th Cir. 2021) ............................................................. 26

*Christianson v. King Cnty.*,
  239 U.S. 356 (1915)........................................................................... 17

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)........................................................................... 8, 9

*City of Norwood v. Horney*,
  110 Ohio St. 3d 353 (2006) ............................................................... 19

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)........................................................................... 26

*Connection Distrib. Co. v. Reno*,
  154 F.3d 281 (6th Cir. 1998) ............................................................. 29

*Coyne v. Am. Tobacco Co.*,
  183 F.3d 488 (6th Cir. 1999) ............................................................. 26

*Crowell v. Benson*,
  285 U.S. 22 (1932)............................................................................. 15

*D.T. v. Sumner Cty. Sch.*,
  942 F.3d 324 (6th Cir. 2019) ........................................................... 7, 8

*Delaware v. New York*,
  507 U.S. 490 (1993)........................................................................... 17

*Driscoll v. Austintown Associates*,
  42 Ohio St.2d 263 (1975) ....................................................... 24, 25, 26

*Elrod v. Burns*,
  427 U.S. 347 (1976)........................................................................... 11

*Ernst v. Rising*,
  427 F.3d 351 (6th Cir. 2005) ............................................................. 13

*Eubanks v. Wilkinson*,
  937 F.2d 1118 (6th Cir. 1991) ........................................................... 15

*Ex Parte Young*,
  209 U.S. 123 (1908)..................................................................... 12, 13

*Gonzales v. Nat'l Bd. of Medical Exam'rs*,
    225 F.3d 620 (6th Cir. 2000) ............................................................... 7, 12

*Gunderson v. Burnaugh*,
    2025 WL 1424634 (S.D. Ohio May 15, 2025) ........................................... 6

*Hall v. Edgewood Partners Ins. Ctr., Inc.*,
    878 F.3d 524 (6th Cir. 2017) ................................................................ 12

*In re Ohio Execution Protocol Litig.*,
    709 F. App'x 779 (6th Cir. 2017) ............................................... 12, 13, 14

*Int'l Union of Painters & Allied Trades Dist. Council No. 6 v. Smith*,
    148 F.4th 365 (6th Cir. 2025) ................................................................ 9

*Jan Peters v. Cohen*,
    2024 WL 645557 (E.D. Cal. Feb. 14, 2024) ...................................... 20, 21

*Jones v. Chagrin Falls*,
    77 Ohio St.3d 456 (1997) .................................................................... 25

*Jones v. Flowers*,
    547 U.S. 220 (2006) ....................................................................... 19, 20

*Karches v. City of Cincinnati*,
    38 Ohio St.3d 12 (1988) ...................................................................... 25

*Knick v. Twp. of Scott, Pennsylvania*,
    588 U.S. 180 (2019) .................................................................... passim

*Laborers' Int'l Union of N. Am., Loc. 860 v. Neff*,
    29 F.4th 325 (6th Cir. 2022) ............................................................... 7, 8

*Ladd v. Marchbanks*,
    971 F.3d 574 (6th Cir. 2020) ........................................................... 13, 14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................ 26

*Mankins v. Paxton*,
    142 Ohio App.3d 1 (10th Dist. 2001) ................................................... 25

*Merkel v. Scovill, Inc.*,
    570 F. Supp. 133 (S.D. Ohio 1983),
    *rev'd on other grounds*, 787 F.2d 174 (6th Cir. 1986) ............................ 23

*Moore v. Brunner*,
    2008 (S.D. Ohio Aug. 21, 2008) ............................................................. 7

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ................................................................................ 19, 20

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003) ...................................................................................... 28

*Noernberg v. Brook Park*,
  63 Ohio St.2d 26 (1980) ............................................................................... 24

*Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*,
  305 F.3d 566 (6th Cir. 2002) ........................................................................... 9

*Patio Enclosures, Inc. v. Herbst*,
  39 F. App'x 964 (6th Cir. 2002)) (Sargus, J.) .................................................. 7

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ....................................................................................... 13

*Peters v. Cohen*,
  2025 WL 733237 (9th Cir. Mar. 7, 2025) ...................................................... 21

*Pivonka v. Corcoran*,
  2020-Ohio-3476 ........................................................................................... 25

*Plain Loc. Sch. Dist. Bd. of Educ. v. DeWine*,
  486 F. Supp. 3d 1173 (S.D. Ohio 2020) ........................................................ 15

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017) ............................................................................ 7

*Reno v. Catholic Social Services, Inc.*,
  509 U.S. 43 (1993) ....................................................................................... 28

*River City Capital, L.P. v. Bd. of Cnty. Comm'rs*,
  491 F.3d 301 (6th Cir. 2007) ......................................................................... 28

*Sec. Sav. Bank v. State of California*,
  263 U.S. 282 (1923) ..................................................................................... 17

*Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*,
  119 F.3d 393 (6th Cir. 1997) ......................................................................... 12

*Sogg v. Zurz*,
  121 Ohio St. 3d 449 (2009) ....................................................................... 1, 18

*Springtree Apartments, ALPIC v. Livingston Parish Council*,
  207 F. Supp. 2d 507 (M.D. La. 2001) ............................................................ 11

*Standard Oil Co. v. New Jersey*,
341 U.S. 428 (1951) ................................................................................................ passim

*State ex rel. Dix v. Celeste*,
11 Ohio St.3d 141 (1984) ................................................................................................ 15

*State ex rel. Lieux v. Westlake*,
154 Ohio St. 412 (1951) ................................................................................ 24, 25, 26

*State ex rel. New Wen, Inc. v. Marchbanks*,
2020-Ohio-63 ................................................................................................ 18

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) ................................................................................................ 28

*Stormans, Inc. v. Selecky*,
586 F.3d 1109 (9th Cir. 2009) ................................................................................................ 10

*Taylor v. Westly*,
488 F.3d 1197 (9th Cir. 2007) ................................................................................ 10, 11

*Taylor v. Yee*,
780 F.3d 928 (9th Cir. 2015) (*Taylor V*) ................................................................ 20, 21

*Tennessee v. Dep't of Educ.*,
104 F.4th 577 (6th Cir. 2024) ................................................................................................ 29

*Texaco, Inc. v. Short*,
454 U.S. 516 (1982) ................................................................................................ passim

*Texas Mun. League Intergovernmental Risk Pool v. Texas Workers' Comp. Comm'n*,
74 S.W.3d 377 (Tex. 2002) ................................................................................................ 17

*Turker v. Ohio Dep't of Rehab. & Corr.*,
157 F.3d 453 (6th Cir. 1998) ................................................................................ 13, 14

*United HealthCare Servs., Inc. v. Corzine*,
2021 (S.D. Ohio Mar. 15, 2021) (Sargus, J.) ................................................................ 8

*United States v. Salerno*,
481 U.S. 739 (1987) ................................................................................................ 15

*Waliga v. Coventry Twp.*,
2004-Ohio-5683 (9th Dist.) ................................................................................ 24, 25

*Walker v. City of Toledo*,
2017-Ohio-416 (6th Dist.) ................................................................................................ 25

*Warth v. Seldin*,
   422 U.S. 490 (1975).................................................................................................. 26

*Williams v. Cuyahoga Cnty.*,
   776 F. Supp. 3d 653 (N.D. Ohio 2025)..................................................................... 15

*Winter v. NRDC*,
   555 U.S. 7 (2008)...................................................................................................... 10

**Statutes**

12 U.S.C. § 1822......................................................................................................... 27

42 U.S.C. § 1983..................................................................................................... 5, 25

Ohio Admin. Code 1301:10-1-01.................................................................................. 2

Ohio Admin. Code 1301:10-2-02................................................................................ 23

Ohio Admin. Code 1301:10-3-03.................................................................................. 2

Ohio Admin. Code 1301:10-4-01................................................................................ 23

Ohio Rev. Code § 123.281......................................................................................... 30

Ohio Rev. Code § 169.01........................................................................................ 2, 4

Ohio Rev. Code § 169.02...................................................................................... 2, 21

Ohio Rev. Code § 169.03............................................................................... 2, 3, 21, 22

Ohio Rev. Code § 169.05..................................................................................... 2, 10

Ohio Rev. Code § 169.06.................................................................................... 3, 4, 22

Ohio Rev. Code § 169.08............................................................................... 4, 9, 23, 27

## I.    INTRODUCTION

Plaintiffs' request for injunctive relief ignores binding precedent from the United States Supreme Court in favor of lower-court authority that has been overruled. Their Motion for Preliminary Injunction and for Temporary Restraining Order (ECF No. 20, "Mot. for PI/TRO") seeks to enjoin properly enacted and constitutionally sound governmental activity based on the policy judgments of unelected private citizens. Their Motion for Preliminary Injunction and Temporary Restraining Order fails for three reasons.

