# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DISTRICT

| | | |
|---|---|---|
| **MARY BLEICK, et al.,** | ) | **2:2025-cv-01140** |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Judge Edmund A. Sargus Jr.** |
| | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **SHERYL MAXFIELD,** *in her official* | ) | |
| *capacity as Director of Commerce,* **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

<u>**TABLE OF CONTENTS**</u>

I.    INTRODUCTION ........................................................................................... 1

II.   FACTS AND BACKGROUND ................................................................... 2

III.  LAW AND ARGUMENT ............................................................................ 9

      A.    Defendants Misapply Knick:  Federal Courts Retain the Right To Impose
            An Injunction to Stop the Unconstitutional Taking of Property .................... 9

            1.    Knick Addressed Ripeness, Not Standards for Injunctive Relief ......... 9

**Summary:** The United States Supreme Court in *Knick v. Township of Scott*, 588 U.S. 180 (2019), addressed ripeness and eliminated the state-remedy exhaustion requirement; it did not foreclose injunctive relief where a taking is imminent and unconstitutional, and the Sixth Circuit recognizes injunctions may issue for impending physical takings (*Barber v. Charter Twp. of Springfield*, 31 F.4th 382, 388 (6th Cir. 2022)).

            2.    This Case Is Further Distinguishable from Knick. .............................. 10

**Summary:** Permanent legislative extinguishment of title and diversion of custodial funds differs categorically from compensation-dispute scenarios; pre-deprivation notice and hearing are constitutionally required (*Fuentes v. Shevin*, 407 U.S. 67, 80–82 (1972)), and a state cannot evade the Takings Clause by redefining away established property interests (*Hall v. Meisner*, 51 F.4th 185, 190 (6th Cir. 2022); *Bowers v. City of Flint*, 325 F.3d 758, 765 (6th Cir. 2003); *Calvert Invest., Inc. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 847 F.2d 304, 307 (6th Cir. 1988)).

      B.    Plaintiffs demonstrated a likelihood of success on the merits ........................ 14

            1.    The 11th Amendment Does Not Bar Federal Injunctive Relief to
                  Preserve Plaintiffs' Constitutional  Rights. .......................................... 14

**Summary:** Prospective injunctive relief to halt ongoing violations of federal law is permitted against state officials under *Ex parte Young*, 209 U.S. 123 (1908); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984), limits federal courts from ordering compliance with state law but does not bar federal-law injunctions, so the Eleventh Amendment is no obstacle to enjoining conduct alleged to violate the U.S. Constitution.

            2.    The State's Forfeiture Scheme Violates Both Due Process and the
                  Takings Clause. ................................................................................... 15

**Summary:** The Fifth and Fourteenth Amendments prohibit deprivation of property without Due Process and taking for public use without just compensation, and federal law governs whether state-created interests are constitutionally protected (*Calvert Invest., Inc. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 847 F.2d 304, 307 (6th Cir. 1988); *Bowers v. City of Flint*, 325 F.3d 758, 765 (6th Cir. 2003)); a statutory scheme that permanently extinguishes title without

individualized pre-deprivation process and redirects funds constitutes facial due-process and takings violations.

    **a.**      **The State's Failure to Provide Constitutionally Required Notice Violates Due Process Principles and Will Cause Irreparable Harm Unless Enjoined.** ................................................................................... 17

**Summary:** Due process demands notice "reasonably calculated" to inform interested parties before final deprivation (*Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)); when owners and addresses are known or ascertainable, publication or passive web posting is insufficient (*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983); *Jones v. Flowers*, 547 U.S. 220 (2006); *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 286 (6th Cir. 2005); *Keene Group, Inc. v. City of Cincinnati*, 998 F.3d 306, 311 (6th Cir. 2021)).

    **b.**      **The Statute Effects a Per Se Taking by Permanently Appropriating Private Property for Private Use.** ........................................................... 22

**Summary:** Permanent appropriation or extinguishment of property interests operates as a per se taking (*Cedar Point Nursery v. Hassid*, 594 U.S. 139, 140 (2021)), legislative exactions of private funds without lawful justification are impermissible (W*ebb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980)), and diversion for private use is unconstitutional regardless of compensation (*Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 245 (1984); *Montgomery v. Carter County*, 226 F.3d 758, 767 (6th Cir. 2000)); Ohio law confirms unclaimed funds remain the owners' private property, not the State's (*Sogg v. Zurz*, 121 Ohio St. 3d 449 (2009)).

    **3.**      **Defendants' Reliance on Texaco and Standard Oil is Misplaced And Misleading.** ..................................................................................... 23

**Summary:** *Texaco, Inc. v. Short*, 454 U.S. 516 (1982), upheld prospective lapse of severed mineral interests contingent on owner filing, which is unlike custodial unclaimed funds that Ohio treats as continuing private property (*Sogg v. Zurz*, 121 Ohio St. 3d 449 (2009)); *Standard Oil Co. v. New Jersey*, 341 U.S. 428 (1951), approved escheat of stock/dividends to unknown owners with judicial proceedings and notice, not automatic legislative forfeiture of known owners' property without individualized notice.

    **4.**      **Plaintiffs Have Established Irreparable Harm as a Matter of Law ... 25**

**Summary:** Loss of constitutional process and permanent extinguishment of title are irreparable injuries not cured by later money damages (*Fuentes v. Shevin*, 407 U.S. 67, 80–81 (1972); *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987)); preliminary-injunction standards in the Sixth Circuit recognize such non-compensable harms and difficulty of quantification (*Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012); *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566 (6th Cir. 2002); *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)), and courts have enjoined similar unclaimed-property deprivations where rights (e.g., voting shares) are lost (*Taylor v. Chiang*, 2007 WL 1628050 (E.D. Cal. June 1, 2007)).

5.      **Plaintiffs Clearly Have Standing to Assert Their Ripe Claims.** ......... 28

**Summary:** A certain, date-specific statutory deprivation creates a concrete, imminent injury traceable to enforcement and redressable by injunction (*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014); *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)); preventive harms and mitigation efforts suffice for injury-in-fact (*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 152 (2010)), and pre-enforcement review is appropriate where legal issues are fit for decision and withholding review would cause hardship (*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967); *Online Merchants. v. Cameron*, 468 F. Supp. 3d 883 (E.D. KY 2020)).

C.      **The Balance of Equities and Public Interest Favor Injunctive Relief** ............ 31

**Summary:** Maintaining the custodial regime avoids irreversible extinguishment of title and dissipation of the fund while imposing minimal administrative burden on the State, which tips the equities toward interim relief under settled Sixth Circuit standards (*Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566 (6th Cir. 2002). When the government is a party, the equities and public interest factors merge (*Nken v. Holder*, 556 U.S. 418, 435 (2009)), and it is always in the public interest to prevent enforcement of unconstitutional measures (*G & V Lounge v. Mich. Liquor Control Comm'n,* 23 F.3d 1071, 1079 (6th Cir. 1994)). Targeted injunctions that temporarily halt automatic title extinguishment and diversion ensure constitutional compliance without restructuring statutory schemes, aligning with traditional equitable principles and minimizing collateral effects (*Warren v. City of Athens*, 411 F.3d 697 (6th Cir. 2005), 411 F.3d 697, 711 (6th Cir. 2005)).

IV.  **CONCLUSION** ..................................................................................................... 34

# TABLE OF AUTHORITIES

## UNITED STATES CONSTITUTION

Article I, § 10 .................................................................................................... 8

First Amendment ................................................................................................ 31

Fourth Amendment ............................................................................................. 31

Fifth Amendment ............................................................... 4, 8, 10, 15, 23, 30

Fourteenth Amendment .................................................. 6,8, 15, 17, 19, 30

Eleventh Amendment.......................................................................................... 5, 14

## FEDERAL CASES

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967) ...................................................................................29

*Basicomputer Corp. v. Scott*,
    973 F.2d 507, 511 (6th Cir. 1992)................................................23, 28, 30

*Bolling v. Sharpe*,
    347 U.S. 497, 499–500 (1954) ...................................................................6

*Bowers v. City of Flint*,
    325 F.3d 758, 765 (6th Cir. 2003) ..............................................11, 16, 30

*Barber v. Charter Twp. of Springfield*,
    31 F.4th 382, 388 (6th Cir. 2022).............................................................10

*Calvert Invest., Inc. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*,
    847 F.2d 304, 307 (6th Cir. 1988) ......................................... 10, 16, 30

*Cedar Point Nursery v. Hassid*,
    594 U.S. 139, 140 (2021)............................................................................ 22

*Cerajeski v. Zoeller*,
    735 F.3d 577, 583 (7th Cir. 2013) ........................................................... 2

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,
    511 F.3d 535, 550 (6th Cir. 2007) ........................................................... 21

*Connection Distrib. Co. v. Reno*,
    154 F.3d 281, 288 (6th Cir. 1998)............................................................31

*Covino v. Patrissi*,
    967 F.2d 73, 77 (2d Cir. 1992) ...................................................................31

*Delaware v. New York*,
    507 U.S. 490 (1993) ...........................................................................................2