*First*, as a matter of Supreme Court precedent, injunctive relief is not available for the claims Plaintiffs have asserted in this lawsuit. *See Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019) (holding that even where a property owner has an actionable takings claim, "***[s]o long as the property owner has some way to obtain compensation after the fact, governments need not fear that courts will enjoin their activities.***" (emphasis added)). Thus, Plaintiffs cannot satisfy the prerequisite for injunctive relief that requires them to demonstrate that they face irreparable harm. Even if the Court ultimately rules in Plaintiffs' favor on the merits (which, for the reasons explained below, Defendants dispute), nothing about the challenged statutes will result in a loss to Plaintiffs that cannot and would not be remedied. *See Knick*, 588 U.S. at 185.

*Second*, Plaintiffs are not likely to prevail on the merits. Plaintiffs ask this Court to follow the state court case of *Sogg v. Zurz*, 121 Ohio St. 3d 449 (2009), as though it is somehow controlling (it is not) and as though it held that the Ohio General Assembly could never amend the unclaimed funds statutes (it did not). This case is indistinguishable from *Standard Oil Co. v. New Jersey*, 341 U.S. 428, 430 (1951), and *Texaco, Inc. v. Short*, 454 U.S. 516 (1982), which analyzed and upheld statutory structures no different from the challenged statutes here. Just as the Supreme Court recognized in those cases, the legislation that Plaintiffs contend constitutes a due process violation and an unconstitutional taking here simply is not objectionable.

*Third*, the remaining injunction factors do not favor Plaintiffs because the requested injunction would cause harm to others and because the public interest would not be served by the issuance of the requested injunction.

Plaintiffs plainly do not like the legislation they are challenging, but their remedy is at the ballot box, not at the courthouse – and certainly not through injunctive relief.

## II.    FACTS AND BACKGROUND

### A.    Ohio's Unclaimed Funds Law Is Codified in Ohio Revised Code Chapter 169.

Ohio's Unclaimed Funds Law – Ohio Rev. Code §§ 169.01 *et seq.* – provides that certain dormant funds are to be reported as unclaimed funds and remitted for deposit and held in Ohio's Unclaimed Funds Trust Fund (the "UFTF"). The Ohio Department of Commerce, Division of Unclaimed Funds (the "Division") is charged with implementing the statutes and maintaining the UFTF. § 169.05; *Avaya Inc. v. Ohio Dep't of Commerce, Div. of Unclaimed Property*, 2021-Ohio-4626, ¶ 2 (10th Dist.). Funds deposited into the UFTF include certain bank account funds, certificates of deposit, and insurance proceeds that have been dormant or for which there has been no owner-generated activity for a statutorily prescribed period of time. Ohio Rev. Code § 169.02. Potential holders of unclaimed funds, like financial institutions, are required to annually review their books and records to identify dormant funds which are properly reportable to the Division. § 169.03. If a holder identifies no properly reportable funds, it must submit a "negative report" to evidence it has completed an annual review of its records. Ohio Admin. Code 1301:10-3-03(B). For unclaimed funds with a value of $50 or more, the holder must report the full name and last known address of the owner; the nature, identifiers, and description of the funds; the date when the funds become payable and/or last date of owner-generated activity; and the owner's social security number, if known. Ohio Rev. Code § 169.03(A)(2); Ohio Admin. Code 1301:10-1-01(P).

The unclaimed funds statutes contain robust notice requirements before any funds are moved from the holder to the UFTF. Each holder is required to "send notice to each owner of each item of unclaimed funds having a value of fifty dollars or more at the last known address of the owner as shown by the records of the holder." Ohio Rev. Code § 169.03(E). That notice must:

> [1] set forth the nature and identifying number, if any, or description of the funds and the amount appearing on the records of the holder to be due the owner or beneficiary, and [2] shall inform the owner or beneficiary that the funds will, thirty days after the mailing of the notice, be reported as unclaimed funds under this chapter. [3] A self-addressed, stamped envelope shall be included with the notice, with instructions that the owner or beneficiary may use the envelope to inform the holder of the owner's or beneficiary's continued interest in the funds, and, if so informed before the date for making the report to the director, the holder shall not report the funds to the director. [4] The notice shall be mailed by [a] first class mail if the item of unclaimed funds has a value of fifty dollars or more but less than one thousand dollars and by [b] certified mail, return receipt requested, if the item of unclaimed funds has a value of one thousand dollars or more, unless the holder has verified that the last known address of the owner or beneficiary as shown by the records of the holder is not accurate.

*Id.* Additionally, the Division has the authority to – and does – audit holders to confirm their compliance with the Unclaimed Funds Law including the required provision of notice to fund owners. *See* § 169.03(G).

The notice requirements do not end there. Once the funds move into the UFTF, the Director is required to provide **yearly** publication notice to all owners of unclaimed funds in all 88 Ohio counties, with specific reference to the names and last known addresses for unclaimed funds owners reportedly owed fifty dollars or more. *See* Ohio Rev. Code § 169.06(A), (B). Additionally, the Director is statutorily required to make available during business hours a list of the owners of unclaimed funds over ten dollars with the same individual specificities. *See* § 169.06(C). The Director also is authorized to "give any additional notice using any electronic or print medium that the director deems necessary to inform the owner of the whereabouts of the owner's funds," Ohio

§ 169.06(D), which the Director does through the website the Division maintains at https://unclaimedfunds.ohio.gov/.[1]

**B.      The Ohio General Assembly Amended the Unclaimed Funds Statutes.**

On June 30, 2025, Governor Mike DeWine signed H.B. 96, Ohio's biennial budget bill. As relevant to this lawsuit, H.B. 96 made changes to the Unclaimed Funds Statutes to provide that funds held in the UFTF for ten years or more are deemed abandoned by operation of law and escheat to the State. Under the amended statutes:

- Funds deposited before January 1, 2016 will escheat on January 1, 2026. Ohio Rev. Code § 169.08(I)(1).

- Funds deposited after January 1, 2016 will escheat after ten years – unless, of course, they are claimed at any time during that ten-year period. § 169.09(I)(2).

- Claimants still may recover escheated funds until January 1, 2036 by filing a valid claim. § 169.08(I)(3)(b).

- The escheated funds are to be transferred to the newly created Ohio Cultural and Sports Facility Performance Grant Fund. *See* §§ 123.282, 169.08(I)(4).

- Section 229.40 of H.B. 96 makes an appropriation for funds to be used for the construction of a new stadium:

  There is hereby appropriated $1,000,000,000 in fiscal year 2026 to appropriation item 042428, Cultural, Sports, and Major Sports Facilities Performance Grants, from revenues received in the Ohio Cultural and Sports Facility Performance Grant Fund…The Office of Budget and Management shall use $600,000,000 from appropriation item…to support construction of a transformational major sports facility mixed-use project pursuant to section 123.281 of the Revised Code that is associated with a Brook Park economic development project.

- The Office of Budget Management is instructed to use the remaining $400,000,000 "to support construction or renovation of an Ohio cultural or sports facility." *Id.*

- All notice provisions remain in place. *See generally* Ohio Rev. Code §§ 169.01 *et seq.*

---

[1] *See* Declaration of Amy Schellhammer, attached as Exhibit 1, ¶ 18.

**C.    Two of the Defendants Have Roles in Administering the UFTF; Two Do Not.**

Sheryl Maxfield is Ohio's Director of Commerce. Compl., ECF No. 1 at PageID 12, ¶ 62. Akil Hardy is the Superintendent of the Division, which sits inside the Department of Commerce. *Id*. at PageID 13, ¶ 64. Robert Sprague is the Ohio State Treasurer – an office that will not be tasked with causing any funds to escheat from the UFTF pursuant to H.B. 96 and that will play no role with respect to the appropriation or expenditure of any funds that will be escheated from the UFTF pursuant to H.B. 96.[2] Joy Bledsoe serves as the Executive Director for the Ohio Facilities Construction Commission a Commission that, contrary to Plaintiffs' assertions, will have no role or responsibilities with regard to the UFTF under H.B. 96.[3]

**D.    Plaintiffs Have Challenged Portions of H.B. 96.**

Plaintiffs claim they are the "rightful owners of property currently held in trust by the State of Ohio pursuant to Ohio Revised Code Chapter 169 in" the UFTF. Compl., ECF No. 1 at PageID 4, ¶ 8. They allege they have "confirmed" that "the State is currently holding property to which they are entitled, either as original owners or heirs of the original owners." *Id*., ¶ 13. Plaintiffs claim that Ohioans must now "'race the clock' in an attempt to recover their property or the property they are entitled to as heirs of the original property owner, fundamentally altering the property rights of Ohioans and other with claims to property in the UFTF[.]" *Id*. at PageID 6, ¶ 30.