*Dozier v. Sun Life Assurance Co. of Can.*,
    466 F.3d 532, 535 (6th Cir. 2006)...........................................................22

*Ex parte Young*,
    209 U.S. 123 (1908) .........................................................................................14

*Fuentes v. Shevin*,
    407 U.S. 67, 80–81 (1972) ..............................................................6, 12, 13, 25

*Garza v. Woods*,
    150 F.4th 1118 (9th Cir.2025)..................................................................7

*G & V Lounge v. Mich. Liquor Control Comm'n*,
    23 F.3d 1071, 1079 (6th Cir. 1994) .........................................................33

*Hall v. Meisner*,
    51 F.4th 185, 190 (6th Cir. 2022)...........................................11, 16, 31

*Hawaii Housing Auth. v. Midkiff*,
    467 U.S. 229, 245, (1984) ..........................................................................22

*Jones v. Flowers*,
    547 U.S. 220 (2006).......................................... 5, 8, 15, 17, 18, 20

*Karkoukli's, Inc. v. Dohany*,
    409 F.3d 279, 286 (6th Cir. 2005).........................................................20

*Keene Grp., Inc. v. City of Cincinnati*,
    998 F.3d 306, 311 (6th Cir. 2021) ....................................................15, 19

*Knellinger v. Young*,
    134 F.4th 1034, 1045 (10th Cir. 2025).............................................2, 7

*Knick v. Township of Scott, Pa.*,
    588 U.S.180, 181 (2019) ......................................1, 9, 10, 11, 12, 13

*Knight v. Metro. Gov't of Nashville & Davidson Cty.*,
    67 F.4th 816 (6th Cir. 2023)....................................................................10

v

*Laborers' Int'l Union, Local 860 v. Neff,*
  29 F.4th 325 (6th Cir. 2022) ...................................................................9

*Langley v. Prudential Mortg. Capital Co., LLC,*
  554 F.3d 647, 649 (6th Cir. 2009) .........................................................23

*Larson v. Domestic and Foreign Commerce Corp.,*
  337 U.S. 682, 701-702 (1948) ..................................................................5

*Lavan v. City of L.A.,*
  693 F.3d 1022 (9th Cir. 2012) ...............................................................17

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ...............................................................................29

*Maron v. Chief Fin. Officer of Fla.,*
  136 F.4th 1322, 1330 (11th Cir. 2025) ....................................................7

*McDonell v. Hunter,*
  746 F.2d 785, 787 (8th Cir. 1984) .........................................................31

*Mennonite Bd. of Missions v. Adams,*
  462 U.S. 791 (1983) ..........................................................................17, 18

*Ming Kuo Yang v. City of Wyo.,*
  793 F.3d 599, 602 (6th Cir. 2015) ....................................................19, 20

*Moms for Liberty - Wilson Cty. v. Wilson Cty. Bd. of Educ.,*
  155 F.4th 499 (6th Cir. 2025) ................................................................15

*Moore v. E. Cleveland,*
  431 U.S. 494 (1977) ...............................................................................22

*Monsanto Co. v. Geertson Seed Farms,*
  561 U.S. 139, 152 (2010) .......................................................................28

*Montgomery v. Carter County,*
  226 F.3d 758 at 767 (6th Cir. 2000) ................................................12, 22

*Mousseau v. Crum,*
  No. 24-1802, 2025 U.S. App. LEXIS 21634 (9th Cir. 2025) ..................7

*Mullane v. Central Hanover Bank & Tr. Co.,*
  339 U.S. 306, 314 (1950) ..................................................3, 5, 6, 7, 8, 11

*Nken v. Holder,*
    556 U.S. 418, 435 (2009) ....................................................................33

*Obama for Am. v. Husted,*
    697 F.3d 423, 428 (6th Cir. 2012) ........................................................27

*Online Merchants. v. Cameron,*
    468 F. Supp. 3d 883 (E.D. KY 2020) ....................................................29

*Overstreet v. Lexington-Fayette Urban Cty. Gov't,*
    305 F.3d 566 (6th Cir. 2002) ...........................................................27, 31

*Pennhurst State School & Hospital v. Halderman,*
    465 U.S. 89 (1984) .................................................................................14

*Pennsylvania v. New York,*
    407 U.S. 206 (1972) .................................................................................2

*Performance Unlimited v. Questar Publishers,*
    52 F.3d 1373 (6th Cir. 1995) .................................................................21

*Ross v. Meese,*
    818 F.2d 1132, 1135 (4th Cir. 1987) .....................................................25

*Sniadach v. Family Fin. Corp. of Bay View,*
    395 U.S. 337, 338 (1969) .........................................................................6

*Standard Oil Co. v. New Jersey,*
    341 U.S. 428, 433–34 (1951).................................... 4, , 5, 7, 8, 23, 25

*Sterling Hotels, LLC v. McKay,*
    71 F.4th 463 (6th Cir. 2023) ....................................................................7

*Suever v. Connell,*
    439 F. 3d 1142 (9th Cir. 2006) .......................................................4, 7, 14

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014)................................................................................28

*Taylor v. Chiang,*
    CIV.8-01-2407 WBS GGH, 2007 WL 1628050, at *2 (E.D.Cal. June 1, 2007).....................25

*Taylor v. Westly,*
    402 F.3d 924  (9th Cir. 2005) ..........................................................5, 7, 14

*Taylor v. Westly,*
    488 F.3d 1197, 1200-02 (9th Cir. 2007)................................................4, 9

*Taylor v. Westly,*
525 F.3d 1288, 1291 (9th Cir. May 12, 2008)...................................................4

*Taylor v. Yee,*
136 S. Ct. 929 (2016) .....................................................................................4, 6

*Temple-Inland, Inc. v. Cook,*
192 F. Supp. 3d 527 (D. Del. 2016) ...................................................................7

*Texaco, Inc. v. Short,*
454 U.S. 516 (1982) ...............................................................................3, 23, 24

*Texas v. New Jersey,*
379 U.S. 674, 675–77 (1965) ...........................................................................2

*United States v. James Daniel Good Real Property,*
510 U.S. 43, 53 (1993) ..................................................................................7, 11

*Warren v. City of Athens,*
411 F.3d 697 (6th Cir. 2005) .............................................................. 13, 15, 31

*Webb's Fabulous Pharmacies, Inc. v. Beckwith,*
449 U. S. 155, 164 (1980).............................................................................. 22

## STATE CASES

*City of Norwood v. Horney,*
110 Ohio St. 3d 353 (2006) ............................................................................ 1

*Sogg v. Zurz,*
121 Ohio St. 3d 449 (2009) ..................................................................... 16, 24

## FEDERAL STATUTES AND REGULATIONS

### United States Code

42 U.S.C. § 1983...................................................................................... 11, 12

## OHIO STATUTES AND REGULATIONS

Chapter 169, *et seq*................................................................................... 2

Chapter 169.03............................................................................................. 8

Chapter 169.06............................................................................................. 8

House Bill 96 ............................................................................................... 22

## OTHER AUTHORITIES

Epstein, D., Unclaimed Property Law and Reporting Forms, Chapter 6. Abandonment of Stock and Intangible Interests in a Business Association (Mathew Bender & Co., Inc., 2002) at § 6.03[1]-[6].................................................................................................................................4

## MISCELLANEOUS

ABC Good Morning America, *Not So Safe Deposit Boxes  States Seize Citizens' Property to Balance Their Budgets,* YouTube (May 12, 2008), http://www.youtube.com/ watch?v=ZdHLIq0qHhU,http://abcnews.go.com/GMA/ story?id=4832471&page=1#.Udhur5yLfCY............................................................................ 9

Audio of the Ninth Circuit hearing is available at:
    https://www.ca9.uscourts.gov/media/audio/?20060731/05-16763/. .......................................... 9

# I.    INTRODUCTION

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Opposition" or "Opp.") improperly seeks to reframe this case as a routine post-taking compensation dispute governed by *Knick v. Township of Scott*, Pa., 588 U.S. 180 (2019) ("*Knick*"). That is fundamentally incorrect.  This case is not about whether Ohio may be required to pay just compensation some day in the future after permanently extinguishing private property rights. Instead, this case is about whether the State may extinguish those property rights at all through a flawed process or legislative "appropriation" (Opp., at pp 4-5, 29-30) where Plaintiffs and others similarly situated will lose title to their property automatically, retroactively, without providing any notice at all or an opportunity to be heard.

Plaintiffs also challenge the underlying purpose of the taking since governmental takings for a private purpose are not permitted.  *See*, *e.g.*, *City of Norwood v. Horney*, 110 Ohio St. 3d 353 (2006).  Clearly established precedent directs us to the right answer: the State cannot do what it seeks to do here and, as a result, Defendants must now be enjoined before Plaintiffs and other members of the proposed class forever lose title to their property as a result of Defendants' unconstitutional actions.  Plaintiffs do not question the Defendants' right to operate a lawful escheatment program with proper constitutional notice and Due Process. But, Plaintiffs challenge (1) the novel statutory scheme that, for the first time in Ohio's history, converts property held in trust for private owners into State-owned government funds by legislative "fiat," without any individualized pre-deprivation notice of the forfeiture event itself; and (2) an ongoing unnoticed property seizure program that takes property from foreign citizens or those living in other states, seized arbitrary amounts like $50 without any notice, etc.