The Complaint sets forth seven counts. Plaintiffs bring Counts I and II under 42 U.S.C. § 1983, claiming that the amended statutes permitting unclaimed funds to be escheated violates the Takings Clause of the U.S. Constitution and the Due Process Clause of the Fourteenth Amendment. In Count III, Plaintiffs claim that the escheat provisions of the amended statutes violate Article I, Section 19 of the Ohio Constitution. In Count IV, they claim the amended statutes

---

[2] *See* Declaration of Zachary Prouty, attached as Exhibit 2, ¶¶ 4, 5.
[3] *See* Declaration of Joy Bledsoe, attached as Exhibit 3, ¶ 3.

violate "the State's fiduciary duty to the Plaintiffs and the class." In Count V, they allege that H.B. 96 violates the "single subject rule" in Article II, Section 15(D) of the Ohio Constitution. In Count VI, Plaintiffs allege they are entitled to declaratory judgment. Finally, in Count VII, Plaintiffs allege that passage of H.B. 96 impermissibly exceeded the bounds of the Legislature's authority.

### E. Plaintiffs Have Shown No Urgency for the Relief Plaintiffs Now Seek.

Plaintiffs filed a prior iteration of this lawsuit more than four months ago, on July 7, 2025, in the Franklin County Court of Common Pleas. Plaintiffs did not move for injunctive relief at that time. Defendants then filed a Motion to Dismiss and Motion to Strike Class Allegations in state court. *See* Motion to Dismiss for Lack of Jurisdiction, ECF Nos. 3-2, 3-3. Plaintiffs did not move for an injunction then either. Plaintiffs instead requested an extension of time for their responses to those motions, to which Defendants agreed. Plaintiffs' deadline to respond to the two motions was extended to October 1, 2025. Still, Plaintiffs did not move for an injunction.

Plaintiffs then voluntarily dismissed their state court action on October 1, 2025, and filed this lawsuit on October 2, 2025. *See* Compl., ECF No. 1. Even then, Plaintiffs did not seek injunctive relief until October 31, 2025, nearly four months after first filing suit, and nearly an entire month after filing in this Court.

## III. ARGUMENT

### A. Legal Standard

"A [temporary restraining order] is an emergency measure, meant to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Gunderson v. Burnaugh*, 2025 WL 1424634, *2 (S.D. Ohio May 15, 2025) (internal citation and quotations omitted). "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *ABX*

*Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016). Accordingly, a temporary restraining order "should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *A.F. v. Ass'n of Am. Med. Colleges*, 678 F. Supp. 3d 952, 961-62 (S.D. Ohio 2023) (Sargus, J.). "The moving party must demonstrate a right to injunctive relief by clear and convincing evidence." *Moore v. Brunner*, 2008 WL 3887639, *3 (S.D. Ohio Aug. 21, 2008) (citing *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 969 (6th Cir. 2002)) (Sargus, J.).

Preliminary injunction motions require district courts to balance four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Ammex, Inc. v. Wenk*, 936 F.3d 355, 359 (6th Cir. 2019) (citation and quotations omitted). Plaintiffs seeking an injunction to prevent an alleged taking must further demonstrate that the challenged conduct qualifies as a taking and that they have no adequate remedy at law. *Laborers' Int'l Union of N. Am., Loc. 860 v. Neff*, 29 F.4th 325, 334 (6th Cir. 2022) (citing *Knick*, 588 U.S. at 201).

Contrary to Plaintiffs' assertion, the first two factors for an injunction are not "balanced" against the equities. *See* Mot. for PI/TRO, ECF No. 20, at PageID 263 (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)). "[A]lthough the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory." *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 326-27 (6th Cir. 2019) (emphases in original). Accordingly, absent a showing of irreparable injury, there is nothing to balance. *Id.* Similarly, "[a] finding that there is simply no likelihood of success on the merits is usually fatal." *A.F.*, 678 F. Supp. 3d at 962 (quoting *Gonzales v. Nat'l Bd. of Medical Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000)).

Plaintiffs have not satisfied the requirements of either a temporary restraining order or a preliminary injunction. Nor can they.

**B.    The Supreme Court's *Knick* Decision Is Fatal to Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order Because Plaintiffs Have an Adequate Remedy at Law.**

Plaintiffs fail to acknowledge the implication of the Supreme Court's decision in *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180 (2019). Plaintiffs correctly note that *Knick* held that a plaintiff's damages claim under the Takings Clause "arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." *Id.* at 181. Although that presupposes a finding of a taking (which Defendants deny here), *Knick* further held that injunctive relief was inappropriate: "[B]ecause the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, ***equitable relief is generally unavailable***. As long as an adequate provision for obtaining just compensation exists, ***there is no basis to enjoin the government's action effecting a taking***." *Id.* at 201 (emphases added). Before an injunction should issue in a case alleging a taking, the movants must establish "not only that the challenged conduct qualifies as a taking, but that [they] also have no 'adequate remedy at law.'" *Neff*, 29 F.4th at 334 (citing *Knick*, 588 U.S. at 200).

As is the case here, *Knick* demonstrates the Supreme Court's recognition that a takings plaintiff ordinarily cannot show irreparable harm and, therefore, is not entitled to injunctive relief. Under the injunctive relief standard, "the existence of an irreparable injury is mandatory." *D.T.*, 942 F.3d at 327. It is well established that preliminary injunctive relief "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also United HealthCare Servs., Inc. v. Corzine*, 2021 WL 961217, *19 (S.D. Ohio Mar. 15, 2021) (Sargus, J.) ("To establish irreparable harm, the movant must show that an

injury is certain and immediate, not speculative or theoretical.") (internal citation and quotation omitted). Where injuries have "an adequate remedy at law," such as sufficient monetary relief, those injuries are not "irreparable." *Lyons*, 461 U.S. at 111. Thus, to establish that they will face irreparable harm in the absence of injunctive relief, Plaintiffs must show that they are at risk of suffering some harm that "is not fully compensable by monetary damages." *Int'l Union of Painters & Allied Trades Dist. Council No. 6 v. Smith*, 148 F.4th 365, 371 (6th Cir. 2025) (quoting *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)).

Were they to succeed on their claims, Plaintiffs would have an adequate remedy at law, and therefore no irreparable harm. Whether or not the statutes are struck down, and whether or not their funds escheat, Plaintiffs could submit a claim to the Division of Unclaimed Funds to recover their funds. That is true even after January 1, 2026. *See* Ohio Rev. Code § 169.08(I)(3)(b) (as amended by H.B. 96). In the aggregate, Plaintiffs would have claims for less than $275.[4] Even with approximately $1.7 – 1.9 billion set to escheat on January 1, 2026, more than ***$2 billion*** will remain in the UFTF.[5] The amount Plaintiffs could claim represents 0.000014% of the funds that would remain in the UFTF, to say nothing about the State's ability to reimburse Plaintiffs should their claims ultimately succeed.[6] That places this case squarely within *Knick*, where the Supreme Court stated: "As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking." *Knick*, 588 U.S. at 201.[7]

---

[4] Schellhammer Decl., ¶ 22.
[5] *Id.*, ¶ 21.
[6] *Id.*, ¶ 22.
[7] Similarly, Plaintiffs have not alleged or provided any evidence that either the administrative claims process or judicial review of denied claims are inadequate remedies.