Plaintiffs establish a strong likelihood of success on the merits of their Due Process and Takings claims, irreparable harm from the imminent loss of vested property rights, and that the

balance of equities and public interest overwhelmingly favor preserving the status quo while this Court adjudicates the constitutionality of Defendants' actions. The State's Opposition does not alter that conclusion and, as a result, Plaintiffs respectfully request that this honorable Court grant this Motion and enter an order enjoining Defendants from taking any action to deprive property owners of their property rights until this case is resolved.

## II.    FACTS AND BACKGROUND

At pages 2-6, Defendants launch into a detailed discussion of Ohio's unclaimed funds trust, which is codified in the Ohio Revised Code Chapter 169, *et seq.* ("UFTF"). Defendants are of course entitled to put their spin on the facts and the law, but they are not entitled to mislead this Court. The guiding purpose of the UFTF and the Unclaimed Property Law is to reunite purportedly lost and unknown owners with property. Defendants present their "notice" of the property seizures as "robust" (Opp., at p. 3), when in reality Plaintiffs will show this Court at this hearing that notice is nonexistent. "The perversity of the state's position lies in the fact that unclaimed property acts are primarily designed not to enrich the state directly but to 'return' the unclaimed property to the stream of commerce," [citation omitted] and to protect property owners against what's known as "lucrative silence" *Cerajeski v. Zoeller*, 735 F.3d 577, 583 (7th Cir. 2013); *see also*, *Knellinger v. Young*, 134 F.4th 1034, 1045 (10th Cir. 2025) ("[I]f Colorado wishes to avoid defending against § 1983 suits for unclaimed property, it may always decide voluntarily to revise its laws or practices with respect to unclaimed property.")

The tests for whether property may escheat to the State of Ohio are extremely important, as they are used to resolve competing claims for property under the escheat laws of different states. *See Texas v. New Jersey,* 379 U.S. 674, 675–77 (1965), *Pennsylvania v. New York*, 407 U.S. 206 (1972), and *Delaware v. New York*, 507 U.S. 490 (1993) ("*Texas Trilogy*"). For example, if a holder domiciled in Ohio identifies property unclaimed by a person whose last known address

is in Texas, the holder must be able to determine proper application and choice of law and which state, Ohio or Texas, has the superior claim to the unclaimed property. If not for these tests, then every state in the union could potentially make a claim for every share of stock held by any individual worldwide. This result would be chaotic and unconstitutional and would put the onus on every shareholder worldwide to take affirmative action to comply with the escheat laws of every state or risk seizure of his property by every single state. This absurd result is the one urged by the Defendants in their brief. Defendants cite mineral lapse law and avoid the binding Supreme Court holdings (discussed, *infra*) for the proposition that a property owner must constantly churn and monitor her private property, or it may be seized by the Director as "abandoned." *See*, *e.g.*, the government Defendants' reliance on *Texaco, Inc. v. Short*, 454 U.S. 516 (1982) ("*Texaco v. Short*").

As is the case with most of the private property owners, the Director's Auditor Kelmar made the ludicrous determination that Plaintiffs and Class Members, who reside in different states and countries, which jurisdictions have their own Unclaimed Property Laws, were "lost" and "unknown" and had "abandoned" their stock and private property to Defendants. The facts will show Plaintiffs and the vast majority of the "Ohio" citizens are not "unknown" or "lost," but pay taxes and automobile registration fees, own real property, and are otherwise very well known to the State of Ohio, or their respective jurisdictions, such as Germany, France, and Italy, in which the Class Members reside.

The Director and its Auditor Kelmar then had no basis to determine that Citizens, for example, addresses with fictional Zip Codes labeled as "00000" and falsified foreign property owners, *e.g.* "Tokyo, Ohio," "Munich, Ohio," or "Hong Kong, Ohio," etc. Defendants are unable to produce copies of *Mullane*-style direct mail and publication notices calculated to alert Plaintiffs

and Class Members that their property is about to be seized and sold by a state government that is 10,000 miles away, in some cases, from the countries in which they reside because no such notice was ever sent or published.  Likewise, Defendants seize property from private citizens who reside in other states and then publish their names "all 88 Ohio counties" (Opp., at p. 3) or list them on a broken website after their private property is seized, sold, and destroyed for use by the state.

Thus, the Director seized valuable property from the named Plaintiffs and the Class Members for the "use" by the State of Ohio - and at the considerable detriment to the injured owners.  This activity was undertaken under color of a statute that explicitly excludes the property from its purview. Very simply, these facts add up to a seizure of private property without notice, Due Process, or just compensation.  The Fifth Amendment of the United States Constitution explicitly prohibits this kind of behavior by governments, or by state officials purporting to act on behalf of governments.

Next, contrary to Defendants' urgings that the notice sections of the UPL are mere niceties that may be freely ignored (*see*, *e.g.*, Opp., at pp. 3), the notice provisions are fundamental to the constitutionality of the UFTF itself.  Stated another way, *without the Due Process elements, the UPL itself would be unconstitutional*.  *See Standard Oil Co. v. New Jersey*, 341 U.S. 428, 433–34 (1951) (States must comply with the U.S. Constitution when applying Unclaimed Property Law to private property rights); *see also*, *Taylor v. Yee*, 136 S. Ct. 929 (2016) ("*Taylor v. Yee*"); *Taylor v. Westly*, 402 F.3d 924  (9th Cir. 2005) ("*Taylor I*"); *Taylor v. Westly*, 488 F.3d 1197, 1200-02 (9th Cir. 2007) ("*Taylor II*"); *Taylor v. Westly*, 525 F.3d 1288, 1291 (9th Cir. May 12, 2008) ("*Taylor III*"); *Suever v. Connell*, 439 F. 3d 1142 (9th Cir. 2006) ("*Suever I*"); *see generally*, Epstein, D., *Unclaimed Property Law and Reporting Forms*, Chapter 6. Abandonment of Stock and Intangible Interests in a Business Association (Mathew Bender & Co., Inc., 2002) at § 6.03[1]-[6] (Entitled:

"Constitutional Issues - *Standard Oil Co. v. New Jersey*"). Defendants now propose that they will "appropriate" $600 Million of private trust funds to finance private civic projects - like a privately owned football stadium - with no notice of the transfer to the property owners.

More importantly, Plaintiffs' central contention is that the Director's *actions* under color of the UFTF—like the seizure of property for which the Director has no authority under the UFTF, and the refusal to provide notice or just compensation - are unconstitutional. It is axiomatic that the failure to comply with the Due Process requirements of a legitimate law is just as unconstitutional as complying to the letter with an unconstitutional law. Defendants' references to the Eleventh Amendment sprinkled throughout their brief (Opp., at pp. 12-14, 23) therefore have no application. *See, e.g., Larson v. Domestic and Foreign Commerce Corp*., 337 U.S. 682, 701-702 (1948) (emphasis added) (noting that official's conduct cannot be considered state action if "it is not within the officer's statutory powers or, if within those powers, only if those powers, *or their exercise in the particular case*, are constitutionally void.")

Defendants contend that they provide constitutional notice. But publication notice, for example, is insufficient and does not pass constitutional muster where the owner is known and direct mail notice is possible. *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("*Mullane*"); *Jones v. Flowers,* 547 U.S. 220 (2006) ("*Jones*"). Likewise, publishing notice only in Ohio provides no constitutional notice when the addresses of the owners clearly indicates the citizens resides in Tokyo, Munich, Hong Kong, or Pennsylvania. The United States Supreme Court's pronouncement on this issue is dispositive: "[W]hen notice is a person's due, process which is a mere gesture is not Due Process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315.

Defendants" Due Process arguments, far from undermining the need for this Court's review, clearly heighten the need for injunctive relief. For instance, Defendants maintain, remarkably, that property valued at less than $50 deserves no constitutional protection under the standard requirement of pre-deprivation notice. Because the very idea of Due Process implies equal justice under law (*Bolling v. Sharpe*, 347 U.S. 497, 499–500 (1954)), there can be no arbitrary floor on the quantum of property eligible for protection under the Fourteenth Amendment. Thankfully, no such floor exists. *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 338 (1969), involved a $34 garnishment that this Court held invalid for lack of prior notice, even though the garnishment would be "unfrozen" if the wage-earner prevailed in a subsequent proceeding. *Id.* at 339. *Fuentes v. Shevin*, 407 U.S. 67 (1972) ("*Fuentes*"), involved several property owners, one of whom claimed a stove and stereo worth just $500; another with a bed, a table, and other household goods; and a third with child's clothes, furniture, and toys. *Id*. at 71–72

Long before any question of compensation arises, the Fourteenth Amendment requires that property owners receive notice and a meaningful opportunity to be heard before their ownership interests are permanently destroyed. These notice cases, starting with *Mullane,* 339 U.S. 306, *supra*, clearly require steps that Defendants have chosen to forego before taking title to private property. Justices of the U.S. Supreme Court have expressed constitutional concern about state unclaimed property laws. *See Taylor v. Yee*, 136 S. Ct. at 930, *supra* (Alito, J., joined by Thomas, J., concurring in the denial of certiorari) ("This trend – combining shortened escheat periods with minimal notification procedures – raises important Due Process concerns [regarding States'] constitutional obligation to provide adequate notice before escheating private property."). Plaintiffs seek to vindicate their and their proposed Class members' constitutional

right to notice "reasonably calculated, under all the circumstances, to apprise" them of Ohio's seizure of their property before the deprivation occurs. *Mullane*, 339 U.S. 306, 314, *supra*, *see also United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) ("The right to prior notice and a hearing is central to the Constitution's command of Due Process.").