1. **Plaintiffs Improperly Ask this Court to Rely on the Pre-*Knick Taylor* Cases from the Ninth Circuit.**

In a failed effort to avoid *Knick* and the absence of irreparable harm, Plaintiffs cite a pre-*Knick*, out-of-circuit case for the proposition that "[o]nce property is sold, it may be impossible for plaintiffs to reacquire it, thus creating the requisite irreparable harm." Mot. for PI/TRO, ECF No. 20, at PageID 276 (quoting *Taylor v. Westly*, 488 F.3d 1197 (9th Cir. 2007) (*Taylor II*)). That statement has nothing to do with Plaintiffs' challenge here. Their property has already been placed in the UFTF and, as such, converted to cash. Ohio Rev. Code § 169.05(A) ("Securities and other intangible property transferred to the director shall, within a reasonable time, be converted to cash and the proceeds deposited as provided for other funds."); Petrime Decl., ECF No. 20-3, at PageID 294, ¶ 3; Bleick Decl., ECF No. 20-4, at PageID 301, ¶ 3; Butler Decl., ECF No. 20-5, at PageID 307, ¶ 3. There are no allegations suggesting there is tangible property at issue in this case; thus, there is nothing at stake here besides money (which is fungible) and *Taylor II* does not apply.

Regardless, *Taylor II* has been overruled. In *Taylor II*, the Ninth Circuit determined that an injunction was appropriate based on a so-called "sliding scale" test for granting injunctive relief. *Taylor II*, 488 F.3d at 1200. Under that standard, a plaintiff need only show the "possibility" of irreparable harm. *Id*. The Ninth Circuit's standard also embraced a "sliding scale in which the required degree of irreparable harm increases as the probability of success decreases," as they "are not separate tests but rather outer reaches of a single continuum." *Id*. But the Supreme Court has overruled the Ninth Circuit's approach, reiterating that a plaintiff seeking an injunction must demonstrate that irreparable harm is likely, not just possible. *Winter v. NRDC*, 555 U.S. 7, 19 (2008) (rejecting the Ninth Circuit's alternative "sliding scale" test). The Ninth Circuit subsequently recognized that *Winter* overruled its prior precedent. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) ("In *Winter*, the Supreme Court definitively refuted our

'possibility of irreparable injury' standard, stating 'the Ninth Circuit's 'possibility' standard is too lenient. Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." (emphasis in original)). Thus, the Ninth Circuit has held that cases decided under the lesser standard "are no longer controlling, or even viable." *Id.* (quoting *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009)). This Court should disregard *Taylor II*.

### 2. Plaintiffs' Efforts to Manufacture an Irreparable Injury Lack Support.

Because they cannot point to an actual risk of a truly irreparable injury, Plaintiffs contend that merely alleging a constitutional violation suffices. *See* Mot. for PI/TRO, ECF No. 20, PageID 275. To support that contention, Plaintiffs cite *Springtree Apartments, ALPIC v. Livingston Parish Council*, 207 F. Supp. 2d 507, 515 (M.D. La. 2001), which in turn relies on *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Supreme Court in *Elrod* actually held that "[t]he loss of **First Amendment freedoms**, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* (emphasis added). This, of course, is not a First Amendment case. And, even if a court in Louisiana attempted to broaden *Elrod*'s holding to all constitutional questions, *Knick* expressly rejects such a holding where, as here, any alleged harm would be compensable with money.

Plaintiffs utterly fail to address, much less distinguish, *Knick*'s conclusion that injunctions in these types of cases is improper. They have an adequate remedy at law, which precludes irreparable harm. Thus, injunctive relief is unavailable, and Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order should be denied.

### C. Plaintiffs Cannot Demonstrate a Strong Likelihood of Success on the Merits.

An independent basis for denying Plaintiff's Motion is their inability to demonstrate a **strong** likelihood of success on the merits. "A finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Medical Exam'rs*, 225 F.3d 620, 625 (6th

Cir. 2000) (recognizing "strong likelihood of success on the merits" factor for injunctive relief). Unhappy with that standard, Plaintiffs purport to quote *Hall v. Edgewood Partners Inc. Ctr., Inc.*, 878 F.3d 524, 527 (6th Cir. 2017), for the proposition that they need only show a "reasonable probability [instead of a strong likelihood] that it [sic] will prevail on the merits." Mot. for PI/TRO, ECF No. 20, at PageID 264. That quote does not appear in *Hall*, nor is it the standard. Instead, "a plaintiff must show more than a mere possibility of success." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (quoting *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997)).

Plaintiffs cannot make the requisite showing here for numerous independent reasons.

### 1. The Eleventh Amendment Bars Plaintiffs' State Law claims.

Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order blends federal and state law. Because this Court lacks jurisdiction over state law claims against state officials in federal court, any discussion of the merits of Plaintiffs' claims must begin by separating the claims over which the Court has jurisdiction from those it does not. The Court lacks jurisdiction over Counts III, IV, V, or VII of Plaintiffs' Complaint under the Eleventh Amendment, and Plaintiffs cannot rely on those claims to justify emergency relief.

The Eleventh Amendment "prohibits suits naming the state or one of its agencies," including suits brought against state officials in their official capacity. *In re Ohio Execution Protocol Litig.*, 709 F. App'x 779, 783 (6th Cir. 2017) (citations omitted). "There are three exceptions to sovereign immunity: (1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), applies." *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017) (cleaned up). With respect to state law claims, however, only the waiver exception will avoid sovereign immunity. *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453,

456-57 (6th Cir. 1998) ("It is…well-established that a federal court cannot entertain a lawsuit against state officials for violations of state law unless the state has waived its immunity under the Eleventh Amendment."). Congress cannot abrogate immunity for claims arising under state law, and the *Ex Parte Young* exception "does not extend to prospective injunctive or declaratory relief based on alleged violations of state law." *In re Ohio Execution Protocol*, 709 F. App'x at 783 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)). Indeed, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* (quoting *Pennhurst*, 465 U.S. at 106).

Accordingly, absent waiver, suits against state officials seeking a declaration that they violated state law are barred by the Eleventh Amendment. *Id.*; *see also Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005) (en banc) ("[T]he states' constitutional immunity from suit prohibits *all* state-law claims filed against a [s]tate in federal court, whether those claims are monetary or injunctive in nature." (emphasis in original)). Likewise, "federal courts cannot enjoin state officials from violating state law." *Ladd v. Marchbanks*, 971 F.3d 574, 582 (6th Cir. 2020).

Here, Plaintiffs pay lip service to the Eleventh Amendment, but they seek to subvert it at every turn. In their Complaint, Plaintiffs claim to assert their state law causes of action – Article I, Section 19; breach of fiduciary duty; the single-subject rule; and abuse of legislative authority – "subject to the Eleventh Amendment" and *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). *See, e.g.*, Compl., ECF No. 1, at PageID 21, ¶ 121. Therefore, Plaintiffs say, they "seek only declaratory relief to the extent cognizable in federal court ***and do not request an order compelling state officials to comply with state law***, reserving such relief for Ohio courts if necessary." *Id*. (emphasis added). Yet, Plaintiffs have done just that; they openly seek injunctive relief based on their claims for breach of fiduciary duty, Mot. for PI/TRO, ECF No. 20, at PageID

13

274-75, and a violation of Article I, Section 19 of the Ohio Constitution, *see id.* at PageID 258-59, 271. Additionally, Plaintiffs insinuate that the bill enacting the challenged amendments ran afoul of the Ohio Constitution's single-subject provision. *See id.* at PageID 258.

This Court does not have subject-matter jurisdiction over Plaintiff's claims for breach of fiduciary duty or violations of the Ohio Constitution. Ohio has not waived its immunity under the Eleventh Amendment, and there is no other basis for federal jurisdiction over those claims. *Turker*, 157 F.3d at 457. This Court may not issue injunctive relief on any of Plaintiffs' state law claims. *Ladd*, 971 F.3d at 582. And, contrary to the allegations in Plaintiffs' Complaint, there is no Eleventh Amendment exception for declaratory relief based on alleged violations of state law. *In re Ohio Execution Protocol Litig.*, 709 F. App'x at 783. Plaintiffs have no likelihood of success on their state law claims, and they cannot rely on them to support their Motion for Preliminary Injunction and Temporary Restraining Order.

A final point. Plaintiffs make much of several Supreme Court of Ohio cases interpreting the Ohio Constitution's takings clause. *See, e.g.*, Mot. for PI/TRO, ECF No. 20 at PageID 257-58, 272, 278. The Court should ignore these discussions. Beyond lacking jurisdiction over any claim arising under the Ohio Constitution, a state court's decisions interpreting its own constitution say nothing about the proper interpretation of the U.S. Constitution.