In fact, Defendants do not — and cannot — dispute that the challenged statute fails to require individualized notice to property owners, and none has been provided to any of the persons who stand to lose title to their property in just a few short weeks. That is the very definition of irreparable harm since there is no way to remedy this Constitutional violation but to prevent it. And a watershed of recent federal decisions supports exactly the Plaintiffs' position in this case. *See e.g. Garza v. Woods*, 150 F.4th 1118 (9th Cir. 2025), *Knellinger v. Young*, 134 F.4th 1034, *supra*, *Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322 (11th Cir. 2025), *Mousseau v. Crum*, 2025 WL 2437230 (9th Cir. 2025), *Sterling Hotels, LLC v. McKay*, 71 F.4th 463 (6th Cir. 2023), *Temple-Inland, Inc. v. Cook*, 192 F. Supp. 3d 527 (D. Del. 2016)

In *Standard Oil Co. v. New Jersey*, 341 U.S. 428, *supra*, the High Court held that a state may use escheat powers to take custody of presumably abandoned stock investments *provided that it strictly complies with notice and Due Process requirements*. *Id.,* at 433-34. The Defendants now intend to gift $600 Million of private funds belonging to the Class Members with no notice at all to the impacted property owners. This point is lost on the Director and certain of the other states which have adopted "the new form of escheatment." *See Taylor I*, 402 F.3d 924, *supra*; *Suever I*, 439 F. 3d 1142, *supra* (Rejecting same arguments made here). The Supreme Court states, conversely, that if the guidelines are not followed, and notice is not provided, then the actions of the state would constitute violations of the Takings Clause found in the Fifth Amendment, the Due Process clause of the Fourteenth Amendment, and impairment of the Contract Clause found in

Article I, § 10, ¶ 1 of the United States Constitution. *Standard Oil Co. v. New Jersey*, 341 U.S. at 436, *supra* (State's power "subject to constitutional limitations").

The Defendants are required to provide "notice reasonably calculated, under all the circumstances" to apprise Plaintiffs of the pending state action affecting them and Class Members' property rights as set forth in the Ohio statutes. In *Mullane*, 339 U.S. at 314, *supra*, the Supreme Court states:

> "The fundamental requisite of due process of law is the opportunity to be heard. This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." [citations and quotations omitted])."

*Id*. at 314; *Jones,* 547 U.S. 220, *supra*; *Standard Oil Co*., 341 U.S. at 434, *supra*.

Defendants' Opposition advances various novel theories that despite the specific notice requirements mandated by the Supreme Court, the Constitution, and the UFTF, notice is not necessary to satisfy Due Process concerns. This line of argument is preposterous. Even if foreign property owners or impacted citizens in other states happened to familiarize themselves with Ohio's UFTF, because these property owners would have concluded that their stock and property is *not* subject to escheat to the State of Ohio, because "known" shareholders are outside its purview; at least they would have learned that the State would provide direct mail and publication notice prior to claiming any right to their stock. *See* ORC §§ 169.03, 169.06. Thus, even if Plaintiffs and Class Members had entertained a concern that their stock might "escheat" under misapplied feudalistic concepts to the State of Ohio, reading the UPL would have assured citizens that this would not be the case. But on January 1, 2026 at midnight, on a national holiday, $600 Million in private funds will transfer with no notice at all.

///

///

### III.   LAW AND ARGUMENT

**A.     Defendants Misapply *Knick*: Federal Courts Retain The Right to Impose an Injunction to Stop The Unconstitutional Taking of Property**.

Defendants mischaracterize the Supreme Court's decision in *Knick* by suggesting it categorically bars injunctive relief in takings cases (Opp., at Section III. B., pp. 8-11). While *Knick* noted that "so long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking," this statement must be understood in its proper context. *Laborers' Int'l Union, Local 860 v. Neff*, 29 F.4th 325 (6th Cir. 2022).

### 1.     *Knick* Addressed Ripeness, Not Standards For Injunctive Relief.

Contrary to the Defendants' assertion the Court improperly entered the injunction in *Taylor II*, 488 F.3d 1197, *supra* (Opp. at 10), and the *Taylor* Defendants openly conceded at the emergency hearing held in Seattle, Washington that they provided no Due Process to the owners prior to seizure and destruction of their property.  One may listen to the oral argument,[1] and the California Controller subsequently appeared on national television to concede that "what we did was wrong."[2]

*Knick* primarily addressed the ripeness doctrine, not the standards for injunctive relief. The decision authorized *property* owners to seek damages in federal court without first resorting to state law remedies. *Laborers' Int'l Union, Local 860 v. Neff*, 29 F.4th 325, *supra*. This overruled previous precedent requiring takings claimants to exhaust their administrative state remedies

---

[1] The audio of the hearing is available at:
https://www.ca9.uscourts.gov/media/audio/?20060731/05-16763/

[2] ABC Good Morning America, Not So Safe Deposit Boxes  States Seize Citizens' Property to Balance Their Budgets, YOUTUBE (May 12, 2008); found at minute 2:01:
http://www.youtube.com/watch?v=ZdHLIq0qHhU,http://abcnews.go.com/GMA/story?id=4832471&page=1#.Udhur5yLfCY

before seeking federal relief. *See Knight v. Metro. Gov't of Nashville & Davidson Cty.*, 67 F.4th 816 (6th Cir. 2023). The Supreme Court's focus is therefore the opposite of the position advanced by Defendants in this case. The Supreme Court focused on eliminating procedural barriers that prevented property owners from bringing takings claims in federal court, not on restricting the availability of injunctive relief in appropriate cases.

Indeed, the Sixth Circuit has recognized that the Supreme Court found that "an impending physical taking could warrant injunctive relief." *Barber v. Charter Twp. of Springfield*, 31 F.4th 382, 388 (6th Cir. 2022). This demonstrates that *Knick* did not establish a categorical bar against injunctive relief in all takings cases.

### 2. This Case is Further Distinguishable From *Knick*.

This case involves the "permanent escheatment" of property rights, not merely a compensable taking. The amendments to Ohio's Unclaimed Funds Law would recharacterize funds held in trust for property owners as permanently abandoned after ten years and transfer them to a private football stadium project fund, effectively eliminating the property owners' rights entirely. (Opp., at p. 4.) This is fundamentally different from the regulatory taking at issue in *Knick.*

The Fifth Amendment provides that "private property shall not be taken for public use without just compensation." U.S. Const. amend. V. However, the Constitution does not create property rights; such rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Calvert Invest., Inc. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 847 F.2d 304, 307 (6th Cir. 1988). While property interests are created by state law, "whether a substantive interest created by the state rises to the

level of a constitutionally protected property interest is a question of federal constitutional law." *Bowers v. City of Flint*, 325 F.3d 758, 765 (6th Cir. 2003).

The Sixth Circuit recognizes that "a State may not sidestep the Takings Clause by disavowing traditional property interests long recognized under state law." *Hall v. Meisner*, 51 F.4th 185, 190 (6th Cir. 2022). The permanent escheatment contemplated by the Defendants' amendments and "appropriations" would effectively eliminate property interests without notice to those owners that have been traditionally recognized under Ohio law.

Defendants' primary legal argument therefore rests on a fundamental misreading of *Knick*. According to the State, because some amount of money may remain in the UFTF even after billions of dollars are confiscated, diverted, and title in that property transferred to the State forever. (Opp., at p. 4) Plaintiffs purportedly retain an "adequate" remedy at law and therefore cannot obtain injunctive relief. That argument misunderstands both what *Knick* held and what Plaintiffs challenge here.

*Knick* addresses when a plaintiff may seek compensation *after* a lawful taking. It does not authorize states to accomplish an unlawful forfeiture in the first place. A statutory scheme that permanently extinguishes private property rights without constitutionally adequate pre-deprivation notice is void before any compensation analysis begins. *Mullane*, 339 U.S. at 314, *supra*; see also *United States v. James Daniel Good Real Prop.*, 510 U.S. at 53, *supra* ('The right to prior notice and a hearing is central to the Constitution's command of due process."). Because the forfeiture scheduled to begin on January 1, 2026 is automatic, irrevocable, and constitutionally defective at its inception, injunctive relief is the appropriate remedy at this stage.

*Knick* resolves a narrow procedural question: whether a property owner must first pursue and exhaust state administrative process before bringing a federal takings claim under 42 U.S.C.