### 2. The Amended Statutes do not result in a taking.

#### a. Challenged statutes are presumed constitutional.

Plaintiffs' challenges to H.B. 96 fail as a matter of law. Plaintiffs' Complaint, clothed in hyperbole and outrage, imagines H.B. 96 as a novel, unconstitutional way for the State to claim Ohioans' personal property. Escheat statutes, like those amended by H.B. 96, have been around – and have withstood constitutional challenges – for decades. The amended statutes here are constitutional, and the State's assumption of title is not a taking.

14

Courts begin statutory analysis with a presumption that legislative enactments are constitutional, and the "party challenging the constitutionality of a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt." *Plain Loc. Sch. Dist. Bd. of Educ. v. DeWine*, 486 F. Supp. 3d 1173, 1196 (S.D. Ohio 2020) (quoting *State ex rel. Dix v. Celeste*, 11 Ohio St.3d 141, 142 (1984)). Further, "[a] facial challenge is 'the most difficult challenge to mount successfully,' because a plaintiff must carry a 'heavy burden' to 'establish that no set of circumstances exists under which the Act would be valid.'" *Williams v. Cuyahoga Cnty.*, 776 F. Supp. 3d 653, 670 (N.D. Ohio 2025) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Thus, "[c]ourts construe statutes to avoid constitutional difficulty when 'fairly possible.'" *Eubanks v. Wilkinson*, 937 F.2d 1118, 1122 (6th Cir. 1991) (quoting *Crowell v. Benson*, 285 U.S. 22 (1932)).

### b.  H.B. 96 amends Chapter 169 to create "true escheat" statutes.

Escheat is a centuries-old concept. Originating in feudal England and incorporated into early American law, it provides that the sovereign takes title to real or personal property in the absence of any owner. Note, *Origins and Development of Modern Escheat*, 61 Colum. L. Rev. 1319, 1326-27 (1961). Originally applied as a principle of intestate succession, the concept expanded to include escheat of abandoned property. *See id.* at 1319-20, 1330. But rather than enacting "true" escheat statutes for personal property, many states elected to enact "custodial" escheat statutes through which the state did not necessarily take title. Under these custodial statutes, the state held the property for the benefit of the owners. *See id.* at 1330.

As states adopted unclaimed property statutes in the wake of the Revolutionary War, some states' "custodial" statutes provided for the state to take custody of the property indefinitely; others provided that, after a period of time, the property would escheat to the state. *See id*. at 1331 ("In some states the owner's claim is barred after the statutory period has expired, and at such time escheat occurs."); Bernert, *An Examination of Unclaimed Property Laws After the Adoption of*

*RUUPA: Suggestions for Continued Advancement*, 71 Tax Law. 941, 944 (2018) ("Some states' laws provided for the state to conserve the property for the owner, while using it for the benefit of the state, until a statutory period passed and ownership passed to the state by escheat.").

### c. True escheat statutes are constitutional.

Escheat statutes have been the subject of constitutional challenges for decades, resulting in voluminous precedent confirming the constitutionality of the amended statutes here. Among the litany of authorities on this point, two United States Supreme Court cases are dispositive. First, in *Standard Oil Co. v. New Jersey*, 341 U.S. 428, 430 (1951), the plaintiff challenged New Jersey's Escheat Act. New Jersey's statute provided that, if property was unclaimed for 14 years, "such personal property shall escheat to the State." *Id*. The plaintiff argued that the Act constituted an unconstitutional deprivation of his property. *Id.* at 431-32. The Court upheld the Act, explaining that "a state, subject to constitutional limitations, may use its legislative power to dispose of property within its reach, belonging to unknown persons." *Id.* at 436.

Thirty years later, the U.S. Supreme Court examined the constitutionality of an Indiana law that provided for the lapse of mineral rights after twenty years of nonuse. *Texaco, Inc. v. Short*, 454 U.S. 516, 518-19 (1982). That law extinguished the owners' mineral rights and vested them in the then-current property owner. *Id.* As here, the appellants argued that the law resulted in an unconstitutional taking. *Id.* at 522. The Court disagreed, observing that "the State has the power to condition the permanent retention of [a] property right on the performance of reasonable conditions that indicate a present intention to retain the interest." *Id.* at 526. Examining its prior decisions, the Court concluded that, "[i]n each instance, as a result of the failure of the property owner to perform the statutory condition, an interest in fee was deemed as a matter of law to be abandoned and to lapse." *Id.* at 529. That did not constitute a taking: "***this Court has never required the State to compensate the owner for the consequences of his own neglect***." *Id.* at 530 (emphasis added).

Since the Supreme Court's decisions in *Standard Oil Co.* and *Texaco*, courts continue to uphold statutes like the ones at issue here. *See, e.g.*, *Delaware v. New York*, 507 U.S. 490, 497 (1993) ("States as sovereigns may take custody of or assume title to abandoned personal property as *bona vacantia*, a process commonly…called escheat."); *Texas Mun. League Intergovernmental Risk Pool v. Texas Workers' Comp. Comm'n*, 74 S.W.3d 377, 382 (Tex. 2002) ("Under absolute-escheat statutes, the state acquires title to property through operation of law or a judicial proceeding" and recognizing that escheat statutes are constitutional if they give claimants notice after the state acquires the funds and an administrative and judicial hearing to adjudicate claims.").[8]

### d. The amended statutes are consistent with others that have long been upheld.

The way the statutes have been amended precludes Plaintiffs' takings claims. When individuals have abandoned their property, "the former owner retains no interest for which he may claim compensation." *Texaco*, 454 U.S. at 530. "It is the owner's failure to make any use of the property – and not the action of the State – that causes the lapse of the property right; there is no 'taking' that requires compensation." *Id.* at 517. Further, a State may place reasonable conditions on the ownership of property. *See id.* at 526 ("We have no doubt that, just as a State may create a property interest that is entitled to constitutional protection, the State has the power to condition the permanent retention of that property right on the performance of reasonable conditions that indicate a present intention to retain the interest."). Here, that "reasonable condition" is filing a claim in order to effectuate the return of unclaimed property. If the owner fails or refuses to do so,

---

[8] *See also, e.g.*, *Christianson v. King Cnty.*, 239 U.S. 356 (1915) (holding that the legislature had authority to enact legislation codifying an escheat on death statute, and that an escheat under the law was proper); *Sec. Sav. Bank v. State of California*, 263 U.S. 282 (1923) (holding that abandoned funds properly escheated to the State of California after providing reasonable notice).

as Plaintiffs have done here, the State is not required "to compensate the owner for the consequences of his own neglect." *Id.*

H.B. 96 falls squarely on the right side of *Standard Oil Co.* and *Texaco*. What Plaintiffs claim amounts to an unconstitutional taking is nothing of the sort; it is nothing more than a state's placement of reasonable conditions on the ownership of property, and the loss of ownership rights flows from "the owner's failure to make any use of the property – and not the action of the State."[9]

### e. Plaintiffs ask the Court to rely on two Ohio Supreme Court decisions that are inapplicable here.

In the face of abundant authority upholding the very framework set forth in the amended statutes, Plaintiffs rely on *Sogg v. Zurz*, 121 Ohio St.3d 449 (2009), to claim that "the Ohio Supreme Court stated in 2009, the funds in the [UFTF] 'are not abandoned; they are the property of their owner.'" Compl., ECF No. 1, at PageID 6, ¶ 25. Plaintiffs' reliance on *Sogg* is misplaced; in fact, it provides a roadmap for why the amended statutes are constitutional. The Ohio Supreme Court in *Sogg* addressed whether, under the then-existing structure of Chapter 169, the State could retain interest earned on unclaimed funds. *See Sogg*, 121 Ohio St.3d at 449-50. The court held that interest was payable ***because*** the statute was not an escheat statute and, therefore, the plaintiffs retained property rights to the interest on their unclaimed funds. *Id.* at 450-51. The court left open the door to a different outcome had the statute been a true escheat statute, as it is now, and nowhere did it say or even suggest that a true escheat statute would be unconstitutional. Plaintiffs ask this Court to read *Sogg* as though it prohibited the General Assembly from ever amending the Unclaimed Funds Statutes, a reading that finds no support in *Sogg* itself or any other authority.

---

[9] The above analysis is the same under both the Federal and Ohio Constitutions. *See, e.g.*, *State ex rel. New Wen, Inc. v. Marchbanks*, 2020-Ohio-63, ¶¶ 14-16 (analyzing takings claims under United States and Ohio Constitutions together). To the extent the analysis is different, it does not matter here. As discussed, the escheat of funds in the UFTF is not a taking at all, making Article I, Section 19 inapplicable.