§ 1983.  In *Knick*, the U.S. Supreme Court held that whether plaintiffs may pursue an administrative process  to recoup some of their losses is irrelevant under the Takings Clause because the State's duty to pay just compensation under the Takings Clause "arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." *Knick*, 588 U.S. at 181, *supra*.  *Knick* did not involve a pursuant statutory forfeiture scheme, did not involve the automatic extinguishment of title, did not involve a custodial trust relationship did not involve a broken website notice theory, and did not address a deprivation accomplished without constitutionally required pre-deprivation notice.  As a result, *Knick* is wholly inapplicable to the facts of this case in the way Defendants try to use it.  (Opp., at pp. 8-11.)

Critically, *Knick* presupposes the existence of a lawful taking following a constitutionally compliant process followed by a dispute over just compensation.  However, this case is fundamentally different.  Plaintiffs do not contend merely that the amount of compensation is inadequate.  They allege that the taking itself is unconstitutional because it permanently extinguishes private ownership interests held within a disorganized private Trust overseen by Defendants, without any individualized notice or opportunity to be heard.  Plaintiffs also allege that the purpose of the state's taking is also Constitutionally deficient since the taking is not for a public purpose and "private use takings are unconstitutional regardless of whether just compensation is paid." *Montgomery v. Carter County*, 226 F.3d 758 at 767 (6th Cir. 2000).  Where a taking is procedurally unconstitutional at its inception, compensation is not a substitute for the process the Constitution requires beforehand.  *Fuentes*, 407 U.S. 67, 82 (1972).

The State's assertion that the existence of remaining money in the UFTF defeats injunctive relief further collapses under scrutiny.  The Takings Clause does not ask whether the government might later be able to pay someone from some residual pool of funds that was first accumulated

after ownership was destroyed. It requires that just compensation be provided at the time of the taking for a lawful public use, and that the taking must itself comply with Due Process. "If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented." *Fuentes,* 407 U.S. at 81, *supra*.

Here, the statute does not merely relocate funds; it legislatively converts or "appropriates" (Opp., at pp. 4-5) private property into state government property by operation of law, strips owners of title, and forces them into the status of discretionary administrative claimants – all without constitutionally adequate notice. That permanent change in legal status is itself the irreparable injury *Knick* does not address at all. Clearly, Defendants misunderstand what is in the UFTF. It is comprised of private property owned by individuals and taking property from one and paying others with their confiscated property only exacerbates the Constitutional problems. At this hearing, Plaintiffs will present evidence and testimony on this conversion of private property.

Defendants' reliance on *Knick* to argue that courts are categorically barred from enjoining unconstitutional takings whenever money might later be available, is therefore untenable and is absent from the *Knick* decision. *Knick* does not authorize States to complete unconstitutional forfeitures first and sort out constitutional violations later through speculative claims for reimbursement. Whereas here, the State has enacted a statutory scheme that extinguishes vested property rights automatically and without Due Process, federal courts retain their traditional equitable authority to enjoin that unconstitutional deprivation before it occurs. *See Warren v. City of Athens*, 411 F.3d 697 (6th Cir. 2005) (affirming injunctive relief).

///

///

///

**B.     Plaintiffs Demonstrated a Likelihood of Success on The Merits**

   **1.     The Eleventh Amendment Does Not Bar Federal Injunctive Relief to Preserve Plaintiffs' Constitutional Rights.**

As we have seen, Defendants argue that the Eleventh Amendment bars Plaintiffs' claims to the extent they rely on Ohio law has no application here. (Opp., pp. 12-14, 23.) That argument misfires because Plaintiffs seek injunctive relief solely for ongoing violations of the United States Constitution, which is expressly permitted under *Ex parte Young*, 209 U.S. 123 (1908).

Per *Ex parte Young*, state officials may be sued in their official capacities for prospective injunctive relief to stop ongoing violations of federal law. Plaintiffs ask for exactly that here: an order preventing Defendants from enforcing a statute that will automatically extinguish vested property rights in violation of the Due Process and Takings Clauses of the U.S. Constitution, and the Eleventh Amendment poses no bar to such relief. *See also Taylor I*, 402 F.3d 924, *supra*; *Suever I*, 439 F. 3d 1142, *supra*.

Defendants' reliance on *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984) ("*Pennhurst*"), is, therefore, misplaced. *Pennhurst* holds only that federal courts may not order state officials to comply with state law. Plaintiffs do not seek to enforce Ohio statutes or the Ohio Constitution through this injunction. They seek to stop unconstitutional conduct under federal law. Because the requested injunction rests exclusively on federal constitutional violations, *Pennhurst* is irrelevant. Even if this Court were to decline jurisdiction over Plaintiffs' state-law claims, that would have no effect whatsoever on this Court's authority to enjoin Defendants' ongoing violations of the U.S. Constitution. The U.S. Constitution, not Ohio law, is the basis for the relief requested and this Court has full jurisdiction to grant the requested injunction.

///

///

2. **The State's Forfeiture Scheme Violates Both Due Process and the Takings Clause.**

Importantly, Plaintiffs have alleged Due Process violations in addition to takings claims. The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without Due Process of law." U.S. Const. amend. 5. This protection applies to the states through the Fourteenth Amendment, which states that no State shall "deprive any person of life, liberty, or property, without Due Process of law." U.S. Const. amend. 14.

Due process requires that notice be "reasonably calculated, under all the circumstances" to apprise interested parties of the pending action. *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 311 (6th Cir. 2021). The Supreme Court has recognized that "when the government learns its attempt at notice has failed, Due Process requires the government to do something more before real property may be sold." *Jones*, 126 S. Ct. 1708, *supra*. This principle applies with equal force to the escheatment of unclaimed funds.

Where a plaintiff establishes a constitutional violation, they "will be entitled to permanent injunctive relief upon a showing of: (1) a continuing irreparable injury if the court fails to issue the injunction, and (2) the lack of an adequate remedy at law." *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005). The Sixth Circuit has consistently held that constitutional violations may constitute irreparable harm warranting injunctive relief. The loss of constitutional freedoms, even for minimal periods, "unquestionably constitutes irreparable injury." *Moms for Liberty - Wilson Cty. v. Wilson Cty. Bd. of Educ.*, 155 F.4th 499 (6th Cir. 2025).

The amendment to Ohio's Unclaimed Funds Law constitutes an unconstitutional taking of private property without just compensation. Defendants refuse to acknowledge that the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, prohibits the

taking of private property for public use without just compensation. *Calvert Invest., Inc. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 847 F.2d at 307, *supra*.

While property interests are created and defined by state law, whether those interests rise to the level of constitutionally protected property is a question of federal constitutional law. As the Sixth Circuit has explained, "although property interests are created by state law, 'whether a substantive interest created by the state rises to the level of a constitutionally protected property interest is a question of federal constitutional law.'" *Bowers v. City of Flint*, 325 F.3d at 765, *supra*.

The Supreme Court has recognized that "the existence of a property interest, for purposes of whether one was taken, is determined by reference to existing rules or understandings that stem from an independent source such as state law." *Hall v. Meisner*, 51 F.4th at 189, *supra*. However, "the Takings Clause would be a dead letter if a state could simply exclude from its definition of property any interest that the state wished to take." *Id*. This principle is crucial in the present case, where Ohio seeks to redefine property interests in unclaimed funds to facilitate their transfer to a stadium project.

The Ohio Supreme Court previously held in *Sogg v. Zurz* that unclaimed funds "are not abandoned; they are the property of their owner." *Sogg v. Zurz*, 121 Ohio St. 3d 449, 905 (2009) ("*Sogg*"). This judicial determination establishes that the funds at issue are private property protected by the Takings Clause. The recent amendment to the UFTF cannot retroactively redefine these established property rights to avoid constitutional constraints.

The permanent escheatment of unclaimed funds ***after ten years***, with the proceeds directed to a ***private*** football stadium project rather than held for the benefit of the rightful owners, constitutes a taking for which compensation is constitutionally required. The State cannot avoid

its obligation to provide just compensation by simply declaring property "abandoned" when State law and judicial precedent establish that the property remains owned by private citizens of Ohio, other U.S. states, and foreign citizens.

  **a.** **The State's Failure to Provide Constitutionally Required Notice Violates Due Process Principles And Will Cause Irreparable Harm Unless Enjoined.**

  The Fourteenth Amendment prohibits a State from depriving any person of property "without due process of law." At its core, Due Process requires notice reasonably calculated to apprise interested parties of the pendency of the action and an opportunity to be heard before their property interests are permanently extinguished. *Mullane*, 339 U.S. 306, *supra*. This principle is especially strict where, as here, the State seeks to effect a forfeiture of vested property rights which is final. *See e.g.*, *Lavan v. City of L.A.*, 693 F.3d 1022 (9th Cir. 2012) (preliminary injunction affirmed where unabandoned property could not be taken and destroyed without Due Process safeguards).