Plaintiffs also ask this Court to decide this case based on *City of Norwood v. Horney*, 110 Ohio St. 3d 353 (2006), which, they claim, "prohibits takings for private purposes." Mot. for PI/TRO, ECF No. 20, at PageID 254. *If* the amended statutes resulted in a taking, *Norwood* would be relevant. Because they do not (as explained above), *Norwood* is irrelevant.

The amended statutes are constitutional, and statutes like them have been upheld for decades. In light of the Court's obligation to liberally construe statutes to avoid constitutional infirmities, Plaintiffs' constitutional claims ring especially hollow and they have not demonstrated that they are likely to prevail on the merits on their takings claims.

### 3. Plaintiffs are unlikely to prevail on their Due Process claims.

As an initial matter, Plaintiffs' Due Process complaints presume that the statutes in question operate to deprive them of their property which, as explained above, they do not. Even if they were entitled to notice, Plaintiffs have received constitutionally adequate notice.

Due process generally requires notice and an opportunity to be heard before a deprivation of property or liberty occurs. *See Jones v. Flowers*, 547 U.S. 220, 220 (2006); *Texaco*, 454 U.S. at 523. Notice is constitutionally adequate if it is "***reasonably calculated***, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (emphasis added). Contrary to Plaintiffs' argument, though, *Mullane*'s requirements to provide notice and an opportunity to be heard are not limitless. In fact, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones*, 547 U.S. at 226. Moreover, "[p]roperty owners are charged with knowledge of relevant statutory provisions affecting the control or disposition of their property." *Texaco*, 454 U.S. at 517.

In the context of escheat statutes, the Supreme Court has already opined on what constitutes adequate notice. In *Standard Oil Co.*, for example, the Court examined the notice provisions of

New Jersey's unclaimed funds statute. That statute **required only notice by publication**, and the Court held that was sufficient notice. *Standard Oil Co.*, 341 U.S. at 443.

A line of cases involving these same Plaintiffs – and even their purported "expert" – provide good instruction on the interplay between the *Mullane-Jones* notice requirements and escheat statutes. In *Jan Peters v. Cohen*, 2024 WL 645557 (E.D. Cal. Feb. 14, 2024), the court considered a constitutional challenge to California's unclaimed property law lodged by Jan Peters, the same Jan Peters who is Plaintiff's "expert" here. The court there recognized that "[b]efore and after escheatment, the UPL requires multiple forms of notice be given to the owners of unclaimed property to comply with due process." *Id*. at *2.[10] It relied on the Ninth Circuit's decision in *Taylor v. Yee*, 780 F.3d 928, 931-32 (9th Cir. 2015) (*Taylor V*), where the Ninth Circuit outlined the notice provisions required under California's unclaimed funds framework, which it held were adequate:

> [T]he UPL provides that the holder "shall make reasonable efforts to notify any owner by mail or, if the owner has consented to electronic notice, electronically, that the owner's" property will escheat to the State. This notice is sent to the apparent owner's address, as reflected in the holder's records. The notice contains a form that the owner is to complete, sign, and return, in which case, "it shall be deemed that the [holder] knows the location of the owner," who claims the property.
>
> \*     \*     \*     \*
>
> If the owner does not respond to the holder's notice, the property is deemed unclaimed and the holder must report to the Controller "the name, if known, and last known address, if any, of each person appearing from the records of the holder to be the owner of any property of value of at least fifty dollars ($50) escheated under this chapter."
>
> \*     \*     \*     \*
>
> After the holder has reported the unclaimed property to the Controller, but before it is transferred, that is, pre-escheat, "the Controller shall mail a notice to each

---

[10] The term "escheatment" in the context of California's unclaimed property law is similar to the first step of the Ohio framework, where funds remain in the UFTF for ten years. In California, "[e]scheated property, including the proceeds from the sale of securities, does not 'permanently escheat to the state.'…Instead, the Controller holds the unclaimed property, including the proceeds from a sale, in trust for the owner." *Peters*, 2024 WL 645557, at *2.

> person having an address listed in the report who appears to be entitled to property
> of the value of fifty dollars ($50) or more escheated under this chapter."

*Id.* (internal citations and footnote omitted).

After the District Court dismissed the *Peters* lawsuit, the Ninth Circuit affirmed. *See Peters v. Cohen*, 2025 WL 733237 (9th Cir. Mar. 7, 2025). The plaintiff then sought Supreme Court review. *See* United States Supreme Court Petition for Writ of Certiorari in *Peters v. Cohen*, 2025 WL 1940378 (June 5, 2025). Plaintiffs in this case filed an amicus brief in *Peters* in support of the plaintiff's Petition, contending that their purported "interest stems from the striking similarity between the unconstitutional practices challenged in *Peters v. Cohen* and those at issue in litigation currently pending in Ohio." United States Supreme Court Brief Amicus Curiae of Mary Bleick, Todd Butler, and Allen Skierski in Support of Petitioner Jan Peters, 2025 WL 2735109, *2 (Aug. 11, 2025). The Supreme Court denied the Petition in *Peters*. *Peters v. Cohen*, Denial of Petition for Writ of Certiorari, 2025 WL 2906615 (Oct. 14, 2025).

Plaintiffs are correct that the notice provisions here are, indeed, strikingly similar, to the notice provisions that have been recognized as constitutional in *Taylor V* and *Peters*. Like in those cases, funds only end up in the UFTF if they have been unclaimed for a statutorily prescribed period of time and reported to the Division as such. Ohio Rev. Code § 169.02. Before funds even enter the State's custody (the equivalent of escheatment under California law), the statutes require that notice be given to the owner. § 169.03. Like in California:

> The holder of unclaimed funds under…shall send notice to each owner of each item
> of unclaimed funds having a value of fifty dollars or more at the last known address
> of the owner as shown by the records of the holder….The notice required by this
> division shall set forth the nature and identifying number, if any, or description of
> the funds and the amount appearing on the records of the holder to be due the owner
> or beneficiary, and shall inform the owner or beneficiary that the funds will, thirty
> days after the mailing of the notice, be reported as unclaimed funds under this
> chapter. A self-addressed, stamped envelope shall be included with the notice, with
> instructions that the owner or beneficiary may use the envelope to inform the holder
> of the owner's or beneficiary's continued interest in the funds, and, if so informed

before the date for making the report to the director, the holder shall not report the funds to the director. The notice shall be mailed by first class mail if the item of unclaimed funds has a value of fifty dollars or more but less than one thousand dollars and by certified mail, return receipt requested, if the item of unclaimed funds has a value of one thousand dollars or more, unless the holder has verified that the last known address of the owner or beneficiary as shown by the records of the holder is not accurate.

§ 169.03(E). *Ohio's statutes go further than California, by also authorizing the Division to audit the holders to ensure compliance with the notice requirements.* § 169.03(G).

Subsequently, and still before the funds escheat under Ohio law, the Division itself annually issues particularized notice of unclaimed funds. Ohio Rev. Code § 169.06. The Division also provides ongoing notice by maintaining a website where fund owners can search for their unclaimed funds at any time, free of charge. Funds then escheat to the State only after an additional ten years and, even then, claimants still have a grace period until 2036 (more than another ten years from now) to bring claims and be reimbursed for escheated funds. § 169.08(I)(3)(b).

Finally, Plaintiffs here had notice far exceeding any constitutional due process requirement. In addition to all the statutory notice requirements set forth in Revised Code Chapter 169, Plaintiffs admit they each had *actual notice* of funds in the UFTF, as they allege that "[e]ach Plaintiff has confirmed, via a review of the public database maintained by the Ohio Division of Unclaimed Funds, that the State is currently holding unclaimed property to which they are entitled[.]" Compl., ECF No. 1, at PageID 4, ¶ 13. That admission makes it indisputable that Plaintiffs had adequate notice, and that notice exceeds what was constitutionally required of Defendants.