  The Supreme Court has repeatedly held that when the government <u>knows</u> the identity of the property owner and can reasonably ascertain an address, individualized notice is constitutionally required before a deprivation becomes final. *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 799 (1983) ("*Mennonite*") ("a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation.")*; Jones,* 547 U.S. 220, *supra* (inadequate notice of pending property deprivation is Constitutionally insufficient). With the exception of foreign citizens and those citizens residing in other states, Defendants know or may readily determine the correct address of virtually every Ohio citizen in the UFTF. But, publication, passive availability of information, access to a broken government website, and generalized warnings to

the public are constitutionally insufficient substitutes for direct notice to <u>known</u> owners when the consequence is permanent loss of property.

That is precisely the constitutional defect here. Defendants cannot refute that the challenged statute does not provide any individualized notice to <u>known</u> property owners before their property is legislatively converted into State property and their ownership interests are extinguished. Instead, the State readily admits, that it relies on a patchwork of past dormancy notices, publication lists, and a broken website. (Opp., at Sections II. A., II. C. 3., pp. 3, 22.) None of those mechanisms provides the constitutionally required notice of the forfeiture event itself, which is the moment when title is permanently destroyed by operation of law. Worse, Defendants take a Constitutional obligation and seek to flip it on its head by placing the State's obligation instead on individual property owners who, in many cases, may be unaware that their property has been placed in the custody of the State of Ohio. Under Defendants' new system, citizens must discover or ferret out this information before their property rights are lost forever.

These distinctions are critical. Prior notice that property has become "unclaimed," or that assets may be recoverable through an administrative claim process, is not notice of an impending permanent forfeiture. Due Process requires notice of the specific governmental action that will finally and irrevocably terminate ownership under bedrock Supreme Court precedent *Jones, Mullane, Mennonite,* etc. Here, property owners were never notified that, as of midnight on the January 1, 2026 New Year holiday, their property will cease to be theirs at all, by legislative command.

Nor does the State's broken website remedy the constitutional violation. A regime that requires owners to discover for themselves that they are about to lose title permanently is the very system *Mullane*, *Mennonite*, and *Jones* reject. When the State has the owner's identity and can

easily provide direct notice—as it plainly can here—it must do so before effecting a final deprivation of property. Defendants freely admit that they never provided any notice at all on any property valued at $50 or less. (Opp., at pp. 20-21.)

Because the challenged statute authorizes the automatic and irrevocable extinguishment of private property rights without individualized pre-deprivation notice or a meaningful opportunity to be heard, it violates the Due Process Clause on its face. This constitutional defect exists independently of—and prior to—any Takings Clause analysis, and it alone requires immediate injunctive relief to prevent irreparable constitutional injury.

The amendments to Ohio's Unclaimed Funds Law fail to provide constitutionally adequate notice to property owners before permanently escheating their property to the State. Under the Due Process Clause of the Fourteenth Amendment, before a state may deprive an individual of a property interest, it must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Ming Kuo Yang v. City of Wyo*., 793 F.3d 599, 602 (6th Cir. 2015) ("*Ming Kuo Yang*"). This constitutional requirement ensures that interested parties have a meaningful opportunity to contest government actions that affect their property rights.

What constitutes adequate notice under the Due Process Clause depends on the circumstances of each case. *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d at 312, *supra*. The Supreme Court established that notice must be provided through means that "one desirous of actually informing the absentee might reasonably adopt." *Ming Kuo Yang*, 793 F.3d 599, *supra*. The Sixth Circuit has consistently applied this standard, emphasizing that notice must be "designed to actually inform the [interested party] of the [potential deprivation], and the reason for [it]." *Id*.

When addresses of property owners <u>are</u> reasonably ascertainable, publication notice alone is insufficient to satisfy Due Process requirements. As the Sixth Circuit stated in *Karkoukli's, Inc. v. Dohany*, "Where a valid address <u>is not</u> reasonably ascertainable, then publication alone is adequate to satisfy due process." *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 286 (6th Cir. 2005) (emphasis added). This principle necessarily implies that when addresses <u>are</u> reasonably ascertainable, publication alone does not satisfy constitutional requirements.

Ohio's reliance primarily on publication and website notice rather than direct notification to known property owners whose identities and addresses are known or reasonably ascertainable fails to meet constitutional standards. The Supreme Court held that "when the government learns its attempt at notice has failed, Due Process requires the government to do something more before real property may be sold in a tax sale." *Jones*, 547 U.S. at 227, *supra*. This principle applies with equal force to the permanent escheatment of personal property such as the unclaimed funds at issue here.

The Sixth Circuit recognizes that "if the interested party is not informed prior to the hearing of the reason for the proposed deprivation, the opportunity to be heard and present objections is rendered illusory." *Ming Kuo Yang*, 793 F.3d 599, *supra*. Without adequate notice of the impending escheatment, property owners cannot meaningfully exercise their right to contest the State's action.

Courts have consistently held that when the government has information that would allow it to provide more effective notice, it must use that information. The Sixth Circuit notes, "when mailed notice is returned unclaimed, the [government] must take additional reasonable steps to attempt to provide notice to the property owner." *Id*. Ohio's failure to take such additional steps

when it possesses or can reasonably obtain contact information for property owners renders its notice procedures constitutionally deficient.

Defendants' argument that Plaintiffs could still file claims until January 1, 2036, fails to address the fundamental constitutional violations at issue. The administrative claims process is inadequate for several reasons.

First, once the funds are spent on construction projects, they cannot be recovered. This is precisely the type of situation where the Sixth Circuit has found irreparable harm exists. As noted in *Certified Restoration Dry Cleaning Network, L.L.C.*, the "likely interference with customer relationships resulting from the breach of a non-compete agreement is the kind of injury for which monetary damages are difficult to calculate." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007). Similarly, the loss of funds permanently transferred to construction projects creates damages that are difficult, if not impossible, to calculate.

Second, the trust corpus will be dissipated, leaving no practical means to restore the status quo. Courts have recognized that "irreparable injury has been characterized as loss of a movant's enterprise." *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373 (6th Cir. 1995). The permanent loss of the trust corpus is analogous to the loss of an ongoing business, which "constitutes irreparable harm" because "[w]hat plaintiff stands to lose cannot be fully compensated by subsequent money damages." *Id*.

Third in cases involving constitutional claims, injury is likely to include the "loss or destruction of substantive rights," and "the presence of constitutional questions, coupled with a sufficient showing of inadequacy of prescribed administrative relief and of threatened or impending irreparable injury flowing from delay. has been held sufficient to dispense with

exhausting the administrative process before instituting judicial intervention." *Moore v. E. Cleveland*, 431 U.S. 494 (1977).

The Sixth Circuit has specifically recognized that the administrative exhaustion requirement may be excused "when the plaintiffs' suit is directed to the legality of the plan, not to a mere interpretation of it." *Dozier v. Sun Life Assurance Co. of Can.*, 466 F.3d 532, 535 (6th Cir. 2006). Here, Plaintiffs are challenging the constitutionality of the escheatment scheme itself, not merely seeking the return of their property.

> **b.** **The Statute Effects a *Per Se* Taking by Permanently Appropriating Private Property For Private Use**

Where a government physically appropriates private property or permanently extinguishes a right related to property, a per se taking occurs as a matter of law, regardless of the regulatory label or asserted public benefit. *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021). Such a taking is unconstitutional unless it is for a valid public use and accompanied by just compensation at the time of the taking. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U. S. 155, 164 (1980) (government cannot simply take property by legislative dictate). Private-use takings are unconstitutional regardless of compensation. *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 245, (1984); *Montgomery v. Carter County*, 226 F.3d at 765, *supra* (Fifth Amendment implies that private use takings are prohibited).

HB 96 operates to extinguish title by command. The statute then requires Defendants to ultimately transfer the confiscated property to the Cleveland Browns' professional football team to fund the construction of a private football stadium. That is a private-use taking, which the Constitution flatly forbids whether or not compensation is later offered. Because HB 96 authorizes a facial, per se taking of private property for an unlawful purpose, Plaintiffs have established a

strong likelihood of success on the merits of their Takings Clause claim, independent of their Due Process violations.

The funds at issue will be transferred to third parties and spent on construction projects, making post-deprivation remedies inadequate. Once the funds are spent on stadium construction, monetary compensation may not adequately remedy the constitutional violations. This distinguishes the present case from situations where post-deprivation compensation would be sufficient. Just as important to Plaintiffs and Class Members is the fact that the public has begun to rely on this impermissible transfer of funds with immediate places to begin demolition of the existing football stadium.

The Sixth Circuit recognizes that certain types of property losses may constitute irreparable harm when monetary damages are difficult to calculate. The general rule is that "a plaintiff's harm is not irreparable if it is fully compensable by money damages." *Langley v. Prudential Mortg. Capital Co.*, LLC, 554 F.3d 647, 649 (6th Cir. 2009). However, "an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

In the present case, the ongoing unnoticed property seizure program and the permanent escheatment of unclaimed funds involves property interests that may be difficult to fully compensate through post-deprivation remedies, particularly once the funds have been transferred to third parties and spent on construction projects. Likewise, the destruction of an existing stadium to prepare for the construction of a new stadium that my never be funded is also irreparable harm.