    **4.**     **Defendants have defenses to Plaintiffs' claims that are likely to result in a defeat of those claims on the merits.**

        **a.**     **Plaintiffs' failure to exhaust their administrative remedies bars their state law claims.**

Plaintiffs have asserted four *state law* claims: Counts III and V (Violations of the Ohio Constitution); Count IV (Breach of Fiduciary Duty); and Count VII (Abuse of Legislative

Authority/Ultra Vires Act). As set forth above, these claims are unambiguously barred by the Eleventh Amendment. But there is an additional, independent reason why they will fail: state exhaustion law applies. *See, e.g.*, *Merkel v. Scovill, Inc.*, 570 F. Supp. 133, 139 (S.D. Ohio 1983), *rev'd on other grounds*, 787 F.2d 174 (6th Cir. 1986); *Baker v. Warren Cnty. Fiscal Ct. ex rel. City-County Planning Comm'n*, 2007 WL 486739, at *2 (W.D. Ky. Feb. 12, 2007).

Ohio has a clear and accessible administrative process for individuals to claim funds held in the UFTF. When claimants believe they have funds in the UFTF, they may file a claim with the Division, including through a public website maintained by the Division. Ohio Rev. Code § 169.08; Ohio Admin. Code 1301:10-4-01(A).[11] The Division evaluates the claim and can consider evidence and subpoena witnesses and documents as necessary. Ohio Rev. Code § 169.08(B); Ohio Admin. Code 1301:10-4-01(B). The claimant also may request a formal hearing and where a hearing is requested, the Division is required to hold one. Ohio Rev. Code § 169.08(B); Ohio Admin. Code 1301:10-4-01(B), 1301:10-2-02. From there, the Division decides the claim, and that decision is subject to appeal. Ohio Admin. Code 1301:10-2-02.

The administrative procedure is readily available and free. Everything needed to file a claim is maintained on the Division's website. The Division also maintains free resources, like frequently asked questions and informational videos, to educate the public on retrieving unclaimed funds.[12] Plaintiffs offer no complaints about the administrative process. They also have not alleged (nor can they) that the available administrative remedies are insufficient to make them whole.

---

[11] *See also* Schellhammer Decl., ¶ 19 (referencing Ohio Department of Commerce Division of Unclaimed Funds, *Ohio Unclaimed Funds – Claim Your Lost Money*, https://com.ohio.gov/divisions-and-programs/unclaimed-funds).

[12] *See also* Schellhammer Decl., ¶ 19 (referencing Ohio Department of Commerce Division of Unclaimed Funds, *What Are Unclaimed Funds* https://com.ohio.gov/divisions-and-programs/unclaimed-funds/about-unclaimed-funds).

Plaintiffs could have availed themselves of the administrative process and, had they done so, they would have no funds that ever would be subject to escheat or otherwise implicated by the amendments to the statutes. Additionally, Plaintiffs can still avail themselves of the administrative remedies right now to make claim to their purported funds. And they even can do so *after* January 1, 2026. *See* Ohio Rev. Code § 169.08(I)(3)(b). Intent on maintaining this lawsuit instead of protecting their property interests, though, Plaintiffs have decided to willfully ignore their readily available, statutorily prescribed remedies, opting instead to present the Court with a problem of their own creation. Without any basis to claim that their administrative remedies are unavailable or burdensome, Plaintiffs were required to resolve at least their state law claims through the administrative process before bringing suit.

"The exhaustion of administrative remedies doctrine is a well-established principle of Ohio law." *Waliga v. Coventry Twp.*, 2004-Ohio-5683, ¶ 12 (9th Dist.) (citing *Noernberg v. Brook Park*, 63 Ohio St.2d 26, 29 (1980), and *State ex rel. Lieux v. Westlake*, 154 Ohio St. 412, 415-16 (1951)). Specifically, "the doctrine requires that a party exhaust available administrative remedies prior to seeking court action in an administrative matter." *Id.* (citing *Noernberg*, 63 Ohio St.2d at 29-30). Plaintiffs are relieved of the exhaustion requirement only when (1) exhaustion would be futile or (2) the remedy would be onerous or unusually expensive. *Id.* And a litigant bringing a constitutional challenge must still exhaust administrative remedies even though the administrative body would not have the ability to hear a litigant's constitutional challenge. *Id.* at ¶¶ 16-18.

In *Driscoll v. Austintown Associates*, 42 Ohio St.2d 263 (1975), one of Ohio's seminal exhaustion cases, the Ohio Supreme Court considered a plaintiff's challenge to an ordinance that prohibited the construction of multi-family dwelling units on a parcel he owned. *Id.* at 266. The Court held that the plaintiff was required to exhaust his administrative remedies – seeking a zoning

variance – before bringing a constitutional challenge in the trial court. *Id.* at 274. The court noted that before "initiating a declaratory judgment action attacking the constitutionality of a zoning ordinance as applied to his property, the owner normally must exhaust any administrative remedy that could provide him with the relief he seeks." *Id.* at 273. *Driscoll* relied heavily on *Lieux*, where the Ohio Supreme Court explained that the rationale behind exhaustion in the context of a constitutional challenge included the "fundamental principle of law that constitutional questions will not be decided until the necessity for their decision arises." *Lieux*, 154 Ohio St. at 415.

In the years since *Lieux* and *Driscoll*, their holdings have been affirmed in various contexts. *See, e.g.*, *Jones v. Chagrin Falls*, 77 Ohio St.3d 456, 459 (1997) (endorsing *Driscoll*); *Karches v. City of Cincinnati*, 38 Ohio St.3d 12, 17 (1988) (discussing *Driscoll* and the exhaustion requirement); *Walker v. City of Toledo*, 2017-Ohio-416, ¶¶ 2, 5, 7, 35 (6th Dist.) (rejecting putative class action constitutional challenge to automated traffic law enforcement system where named plaintiff had failed to exhaust administrative remedies set forth in traffic law); *Accent Grp., Inc. v. N. Randall*, 2005-Ohio-5345, ¶¶ 10-15 (8th Dist.) (requiring exhaustion before constitutional challenge could be brought); *Waliga*, 2004-Ohio-5683, at ¶¶ 17-19 (affirming dismissal of constitutional challenges to an ordinance for failing to exhaust administrative remedies); *Mankins v. Paxton*, 142 Ohio App.3d 1, 9 (10th Dist. 2001) (42 U.S.C. § 1983 action). Most recently, the Ohio Supreme Court reaffirmed the principle that "even though administrative agencies cannot adjudicate constitutional questions…a party cannot circumvent the administrative-review process by first raising a constitutional challenge" in court. *Pivonka v. Corcoran*, 2020-Ohio-3476, ¶ 24. Rather, "***the proper procedure for raising a constitutional challenge is to first exhaust all administrative remedies***." *Id.* (emphasis added).

Under *Lieux*, *Driscoll*, and their progeny, because Plaintiffs' alleged injury is one for which an administrative remedy is available, they were required to exhaust that remedy before bringing this lawsuit, meaning they are unlikely to prevail on their state law claims.

### b. Plaintiffs lack an actual, imminent injury sufficient to establish standing.

"Standing is 'the threshold question in every federal case.'" *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)); *see also CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 488 (6th Cir. 2021) (quoting *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 860 (6th Cir. 2020)) ("the plaintiff who brings the dispute to the court must have 'standing.'"). To satisfy standing: (1) plaintiffs must have suffered an actual or threatened injury due to the defendant's alleged illegal conduct, (2) the injury must be fairly traceable to the challenged conduct, and (3) there must be a substantial likelihood that the relief sought will remedy or prevent the injury. *Barber v. Charter Twp. of Springfield, Michigan*, 31 F.4th 382, 390 (6th Cir. 2022); *Coyne*, 183 F.3d at 494. An injury in fact is defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Plaintiffs lack standing here for two reasons. First, they cannot self-inflict an injury to obtain standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) ("self-inflicted injuries" did not give plaintiffs' standing); *Buchholz*, 946 F.3d at 866 (collecting cases) ("[Plaintiff's] alleged injury looks like a self-inflicted injury, in which case he lacks standing to sue[.]"). That principle derives from the causation requirement: if plaintiffs' own conduct caused their injuries, then it is not the law in question that has. Plaintiffs here simply ignored (and continue to ignore) the available administrative procedure entirely. By deciding not to file claims under that process, they plan to cause their own injury and lack standing to claim that Defendants are at fault.