### 3. Defendants' Reliance on *Texaco* And *Standard Oil* is Misplaced And Misleading.

Defendants rely primarily on *Texaco v. Short* and *Standard Oil Co. v. New Jersey* to justify the permanent forfeiture of Plaintiffs' property without individualized notice. As noted, in *Texaco*

*v. Short*, the Supreme Court upheld an Indiana statute providing for the lapse of severed mineral interests after a prolonged period of owner inactivity, unless the owner took a simple affirmative step to preserve that interest. There, the Court expressly grounded its holding in abandonment by neglect to make required government filings, emphasizing that the owner alone controlled whether the interest would lapse by filing a preservation statement.

The Supreme Court also relied on the fact that the statute operated prospectively, provided a defined grace period, and addressed a property interest that had become wholly disconnected from active ownership or possession. That statutory framework bears no resemblance whatsoever to Ohio's Unclaimed Funds Trust Fund. As the Ohio Supreme Court has made unmistakably clear, unclaimed funds in Ohio are not abandoned. *Sogg*, 121 Ohio St. 3d 449, *supra*. In *Sogg*, the State's Highest Court held that unclaimed funds remain the private property of their owners at all times and that the State acts solely as a custodian, not as an owner. The Ohio Supreme Court expressly rejected the notion that nonuse constitutes abandonment and emphasized that forfeiture is strongly disfavored. *Id*., at 451. Ohio law therefore stands in direct opposition to the abandonment premise that animated *Texaco v. Short*. (*See* Opp., at pp. 16-17.)

*Standard Oil* is equally inapposite and stands for the reverse proposition cited by Defendants (Opp., at pp. 1, 16-20.) There, New Jersey sought escheat of corporate stock and unpaid dividends belonging to owners whose identities or whereabouts were <u>unknown</u>. Critically, the statute at issue required judicial proceedings with notice identifying the specific property and last-known owners published by the state, and the Supreme Court upheld the statute as applied to unknown or unlocatable owners. That case did not involve property held in a custodial trust for <u>known</u> identified owners, did not involve a legislative forfeiture by operation of law, and did not

involve a statutory scheme that extinguished private title automatically at midnight on New Year's Day without individualized notice.

Here, by contrast, Defendants seek to transform custodial trust property into State property by legislative command <u>alone</u>. Unlike *Standard Oil*, this new statute does not require any Due Process and does not limit itself to <u>unknown</u> owners. Instead, it effects a categorical extinguishment of vested private property rights on a date and minute certain, regardless of whether the owner is fully identifiable and readily reachable, e.g., <u>known</u>.

### 4. Plaintiffs Have Established Irreparable Harm as a Matter of Law.

Plaintiffs (and the public) face irreparable harm both because they will lose vested property rights and because that loss will occur without the constitutionally required pre-deprivation notice and opportunity to be heard. A deprivation of property without Due Process is itself an irreparable constitutional injury, wholly independent of any later monetary reimbursement.

"[T]he denial of a constitutional right" – here, the seizure of private property without pre-deprivation notice reasonably calculated to reach owners – "constitutes irreparable harm," *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987). No post-deprivation process nor even a "damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred." *Fuentes*, 407 U.S. at 82, *supra*. Additionally, "[w]hen [the government] takes custody of property pursuant to the [unclaimed property law], even temporarily, certain rights associated with ownership are lost which are not compensable in money damages." *Taylor v. Chiang*, CIV.8-01-2407 WBS GGH, 2007 WL 1628050, at *2 (E.D.Cal. June 1, 2007) (Federal Injunction). For example, "the owner is deprived of the right to vote his or her shares in important matters of corporate governance." *Id*.

First, the challenged statute effects the automatic and permanent extinguishment of private ownership interests at midnight on January 1, 2026. Once that date passes, Plaintiffs will no longer

be property owners at all; they will be reduced to discretionary administrative claimants of the State. That forced change in legal status cannot be undone by a damage award. Even if money were later paid, Plaintiffs' ownership rights, constitutional protections, and judicial standing as property holders will have been irrevocably destroyed.

Second, and independently sufficient, the absence of pre-deprivation Due Process constitutes irreparable harm as a matter of law. The Supreme Court has long recognized that notice and an opportunity to be heard are required before final deprivation of property. Once the forfeiture occurs without that process, the constitutional injury is complete and cannot be cured retroactively. Post-hoc reimbursement does not restore the right to receive notice, to object, to be heard, or to prevent the deprivation in the first instance. Further, citizens in Ohio, sister states, and other countries have no way to protect their property from future, random seizures of their property. At the hearing, the Court will see the state's own records and falsification of owner information, *e.g.*, addresses with fictional Zip Codes labeled as "00000" and falsified foreign property owners, e.g. "Tokyo, Ohio," "Munich, Ohio," or "Hong Kong, Ohio," etc. Given that the forfeiture is statutory, automatic, and final, not random or accidental, pre-deprivation process is constitutionally mandatory and post-deprivation remedies are legally insufficient, and these owners are left without notice or recourse.

The State's argument that some money may remain in the Unclaimed Funds Trust Fund does not defeat irreparable harm (notwithstanding its "rob Peter to pay Paul" strategy). The Constitution does not permit the State to destroy ownership and Due Process first and litigate compensation later. Once Plaintiffs' property is taken without notice and their ownership extinguished by operation of law, no later payment can restore the constitutional injury that has already occurred. Moreover, once the property is transferred out of the UFTF, there will be no

practical way to reconstruct the trust corpus or restore the status quo ante for the thousands of owners whose property was diverted. The loss is not merely a change in accounting entries; it is the irreversible dissipation of the very fund that exists to satisfy owners' claims.

Third, the State's administrative claims process fails to overcome the irreparable harm inherent in Defendants' approach. That process is purely post-deprivation. It cannot prevent the statutory forfeiture from occurring, cannot preserve ownership interests, and cannot stop the irreversible transfer and expenditure of trust assets. Once Plaintiffs' property is legislatively converted into State property on January 1, 2026, the administrative process offers, at most, a discretionary request for payment from a depleted fund rather than restoration of title. It does not provide a restoration of constitutional process, nor a restoration of the status quo. A post-hoc claims mechanism is not an adequate substitute for the pre-deprivation Due Process the Constitution requires and therefore cannot defeat irreparable harm.

Finally, the harm is not speculative but imminent and certain. The forfeiture date is fixed by statute. Absent injunctive relief, Plaintiffs and those similarly situated will suffer the permanent loss of both their property rights and their Due Process protections on January 1, 2026. That certainty of constitutional injury is precisely the circumstance for which preliminary injunctive relief exists.

Therefore, to obtain a preliminary injunction, Plaintiffs must establish several factors, including that they are "likely to suffer irreparable harm in the absence of preliminary relief." *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012). The Sixth Circuit has consistently held that a plaintiff's harm is irreparable if it is "not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566 (6th Cir. 2002). Importantly, "an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make

27

damages difficult to calculate." *Basicomputer Corp. v. Scott*, 973 F.2d 507, *supra*. This standard recognizes that certain injuries cannot be adequately remedied through post-hoc monetary compensation.

### 5. Plaintiffs Clearly Have Standing to Assert Their Ripe Claims.

Plaintiffs have standing and their claims are ripe because they face a concrete, imminent, and legally certain deprivation of vested property rights authorized by statute. Where, as here, a statute mandates a future deprivation on a date certain, affected property owners are not required to wait until their rights are extinguished before seeking judicial relief pre-enforcement. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) (reversing lower courts' determination where injury was sufficiently certain to justify standing). Pre-enforcement challenges are not only permissible, but essential to prevent irreparable constitutional injury.

The Supreme Court recognizes that a risk of future injury even one predicated on future events that may not occur creates present injury in the form of prevention efforts. For example, in *Monsanto Co. v. Geertson Seed Farms*, a group of conventional alfalfa growers sought injunctive relief against an agency decision to deregulate genetically engineered alfalfa. 561 U.S. 139, 152 (2010). They claimed that deregulation would harm them because their neighbors might plant the genetically engineered seed, the bees might obtain pollen from the neighbors' plants, and then the bees might (harmfully) contaminate their own conventional alfalfa with the genetically modified gene. *Id.* Without expressing views about the probability of future contamination harm coming to pass, the Supreme Court found standing because the plaintiffs would suffer present harm by trying to avoid or mitigate the threat. *Id.* at 154-55. The plaintiffs "would have to conduct testing to find out whether and to what extent their crops have been contaminated" and take other "measures to minimize the likelihood of potential contamination." *Id.* The Court held: "Such harms, which respondents will suffer even if their crops are not actually infected with the Roundup Ready gene,

are sufficiently concrete to satisfy the injury-in-fact prong of the constitutional standing analysis." *Id.* at 155. In sum, the fact that Plaintiffs are compelled to monitor or churn their property, in addition to "race the clock" to prevent a permanent escheatment demonstrates current harm, while the unnoticed property seizure process continues unabated.