Second, Plaintiffs lack an actual, imminent, and concrete injury. Plaintiffs allege that they each are "rightful owners of property" held in the UFTF. Compl., ECF No. 1, at PageID 4, ¶ 8. They have not alleged how long their funds have been in the UFTF nor where the funds came from, much less that they are unable to make a claim to recover those funds right now. Under the amended statutes, if funds have already been unclaimed for ten years, they will escheat on January 1, 2026. Ohio Rev. Code § 169.08(I)(1). For funds that have been in the UFTF for less than ten years, though, those funds "are deemed abandoned and escheat to the state [after ten years only] if no valid claim is filed by the owner." § 169.08(I)(2). It is not even clear that Plaintiffs' funds will escheat on January 1, 2026. Even if they do, the amended statutes even allow claimants to recover the value of their abandoned property *until January 1, 2036*:

> (b) Notwithstanding division (I)(3)(a) of this section, the former owner or other person claiming a property interest in unclaimed funds that are deemed abandoned and escheat to the state *may file a claim for payment of an equivalent amount, together with interest earned by the state if required under division (D) of this section, at any time on or before January 1, 2036*. Upon providing sufficient proof of the validity of the owner's or other person's claim, the director shall pay the claim less any expenses and costs incurred by the state in securing full title and ownership of the unclaimed funds.

§ 169.08(I)(3)(b) (emphasis added). Thus, no matter what, Plaintiffs have had and will have *more than ten years* until they could theoretically experience any damages – that is hardly "imminent."[13]

Taken together, Plaintiffs' alleged injury is far too speculative, remote, and abstract to establish standing. They will not experience a harm until at least a decade from now, if ever. And

---

[13] The amendments may not even affect Plaintiffs' rights at all. If their unclaimed funds are in the form of unclaimed deposits from a failed bank that have been in the UFTF for more than ten years, federal law already prescribes that those funds belong to the Federal Deposit Insurance Corporation ("FDIC"). When the FDIC acts as a receiver over a financial institution, it gives depositors notice and up to 18 months to claim their deposits. 12 U.S.C. § 1822(e). After 18 months, the FDIC delivers the unclaimed funds to a state's unclaimed property division. § 1822(e)(2). If the depositor still does not claim the funds within ten years, the money becomes the FDIC's property. § 1822(e)(5). So, even if H.B. 96 had not been enacted, Plaintiffs' previously owned funds may anyway belong to the FDIC.

that assumes Plaintiffs sit on their hands and take no action to claim their funds before then, which is entirely within their control. Absent any imminent harm, Plaintiffs cannot maintain this lawsuit.

### c. Plaintiffs' claims will not be ripe until 2036 at the earliest.

Ripeness is determinative of a court's jurisdiction. *Bd. of Educ. of Shelby Cnty., Tenn. v. Memphis City Bd. of Educ.*, 911 F. Supp. 2d 631, 647 (W.D. Tenn. 2012) (citing *River City Capital, L.P. v. Bd. of Cnty. Comm'rs,* 491 F.3d 301, 309 (6th Cir. 2007), and quoting *Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992)). The basic rationale behind the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over [governmental] policies, and also to protect the [governmental entity] from judicial interference until a[]…decision has been formalized and its effects felt in a concrete way by the challenging parties." *Barber*, 31 F.4th at 388 (cleaned up) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)); *see also Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003). As relevant here, ripeness is "a question of timing." *Blanchette v. Connecticut General Ins. Corporations*, 419 U.S. 102, 140 (1974)). It is a constitutional consideration that limits judicial power. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, n.2 (2010) (citing *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 57, n.18 (1993)).

Plaintiffs' claims are not ripe for the reasons discussed above. Additionally, exercising jurisdiction here would put valuable court resources to use to adjudicate a remote, hypothetical injury that will occur (if at all) ***more than a decade in the future***.

### D. The Remaining Injunction Factors Counsel Against Granting One Here.

### 1. The issuance of an injunction would cause substantial harm to others.

The issuance of an injunction requires the Court to consider whether an injunction would cause substantial harm to others. *Ammex, Inc.*, 936 F.3d at 359. A governmental body can be

28

substantially harmed by an injunction. For example, the government can be substantially harmed by an injunction preventing the enforcement of a constitutional law. *See, e.g.*, *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (affirming denial of injunction and explaining that "the government presumably would be substantially harmed if enforcement of a *constitutional* law aimed at fighting child pornography were enjoined" (emphasis in original)). Here, the requested injunction stands to inflict an injury on the State of Ohio; specifically, an injury "to [its] interest in enforcing [its] duly enacted laws without contradiction from the federal government." *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 594-95 (6th Cir. 2024).

### 2. The issuance of an injunction is not in the public interest.

In what is presented as barely an afterthought without citation, Plaintiffs claim that the issuance of an injunction would serve the public interest because "[t]he public always has a compelling interest in ensuring that the government abides by the Constitution and the rule of law." Mot. for PI/TRO, ECF No. 20, at PageID 278. That, of course, presumes the unconstitutionality of the statutes in question without recognizing that when individuals abandon their property, they no longer have property in which to claim an interest; it is "deemed as a matter of law to be abandoned and to lapse." *Texaco, Inc.*, 454 U.S. at 529.

In contrast, it is actually the escheat of the unclaimed (abandoned) funds that is in the public interest. Rather than waste taxpayer dollars managing and holding funds for owners who will never show up, the State has deemed it appropriate to have that money escheat specifically to serve the public. Again, placing their private judgment ahead of that of Ohio's duly elected officials, Plaintiffs argue that the use of the escheated funds to help with the construction of a new stadium is a "private" endeavor with no benefit to the public. In reality, though, the escheated funds will put otherwise dormant funds to use to serve Ohio taxpayers. The appropriation made in H.B. 96 is intended to raise revenue, and there are strict limitations on that appropriation. For example, H.B.

96 requires that any major sports facility generate tax revenues *in excess of* the appropriation within 16 years. H.B. 96 at 221; Ohio Rev. Code § 123.281(H)(5). To reach that goal, the organization seeking to construct the facility must sign an agreement specifying target returns in four-year increments. H.B. 96 at 221; Ohio Rev. Code § 123.281(H)(5)(a)(i). If the project fails to create a return for Ohio's taxpayers, the State is to be reimbursed from an escrow account created as a prerequisite to an appropriation of money. H.B. 96 at 221; Ohio Rev. Code § 123.281(H)(5)(c).

Thus, "[t]he professional sports franchise planning to use the facility, or the owner or an authorized affiliate, [must have] executed…an escrow amount equal to eight and one-third per cent of the total amount of the performance grant appropriated for the project[.]" H.B. 96 at 220; Ohio Rev. Code § 123.281(H)(4)(a). Applied to the $600 million appropriation that has drawn Plaintiffs' ire, that will require an escrow amount of approximately about $50 million, which will be available for the State's reimbursement in the event that a major sports facility project fails to generate tax revenues in excess of the appropriation made by the State.

In other words, the appropriation ultimately is for the public's benefit, a benefit that an injunction would thwart.

## IV.    CONCLUSION

Plaintiffs' request for injunctive relief is not permitted under binding United States Supreme Court authority as set forth in *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180 (2019). Even if it were, Plaintiffs have not satisfied any of the requirements that would warrant imposing an injunction here. They have not established any irreparable harm, much less the likelihood of success on any of their claims. Their inability to satisfy those two factors is fatal to their Motion for Preliminary Injunction and Temporary Restraining Order, even if they could satisfy the other injunction factors.

Therefore, for the foregoing reasons, Defendants respectfully request an Order denying Plaintiffs' Motion.

Respectfully submitted,

*/s/ Aneca E. Lasley*
Aneca E. Lasley (0072366) (Trial Attorney)
Andrea E. Howell (0101138)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, Ohio 43215
Tel:  (614) 462-2700/Fax:  (614) 462-5135
Aneca.Lasley@icemiller.com
Andrea.Howell@icemiller.com

Joshua Klarfeld (0079833)
ICE MILLER LLP
600 Superior Ave East, Suite 1300
Cleveland, OH 44114
Tel:  (216) 394-5063
Joshua.Klarfeld@icemiller.com

John D. French (#37629-53)
*(Pro Hac Vice)*
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
Tel:  (317) 236-2100/Fax:  (317)-236-2219
JD.French@icemiller.com

*Special Counsel for Defendants Sheryl Maxfield (in her official capacity as Director of the Ohio Department of Commerce), Akil Hardy (in his official capacity as Superintendent of the Ohio Division of Unclaimed Funds), Robert Sprague (in his official capacity as Ohio Treasurer), and Joy Bledsoe (in her official capacity as Executive Director of the Ohio Facilities Construction Commission)*

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served via the Court's e-filing system on this 24th day of November, 2025 upon all counsel of record.

*/s/ Aneca E. Lasley*
Aneca E. Lasley (0072366)