Article III standing requires an injury in fact that is concrete and imminent, traceable to the challenged conduct, and redressable by the Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Plaintiffs and the Class they represent easily satisfy each requirement. Their injury is the certain and permanent loss of ownership interests in their property on January 1, 2026. That loss is not speculative, contingent, or dependent on discretionary enforcement; the injury is automatic by operation of law and directly traceable to Defendants' enforcement of the challenged statute. Moreover, it is fully redressable through injunctive relief preventing the forfeiture from occurring.

The State cannot defeat standing by arguing that Plaintiffs might avoid forfeiture if they act now within the administrative system. Forcing property owners to take affirmative action to avoid a legislatively mandated forfeiture does not negate injury. The Constitution does not require property owners to submit to a coercive "race the clock" to establish standing. The threatened loss of vested ownership rights itself constitutes a present injury sufficient to confer standing, while the future unnoticed seizure of property continues.

Plaintiffs' claims are likewise ripe. A claim is ripe where the issues are fit for judicial decision and withholding review would work a hardship on the parties. *Online Merchants. v. Cameron*, 468 F. Supp. 3d 883 (E.D. KY 2020) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)). Both conditions are met here. This case presents pure immediate legal constitutional questions: Whether the statute violates the Takings Clause and the Due Process Clause by extinguishing private ownership without lawful process or public purpose. At the same time,

withholding review would impose extreme hardship: absent injunctive relief, Plaintiffs will suffer the irreversible termination of their ownership interests and constitutional protections on January 1, 2026.

Because Plaintiffs face the certain, automatic, and imminent extinguishment of vested property rights, they have standing to sue now, and their claims are ripe for adjudication. And the amendments to Ohio's Unclaimed Funds Law that would deem funds held in the UFTF for ten years or more to be abandoned and escheat permanently to the State on January 1, 2026 will cause Plaintiffs irreparable harm for several reasons.

First, once the funds are transferred to the Ohio Cultural and Sports Facility Performance Grant Fund and spent on construction projects, they cannot be recovered. This situation is analogous to cases where the Sixth Circuit has recognized that "the loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Basicomputer Corp. v. Scott*, 973 F.2d 507, *supra*. Similarly, the permanent loss of property rights through escheatment creates damages that would be exceedingly difficult to calculate.

Second, the permanent loss of property rights is not merely a monetary injury but a fundamental constitutional deprivation. The Fifth Amendment provides that "private property shall not be taken for public use without just compensation," a protection that applies to the states through the Fourteenth Amendment. *Calvert Invest., Inc. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 847 F.2d at 307, *supra*. While property rights are created by state law, "whether a substantive interest created by the state rises to the level of a constitutionally protected property interest is a question of federal constitutional law." *Bowers v. City of Flint*, 325 F.3d at 765, *supra*. The Takings Clause would be rendered meaningless "if a state could simply exclude from its

definition of property any interest that the state wished to take." *Hall v. Meisner*, 51 F.4th at 190, *supra*.

The Sixth Circuit has consistently recognized that constitutional violations themselves constitute irreparable harm. Courts have held that "a plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights." *See, e.g.*, *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (recognizing that the loss of First Amendment rights, for even a minimal period of time, constitutes irreparable harm) (citations omitted); *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992) (holding that plaintiffs may establish irreparable harm based on an alleged violation of their Fourth Amendment rights); *McDonell v. Hunter*, 746 F.2d 785, 787 (8th Cir. 1984) (finding that a violation of privacy constitutes an irreparable harm). *Overstreet v. Lexington-Fayette Urban Cty. Gov't,* 305 F.3d at 578, *supra*.

Where a plaintiff establishes a constitutional violation, they "will be entitled to permanent injunctive relief upon a showing of: (1) a continuing irreparable injury if the court fails to issue the injunction, and (2) the lack of an adequate remedy at law." *Warren v. City of Athens*, 411 F.3d 697, *supra*. Here, both elements are satisfied. The constitutional violation of taking property without just compensation constitutes continuing irreparable injury, and as discussed below, the administrative claims process does not provide an adequate remedy at law.

## C.     The Balance of Equities And Public Interest Favor Injunctive Relief.

The balance of equities is self-evident and strongly favors granting Plaintiffs' request for injunctive relief. Absent injunctive relief, Plaintiffs, and those similarly situated, will suffer the permanent and irreversible loss of vested property rights and constitutional protections on January 1, 2026.  The unnoticed property seizures will continue unabated.  The government website will

remain broken, unsearchable, and inoperative. Those injuries cannot be undone by money damages, post-hoc administrative claims, or later judicial review. And once ownership is extinguished by operation of law, the harm is complete.

By contrast, Defendants suffer no legally cognizable harm from a preliminary injunction preserving the status quo. An injunction would merely maintain the existing custodial framework that has governed Ohio's unclaimed funds regime for decades while this Court adjudicates the constitutionality of the challenged statute. The State has operated under that system for generations. A brief continuation of that status quo while this litigation proceeds imposes, at most, a minimal administrative inconvenience rather than a legal or financial injury. By contrast, allowing title to be extinguished and the property transferred will irreversibly convert custodial trust assets into funds for a private stadium project, making it virtually impossible to recreate the fund needed to honor every owner's property claims.

The public interest likewise overwhelmingly favors injunctive relief. There is no public interest in the enforcement of unconstitutional laws, and there is a profound public interest in ensuring that the State complies with the Due Process and Takings Clauses of the United States Constitution. Protecting citizens from the permanent loss of private property without notice, hearing, or lawful public purpose is not merely a private concern is a core constitutional value that safeguards public confidence in the rule of law.

Defendants argue in abstract terms about fiscal planning and legislative policy, (Opp., at pp. 29-30) but budgetary convenience cannot outweigh constitutional rights, particularly where the statute effects a permanent forfeiture of private property. The public interest is not served by allowing Defendants to take first and litigate later. It is served by ensuring that constitutional protections are honored before irreversible deprivations occur. Furthermore, Defendants'

suggestion that property owners may later seek administrative reimbursement ignores that the public interest is not served by forcing citizens to beg for compensation after the State has already dissolved the trust account and extinguished private title.

Finally, the relief Plaintiffs seek is narrow and measured. They do not ask the Court to redesign Ohio's unclaimed funds system or dictate legislative policy. They ask only that the Court temporarily prohibit the automatic extinguishment of private property rights until this Court can decide whether the statute is constitutional. The purportedly "unclaimed property" may be gathered later, with no harm to the government, while this Court assures itself that constitutional protections are in place. That is the precise function of preliminary injunctive relief. Because the equities decisively favor Plaintiffs and the public interest lies in preventing imminent constitutional violations, this factor independently supports entry of a temporary restraining order and preliminary injunction.

The final two factors in the preliminary injunction analysis—the balance of equities and the public interest—also favor granting the requested injunction. When the government is a party, these factors merge. *Nken v. Holder,* 556 U.S. 418, 435 (2009).

The harm to Plaintiffs - permanent loss of property rights - outweighs any harm to the state from delaying the escheatment process. The Sixth Circuit has recognized that "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge v. Mich. Liquor Control Comm'n,* 23 F.3d 1071, 1079 (6th Cir. 1994). Preserving the status quo until the merits of the constitutional claims can be fully resolved serves the public interest.

The State's interest in containing unnoticed seizures and funding a private stadium project does not outweigh the constitutional rights of property owners. Granting the injunction would not prevent the state from eventually escheating truly abandoned property after providing adequate

notice; it would merely ensure that constitutional requirements are met before permanent escheatment.

Moreover, the public interest is served by maintaining public confidence in government and upholding property protections. Allowing the State to permanently escheat private property without adequate notice erodes public trust and sets a dangerous precedent for legislative overreach.

## IV.  CONCLUSION

Plaintiffs have demonstrated a strong likelihood of success on the merits, irreparable harm absent immediate relief, and that the balance of equities and public interest decisively favor preserving the status quo. Because the challenged statute authorizes the imminent and permanent extinguishment of vested property rights without constitutionally adequate Due Process, Plaintiffs respectfully request that this Court grant their Motion for Temporary Restraining Order and Preliminary Injunction and enjoin enforcement of the challenged provisions pending final resolution of this case.

Respectfully submitted,

<u>/s/ Marc Dann</u>
Jeffrey A. Crossman (0073461)
Marc E. Dann (0039425)
Andrew M. Engel (0047371)
Brian Flick (0081605)
DANNLAW
15000 Madison Avenue
Lakewood, Ohio 44107
Tel: (216) 373-0539/Fax: (216) 373-0536
Notices@dannlaw.com
jcrossman@dannlaw.com
aengel@dannlaw.com
bflick@dannlaw.com

William W. Palmer
(*Pro Hac Vice*)
PALMER LAW GROUP, A PLC
907 Westwood Boulevard, No. 218
Los Angeles, California 90024
Tel: (310) 984-5074/Fax: (310) 491-0919
wpalmer@palmercorp.com

*Counsel for Plaintiffs Mary Bleick, Todd
Butler, Allen Skierski, and Gary Petrime*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 5th day of December 2025, a true and correct copy of the foregoing **Plaintiffs' Reply in Support of Their Motion for Temporary Restraining Order and Preliminary Injunction** was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Marc Dann*
Marc Dann (0039425)