UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARY BLEICK,** *et al.***,**

      **Plaintiffs,**

      **v.**                  **Case Number 2:25-cv-1140**
                                **JUDGE EDMUND A. SARGUS, JR.**
**SHERYL MAXFIELD, in her official**      **Magistrate Judge Elizabeth P. Deavers**
**capacity as Director of Commerce,** *et al.***,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 3) and

Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order (ECF No. 20).

Plaintiffs responded in opposition to Defendants' Motion to Dismiss (ECF No. 15) and

Defendants replied in support (ECF No. 22). Defendants responded in opposition to Plaintiffs'

Motion for Preliminary Injunction and Temporary Restraining Order (ECF No. 37) and Plaintiffs

replied in support (ECF No. 41). The Court held a hearing on Plaintiffs' Motion for Preliminary

Injunction and Temporary Restraining Order on December 8, 2025. (ECF No. 43.) For the

reasons set forth below, the Court **DENIES** Defendants' Motion to Dismiss (ECF No. 3) and

**DENIES** Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order (ECF

No. 20).

## BACKGROUND

To begin, the Court orients the reader with the matters before it: a motion urging the

Court to abstain from exercising its jurisdiction and a motion for emergency relief in the form of

a preliminary injunction or temporary restraining order. The latter is a legal tool used to maintain

the status quo.

1

None of the abstention doctrines advanced by Defendants, state of Ohio officials, applies, as explained below. The Court's focus then becomes whether Plaintiffs are entitled to their requested relief at present. Those Plaintiffs—four individuals with funds in Ohio's Unclaimed Funds Trust Fund ("UFTF")—ask the Court to "prohibit[] any action to transfer any of the funds held in the Ohio Unclaimed Funds Trust Fund scheduled to begin as of January 1, 2026." (ECF No. 20, PageID 243.) They urge the Court to temporarily prevent what they insist is an unlawful taking that will cause irreparable harm. Yet Plaintiffs' requested relief is stymied quickly by binding United States Supreme Court precedent in *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180 (2019). Such precedent instructs "equitable [injunctive] relief is generally unavailable" where just compensation remedies are provided by the government. *Id.* at 201. Just compensation remedies are available to Plaintiffs, so they are stuck with a *Knick* problem. Application of *Knick* in unclaimed funds cases is not novel either. Federal courts have applied the *Knick* holding to lawsuits involving unclaimed funds. *See infra*.

Plaintiffs and perhaps a not-yet-certified class could possibly prevail on their alleged claims challenging the constitutionality of Chapter 169 of the Ohio Revised Code; this litigation will continue. At this juncture though, Plaintiffs cannot obtain the emergency relief they seek.

## I.    Factual Background

Chapter 169 of the Ohio Revised Code governs unclaimed funds in Ohio. Ohio Rev. Code §§ 169.01, *et seq.*; (ECF No. 42, ¶ 6). The statute requires certain funds, including bank account funds, certificates of deposit, insurance proceeds, dividends, rent deposits, and other accounts, to be deposited into the UFTF if they have been dormant for a statutorily prescribed period of time. Ohio Rev. Code §§ 169.02, 169.05; (ECF No. 42, ¶ 7).

Entities holding property that meets the definition of "unclaimed funds," such as financial institutions, insurance companies, and public utilities, are required to annually review their books and records to identify dormant funds which are properly reportable to Ohio's Director of Commerce. Ohio Rev. Code § 169.03; (ECF No. 42, ¶ 9). Potential holders of unclaimed funds must report unclaimed funds to the Director of Commerce or, if a holder identifies no properly reportable funds, submit a "negative report." Ohio Rev. Code § 169.03; Ohio Admin. Code 1301:10-3-03(B).

Before funds are moved from the holder to the UFTF, holders must "send notice to each owner of each item of unclaimed funds having a value of fifty dollars or more at the last known address of the owner as shown by the records of the holder." Ohio Rev. Code § 169.03(E); (ECF No. 42, ¶ 10). The notice shall "set forth the nature and identifying number, if any, or description of the funds and the amount appearing on the records of the holder to be due the owner or beneficiary" and "inform the owner or beneficiary that the funds will, thirty days after the mailing of the notice, be reported as unclaimed funds." Ohio Rev. Code § 169.03(E). The Director of Commerce has the authority to audit holders to confirm that they are complying with Chapter 169 of the Ohio Revised Code. Ohio Rev. Code § 169.03(G).

Once the funds move into the UFTF, the Director of Commerce publishes an annual notice of unclaimed funds in all 88 Ohio counties, with specific reference to the names and last known addresses for unclaimed funds owners reportedly owed fifty dollars or more. Ohio Rev. Code § 169.06; (ECF No. 42, ¶ 11). The Director of Commerce is also required to make a list of owners of unclaimed funds over ten dollars available during business hours. Ohio Rev. Code § 169.06(C). Finally, the Director of Commerce "may give any additional notice using any electronic or print medium that the director deems necessary to inform the owner of the

whereabouts of the owner's funds." Ohio Rev. Code § 169.06(D). Ohio's Division of Unclaimed Funds maintains a website that allows fund owners to search for their unclaimed funds. (ECF No. 37-1, ¶ 18); *see* Ohio Department of Commerce Division of Unclaimed Funds, Ohio Unclaimed Funds, https://unclaimedfunds.ohio.gov/ (last visited December 9, 2025).

On June 30, 2025, Governor DeWine signed House Bill 96, Ohio's biennial budget bill, which enacted changes to Chapter 169 of the Ohio Revised Code. Am. Sub. H.B. No. 96, 136th G.A. (Ohio 2025); (ECF No. 42, ¶¶ 16–17). Prior to House Bill 96's enactment, there was no time limitation on when owners could file administrative claims to recover unclaimed funds. *See* Am. Sub. H.B. No. 96 § 169.08(I), 136th G.A. (Ohio 2025). Under the amended version of Chapter 169, funds that have been held in the UFTF for ten years or more are deemed abandoned and permanently escheat to the state of Ohio. Ohio Rev. Code § 169.08(I). Funds deposited before January 1, 2016, will escheat on January 1, 2026, and funds deposited after January 1, 2016, will escheat after ten years. Ohio Rev. Code § 169.08(I)(1), (2). Before funds escheat to the state, an owner may file a claim to recover unclaimed funds and, upon showing a right to payment, the Director of Commerce shall pay the owner. Ohio Rev. Code § 169.08(A). In addition, owners may file claims to recover unclaimed funds until January 1, 2036, even if their funds escheat to the state before that date. Ohio Rev. Code § 169.08(I)(3)(b); (ECF No. 42, ¶ 18).

Presently, there is over $4 billion in the UFTF, and the portion of funds scheduled to escheat on January 1, 2026, is estimated to be approximately $1.7 to $1.9 billion. (ECF No. 42, ¶¶ 19–20.) The escheated funds are to be transferred to the Ohio Cultural and Sports Facility Performance Grant Fund. Ohio Rev. Code §§ 123.282, 169.08(I)(4). In fiscal year 2026, $1,000,000,000 is appropriated from revenues received in the Ohio Cultural and Sports Facility Performance Grant Fund, and the Office of Budget and Management shall use $600,000,000 to

"support construction of a transformational major sports facility mixed-use project . . . that is associated with a Brook Park economic development project" and $400,000,000 "to support construction or renovation of an Ohio cultural or sports facility." Am. Sub. H.B. No. 96 § 229.40, 136th G.A. (Ohio 2025).

## II.    Procedural Background

Plaintiffs allege that they are "rightful owners of property currently held in trust by the State of Ohio pursuant to Ohio Revised Code Chapter 169 in [the UFTF]." (ECF No. 1, ¶ 8.) On July 7, 2025, Plaintiffs filed a lawsuit in the Franklin County Court of Common Pleas advancing similar allegations and claims to those at issue in this case. (ECF No. 3-1.) Plaintiffs voluntarily dismissed that lawsuit on October 1, 2025 (ECF No. 15-1), and filed the instant action on October 2, 2025, against Defendant Sheryl Maxfield, in her official capacity as Director of Commerce, Defendant Akil Hardy, in his official capacity as the Superintendent of the Division of Unclaimed Funds, Defendant Robert Sprague, in his official capacity as Treasurer of the State of Ohio, and Defendant Joy Bledsoe, in her official capacity as Executive Director of the Ohio Facilities Construction Commission (ECF No. 1).

Plaintiffs allege that recent changes to Ohio's unclaimed funds statute (Ohio Rev. Code §§ 169.01, *et seq.*) enacted through House Bill 96 violate federal and state law. (ECF No. 1; ECF No. 42, ¶ 1.) Plaintiffs allege claims against Defendants for violating the Takings Clause of the Fifth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment to the United States Constitution (Count I); violating the Due Process Clause of the Fourteenth Amendment to the United States Constitution (Count II); violating Article I, Section 19 (the Takings Clause) of the Ohio Constitution (Count III); breaching their fiduciary duty under Ohio Revised Code §§ 169.01, *et seq.*, (Count IV); violating Article II,

5

Section 15(D) (the Single Subject Rule) of the Ohio Constitution (Count V); declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202 and Fed. R. Civ. P. 57 (Count VI); and abuse of legislative authority/ultra vires act (Count VII). (ECF No. 1, ¶¶ 93–148.)

On October 6, 2025, Defendants moved to dismiss or stay this case on abstention grounds. (ECF No. 3.) Plaintiffs responded in opposition (ECF No. 15) and Defendants replied in support (ECF No. 22). On October 31, 2025, Plaintiffs moved for a preliminary injunction "prohibiting any action to transfer any of the funds held in the Ohio Unclaimed Funds Trust Fund scheduled to begin as of January 1, 2026." (ECF No. 20, PageID 243.) In the alternative, Plaintiffs request a temporary restraining order "prohibiting the Defendants from transferring any funds held in the Ohio Unclaimed Funds Trust Fund as contemplated by the passage of H.B. 96 scheduled to begin as of January 1, 2026." (*Id.* PageID 243–44.) Defendants responded in opposition (ECF No. 37) and Plaintiffs replied in support (ECF No. 41).

On November 14, 2025, Judge Marbley, the district judge in this Court originally assigned to this case, held oral argument on Defendants' Motion to Dismiss. (ECF No. 29.) On November 19, 2025, Judge Marbley recused, and this case was reassigned to the Undersigned. (ECF No. 32.) The Undersigned held a hearing on Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order on December 8, 2025. (ECF No. 43.)

### STANDING AND RIPENESS

Defendants did not file a motion to dismiss based on lack of subject matter jurisdiction, but include arguments related to standing and ripeness in their response in opposition to Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order. (ECF No. 37, PageID 381–83.) "The related doctrines of Article III standing and ripeness are both limits on a federal court's ability to hear a case." *Carman v. Yellen*, 112 F.4th 386, 401 (6th Cir. 2024). The

issue of "whether a federal court has the power to adjudicate a suit, is 'the threshold question in every federal case.'" *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Therefore, the Court begins its analysis by addressing Defendants' standing and ripeness arguments.

Under Article III of the United States Constitution, federal courts are limited to hearing "Cases" and "Controversies." U.S. Const. art. III, § 2. "The doctrines of standing and ripeness 'originate' from the same Article III limitation." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)). "The standing requirement ensures that the plaintiff has a personalized injury that the court can directly redress." *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Ct.*, 769 F.3d 447, 451 (6th Cir. 2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "And the ripeness requirement prevents courts from hearing premature or abstract disagreements." *Id.* (citing *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967)).

Defendants argue that Plaintiffs lack standing and that their claims are not ripe because Plaintiffs are permitted to file administrative claims to recover their unclaimed funds until January 1, 2036, but have failed to do so, thereby self-inflicting injury. (ECF No. 37, PageID 381–83.) The Supreme Court's decision in *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180 (2019), precludes this argument. There, the Supreme Court held that plaintiffs need not exhaust state remedies to have an "actionable" takings claim in federal court. *Id.* at 185, 190. Instead, "[t]he Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." *Id.* at 190.

Federal courts have applied the holding from *Knick* to subsequent lawsuits involving unclaimed funds and allowed plaintiffs to proceed with takings claims even if they had not

pursued state law remedies for recovering unclaimed funds first. *See, e.g.*, *Knellinger v. Young*, 134 F.4th 1034, 1038, 1043–45 (10th Cir. 2025); *Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322, 1326, 1330–33 (11th Cir. 2025); *Vargo v. Barca*, No. 20-cv-1109-jdp, 2023 WL 6065599, at *1, *3–5 (W.D. Wis. Sep. 18, 2023). For example, in *Knellinger*, the Tenth Circuit Court of Appeals disagreed with the district court's "de facto requirement that a plaintiff must file an administrative claim with Colorado" to recover unclaimed property before suing in federal court because, "under *Knick*, it is clear that a property owner has no obligation to seek a remedy through state administrative proceedings or through litigation in state court" before pursuing litigation in federal court. 134 F.4th at 1044. Likewise, in *Maron*, the Eleventh Circuit Court of Appeals rejected the argument that plaintiffs did not have standing or ripe claims because they had not filed a claim with Florida's Department of Financial Services to retrieve their unclaimed property. 136 F.4th at 1330–33. Instead, the Eleventh Circuit applied *Knick* and explained that the Fifth Amendment allows plaintiffs "to proceed directly to federal court." *Id.*

Given *Knick* and its progeny, the Court rejects Defendants' argument that Plaintiffs' failure to file an administrative claim with Ohio's Division of Unclaimed Funds deprives Plaintiffs of standing and renders their claims unripe. Instead, the Court concludes that Plaintiffs have alleged a sufficiently imminent injury to confer standing and ripeness by asserting that their funds held in the UFTF will escheat to the state of Ohio on January 1, 2026. (ECF No. 1, ¶¶ 29, 69, 73); *see generally Nat'l Air Traffic Controllers Ass'n, MEBA AFC-CIO v. Pena*, 944 F. Supp. 1337 (N.D. Ohio 1996); *Lujan*, 504 U.S. at 560, 565 n.2 (explaining that an injury sufficient to satisfy Article III must be "actual or imminent," and that "certainly impending" injuries qualify as imminent).

## DEFENDANTS' MOTION TO DISMISS ON ABSTENTION GROUNDS

Having rejected Defendants' standing and ripeness arguments, the Court turns to whether it should abstain from exercising its jurisdiction.

## I.      Legal Standard

Federal courts have a "strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). This duty, however, is not absolute. *Id.* Federal courts may decline to exercise jurisdiction in "'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest," such as "proper constitutional adjudication," "regard for federal-state relations" or "wise judicial administration." *Id.* (*quoting Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976)). This doctrine, known as abstention, is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)).

## II.     Analysis

Defendants move the Court to dismiss or stay this case pursuant to *Colorado River*, *Pullman*, and *Burford* abstention doctrines. (ECF No. 3.) Plaintiffs oppose that request and argue that the Court should exercise its jurisdiction to decide this case. (ECF No. 15.) The Court analyzed the parties' briefs and the transcript from the November 19, 2025 oral argument held before Judge Marbley regarding Defendants' Motion to Dismiss.

### A.      *Colorado River* Abstention

In their opening Motion to Dismiss, Defendants rely on the abstention doctrine established in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)

to justify dismissing or staying this case. (ECF No. 3, PageID 86–90.) *Colorado River* abstention recognizes that "considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). For *Colorado River* abstention to apply, there must be parallel proceedings pending in state and federal court. *Id.*

In their reply, Defendants indicate that they "do not intend to proceed" with their *Colorado River* abstention argument. (ECF No. 22, PageID 322.) Plaintiffs voluntarily dismissed their Franklin County Court of Common Pleas lawsuit on October 1, 2025 (ECF No. 15-1), so there is no parallel proceeding pending in state court. Therefore, *Colorado River* abstention does not apply.

### B. *Pullman* Abstention

Defendants argue that *Pullman* abstention applies because this lawsuit arises out of an Ohio statute and Ohio's state courts are the proper forum to interpret that law. (ECF No. 3, PageID 90–92.) Defendants contend that (1) if Plaintiffs' claims have merit, "the statutes will be struck down as unconstitutional and there will be no need for this Court to resolve the dispute," and (2) if "Plaintiffs are wrong, and the Ohio state courts determine that the statute is a true 'escheat' statute that does not result in a taking, there also will be nothing left for this Court to resolve." (*Id.* PageID 91.) Plaintiffs respond that *Pullman* abstention is not appropriate here because the statute's text is clear and unambiguous, and no state-court interpretation could avoid or narrow the federal constitutional issues in this case. (ECF No. 15, PageID 218–20.)

*Pullman* abstention, announced in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), dictates that a federal court should abstain from exercising jurisdiction when

10

"difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii v. Housing Auth. v. Midkiff*, 467 U.S. 229, 236 (1984). "However, federal courts need not abstain on *Pullman* grounds when a state statute is not 'fairly subject to an interpretation which will render unnecessary' adjudication of the federal constitutional question." *Id.* For example, when "'the naked question, uncomplicated by [ambiguous language], is whether the Act on its face is unconstitutional,' abstention from federal jurisdiction is not required." *Id.* at 237 (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 439 (1971)) (citation omitted).

Although Plaintiffs' federal claims concern a state legislative enactment, *Pullman* abstention is not appropriate here. The Court does not find the provisions in Chapter 169 of the Ohio Revised Code at issue in this case to be so ambiguous as to necessitate abstention. The Parties dispute the statutory provisions that permit unclaimed funds to permanently escheat to the state and create notice requirements related to that escheatment, neither of which involve an unclear issue of state law. *See* Ohio Rev. Code §§ 169.03, 169.06, 169.08. Federal courts have analyzed escheatment and notice provisions in states' unclaimed property laws on several prior occasions. *See, e.g.*, *Knellinger*, 134 F.4th 1034; *Maron*, 136 F.4th 1322; *Taylor v. Yee*, 780 F.3d 928 (9th Cir. 2015).

In addition, Plaintiffs' federal claims, brought under the Takings Clause and the Due Process Clause of the United States Constitution, turn on interpretations of federal constitutional law, not state law. *Am. Express Travel Related Servs., Inc. v. Kentucky*, 597 F. Supp. 2d 717, 721–22 (E.D. Ky. 2009) (concluding that *Pullman* abstention was not appropriate in case involving federal Due Process and Takings claims arising out of "legislative enactments that shorten[ed] the presumptive abandonment period of traveler's checks from 15 years to 7 years").

And the fact that recent amendments to Chapter 169 have not been interpreted by a state court does not, by itself, compel abstention. *Harman v. Forssenius*, 380 U.S. 528, 534–35 (1965). Plaintiffs' federal constitutional claims are matters which may be resolved by a federal court, so this Court declines to abstain under *Pullman*.

C.    *Burford* **Abstention**

Defendants argue that *Burford* abstention applies because "the exercise of federal jurisdiction would usurp the administrative process prescribed by Ohio statute for settling this inherently local dispute concerning Ohioans' unclaimed funds." (ECF No. 3, PageID 92–94.) Defendants note that the Ohio General Assembly set forth an administrative process for recovering unclaimed funds and contend that "[a]llowing Plaintiffs to pursue their claims in federal court would vitiate" that process. (*Id.*) Plaintiffs respond that they "are not asking this Court to review or overturn a technical administrative determination from a regulatory agency," rather, they challenge the constitutionality of a state statute, which is an issue federal courts routinely adjudicate. (ECF No. 15, PageID 220–22.) In addition, Plaintiffs argue that Ohio's unclaimed funds program is not the sort of "complex state administrative regime" that justifies abstaining under *Burford*. (*Id.*)

The *Burford* abstention doctrine, derived from *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), instructs federal courts to avoid meddling in complex regulatory matters when federal issues can be addressed at the administrative level where the expertise lies to develop a record and to consider important local policies. *Monongahela Power Co. v. Scrhiber*, 322 F. Supp. 2d 902, 915 (S.D. Ohio 2004). As the Supreme Court explained:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the

> result in the case then at bar'; or (2) where the 'exercise of federal review of the
> question in a case and in similar cases would be disruptive of state efforts to
> establish a coherent policy with respect to a matter of substantial public concern.'

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)

(quoting *Colorado River*, 424 U.S. at 814). Abstention under *Burford*, however, is not required

in every case that involves a complex state administrative process or a potential for conflict with

state regulatory law or policy. *Id.* at 362.

      Defendants have not demonstrated that the concerns outlined in *Burford* are present here.

Section 169.08 of the Ohio Revised Code creates an administrative process through which

Plaintiffs may file claims to recover unclaimed funds, but Plaintiffs are not asking this Court to

meddle with or disrupt that claims process. Instead, Plaintiffs challenge the escheatment and

notice provisions in Chapter 169. *See* Ohio Rev. Code §§ 169.03, 169.06, 169.08. Plaintiffs

contend that these provisions violate the Takings Clause and the Due Process Clause of the

United States Constitution, which are federal issues that Ohio's administrative process would not

resolve.

      In addition, this case does not involve a complex regulatory scheme in the sense that

specialized knowledge and expertise are not required to adjudicate Plaintiffs' federal claims.

*Ada-Cascade Watch Co., Inc. v. Cascade Res. Recovery, Inc.*, 720 F.2d 897, 903 (6th Cir. 1983)

(explaining that *Burford* involved a complex state law regulating the oil and gas industry in

Texas and that "federal courts inconsistently interpreted state law which required a specialized

knowledge of oil and gas matters"). Not surprisingly, courts have abstained under *Burford* in

cases concerning statutory schemes regulating the rates of public utilities, which involve a far

more complex set of laws than those at issue in this case. *See, e.g.*, *Adrian Energy Assocs. v.

Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 416, 423–24 (6th Cir. 2007). Here, analyzing the

13

constitutionality of the disputed provisions in Chapter 169 "merely involve[s] reading and construing a statute, a task for which courts are best equipped." *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 755 F. Supp. 2d 556, 562–63, 571–73 (D.N.J. 2010) (quoting *United Servs. Auto. Ass'n v. Muir*, 792 F.2d 356, 365 (3d Cir. 1986)) (declining to abstain under *Burford* in case involving federal constitutional challenges to New Jersey's unclaimed property statute). Therefore, *Burford* abstention is not warranted here.

For these reasons, the Court **DENIES** Defendants' Motion to Dismiss. (ECF No. 3.)

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

### I. Legal Standard

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

Before granting a preliminary injunction or a temporary restraining order, a court considers four things: "(1) 'whether the movant has a strong likelihood of success on the merits' and would (2) 'suffer irreparable injury' without the injunction, (3) whether the injunction would substantially harm others, and (4) whether issuing the injunction serves the public interest." *James B. Oswald Co. v. Neate*, 98 F.4th 666, 672 (6th Cir. 2024) (quoting *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017)); *ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016) (Black, J.) ("The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo.").

14

The third and fourth factors—harm to others and the public interest—merge when the government is a party. *OPAWL – Building AAPI Feminist Leadership v. Yost*, 118 F.4th 770, 785 (6th Cir. 2024) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)); *Daunt v. Benson*, 956 F.3d 396, 422 (6th Cir. 2020). "[W]here there is no likelihood of *either* success on the merits *or* irreparable harm, an injunction is unwarranted—regardless of the showing on the other factors." *James B. Oswald Co.*, 98 F.4th at 672 (quoting *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 366 (6th Cir. 2022)).

## II.    Analysis

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs move for a preliminary injunction "prohibiting any action to transfer any of the funds held in the Ohio Unclaimed Funds Trust Fund scheduled to begin as of January 1, 2026." (ECF No. 20, PageID 243.) In the alternative, Plaintiffs request a temporary restraining order "prohibiting the Defendants from transferring any funds held in the Ohio Unclaimed Funds Trust Fund as contemplated by the passage of H.B. 96 scheduled to begin as of January 1, 2026." (*Id.* PageID 243–44.) Defendants oppose both requests and argue that preliminary injunctive relief is not appropriate here for a variety of reasons. (ECF No. 37.)

### A.    Strong Likelihood of Success on the Merits

Under the first factor of the preliminary injunction framework, the Court analyzes whether Plaintiffs have demonstrated a strong likelihood of success on the merits. At its core, Plaintiffs' request for preliminary injunctive relief relates to their takings claims. Plaintiffs move this Court to enjoin Defendants from transferring unclaimed funds in the UFTF to the Ohio Cultural and Sports Facility Performance Grant Fund on January 1, 2026. (*See* ECF No. 20, PageID 243–44.) Likewise, in their Complaint, Plaintiffs request preliminary injunctive relief

15

"prohibiting Defendants and those in active concert with them from implementing or enforcing any provision of HB 96 that diverts, escheats, transfers, or expends monies from the Unclaimed Funds Trust Fund for stadium construction or any non-custodial purpose." (ECF No. 1, PageID 25–26.) Put simply, Plaintiffs ask this Court to stop Defendants from taking their unclaimed funds. As such, the Court evaluates Plaintiffs' likelihood of success on the merits of their takings claims.[1]

### 1. Takings Clause of the Fifth Amendment to the United States Constitution

Plaintiffs allege that certain provisions in Chapter 169 of the Ohio Revised Code—those that enable unclaimed funds to permanently escheat to the state of Ohio—violate the Takings Clause of the Fifth Amendment to the United States Constitution. (ECF No. 20, PageID 271–74.) Defendants assert that Plaintiffs cannot succeed on their Motion for Preliminary Injunction and Temporary Restraining Order with respect to this claim because, even assuming a taking has occurred, Plaintiffs are not entitled to injunctive relief. (ECF No. 37, PageID 356, 363–64.)

"The Takings Clause of the Fifth Amendment provides that private property shall not 'be taken for public use, without just compensation.'" *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017). In the injunctive relief context, "[a]s long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking."

---

[1] In their briefs, the Parties include arguments about whether Plaintiffs are likely to succeed on the merits of other claims, including Plaintiffs' federal due process claim and state breach of fiduciary duty claim. (ECF No. 20, PageID 265–71, 274–75; ECF No. 37, PageID 374–77.) The Court declines to address these arguments at this juncture because they are unrelated to the preliminary injunctive relief that Plaintiffs' request in the Motion presently before this Court. Plaintiffs do not move for relief related to their due process claim, such as a preliminary injunction that reforms the notice requirements set forth in Chapter 169 of the Ohio Revised Code. Instead, Plaintiffs ask the Court to prevent Defendants from taking their unclaimed funds on January 1, 2026.

*Knick*, 588 U.S. at 201. "Today, because the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, <u>equitable relief is generally unavailable</u>." *Id.* (emphasis added); *see also Knellinger*, 134 F.4th at 1045 (applying *Knick* to dispute over unclaimed funds statute); *Narrigan v. Goldberg*, 772 F. Supp. 3d 182, 193–94 (D. Mass. 2025) (same). In *Knellinger*, the Tenth Circuit applied *Knick* to a dispute over the constitutionality of Colorado's Revised Uniform Unclaimed Property Act under the Takings Clause of the Fifth Amendment, and affirmed the district court's decision to dismiss plaintiffs' equitable claims because plaintiffs could "obtain just compensation for any taking" through litigation. 134 F.4th at 1038, 1045 (citing *Knick*, 588 U.S. at 200–02). Similarly, in *Narrigan*, the district analyzed a constitutional challenge to Massachusetts's Disposition of Unclaimed Property Act and concluded that, as a matter of law, it could not enjoin the treasurer of Massachusetts "to halt an ongoing taking or prevent a future" when property owners could "obtain just compensation in state court for property that is taken by the state." 772 F. Supp. 3d at 187, 193–94 (citing *Knick*, 588 U.S. at 185, 205).

Here, Chapter 169 of the Ohio Revised Code provides an avenue for Plaintiffs to recover their unclaimed funds. Before the funds permanently escheat to the state, Plaintiffs may file an administrative claim and, upon showing a right to payment, the Director of Commerce shall pay them. Ohio Rev. Code § 169.08(A). Plaintiffs may also file a claim to recover unclaimed funds until January 1, 2036, even if their funds escheat to the state before then. Ohio Rev. Code § 169.08(I)(3)(b). And any person who is adversely affected by a decision of the Director of Commerce may appeal that decision to an Ohio court of common pleas. Ohio Rev. Code §§ 169.08(G), 119.12. In addition, the Sixth Circuit recently reiterated that "Ohio's statutory mechanism for obtaining compensation to remedy a Takings Clause violation does provide

17

reasonable, certain, and adequate procedures." *Ladd v. Marchbanks*, 971 F.3d 574, 581–82 (6th Cir. 2020) (citing *Coles v. Granville*, 448 F.3d 853, 861–65 (6th Cir. 2006)). When property owners have "some way to obtain compensation after the fact," as Plaintiffs do here, "governments need not fear that courts will enjoin their activities."[2] *Knick*, 588 U.S. at 185. Therefore, whether Plaintiffs are likely to succeed on the merits of their Takings Clause claim— i.e., whether they can establish that a taking has occurred—is irrelevant for purposes of Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order because injunctive relief is unavailable for this claim. *See HAPCO v. City of Philadelphia*, 482 F. Supp. 3d 337, 358 (E.D. Pa. 2020).

### 2. Takings Clause of the Ohio Constitution (Article I, Section 19)

Plaintiffs allege that Defendants violated Article I, Section 19 (the Takings Clause) of the Ohio Constitution (ECF No. 1, ¶¶ 107–19), and include arguments related to that claim in their Motion for Preliminary Injunction and Temporary Restraining Order. (ECF No. 20, PageID 258– 59, 271.) Defendants argue that Plaintiffs cannot succeed on the merits of that claim because this

---

[2] In their reply, Plaintiffs attempt to distinguish *Knick*, 588 U.S. 180 (2019), by arguing that the case "presupposes the existence of a lawful taking," and, here, the "purpose of the state's taking" is "[c]onstitutionally deficient since the taking is not for a public purpose and 'private use takings are unconstitutional regardless of whether just compensation is paid.'" (ECF No. 41, PageID 427 (quoting *Montgomery v. Carter County*, 226 F.3d 758, 767 (6th Cir. 2000)). This argument is flawed because statutes that promote economic development serve a public purpose by "provid[ing] appreciable benefits to the community, including—but by no means limited to— new jobs and increased tax revenue." *Kelo v. City of New London, Connecticut*, 545 U.S. 469, 483–90 (2005). As discussed at the December 8, 2025 hearing, the Ohio legislature has made a finding that the funds challenged by Plaintiffs are part of a plan to promote economic development. *See* Am. Sub. H.B. No. 96 § 229.40, 136th G.A. (Ohio 2025); (ECF No. 43). Plaintiffs contend that House Bill 96 permits the government to take funds for a purely private purpose, namely, "a private football stadium project fund," but the legislation makes clear that these funds "support construction of a transformational major sports facility mixed-use project pursuant to section 123.281 of the Revised Code that is associated with a Brook Park *economic development project*." *Id.* (emphasis added); (ECF No. 41, PageID 425).

18

Court lacks jurisdiction to adjudicate it. (ECF No. 37, PageID 367–69.) In reply, Plaintiffs clarify that they "do not seek to enforce Ohio statutes or the Ohio Constitution through this injunction." (ECF No. 41, PageID 429.)

A claim that a state official violates state law in carrying out his or her official duties is a claim against the State, which is barred by the Eleventh Amendment, depriving a federal court of jurisdiction to hear the matter. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–06 (1984). Indeed, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* at 106. In their Complaint and Reply in Support of Motion for Preliminary Injunction and Temporary Restraining Order, Plaintiffs acknowledge this jurisdictional limitation. (ECF No. 1, ¶ 108 (asserting their state-law takings claim "subject to the Eleventh Amendment and Pennhurst State School & Hospital v. Helderman, 465 U.S. 89 (1984)" and explaining that they "do not request an order compelling state officials to comply with state law"); ECF No. 41, PageID 429.) This Court lacks subject matter jurisdiction over Plaintiffs' state-law takings claim brought under Article I, Section 19 of the Ohio Constitution, so this claim provides Plaintiffs no basis to succeed on the merits on takings grounds. *See Ladd*, 971 F.3d at 582 ("[T]o the extent Plaintiffs seek equitable relief against [the Defendant] for violating the Ohio Constitution, we have no authority to grant it.").

## B.     Irreparable Harm

Under the second factor of the preliminary injunction framework, the Court evaluates whether Plaintiffs have established that they will suffer irreparable injury absent an injunction.

Plaintiffs argue that they will be irreparably harmed without an injunction because their constitutional rights will be violated and their property rights will be extinguished. (ECF No. 20,

19

PageID 275–76.) Defendants respond that Plaintiffs' alleged injury can be compensated by monetary relief and, therefore, does not constitute irreparable harm. (ECF No. 37, PageID 363–66.)

"Where injuries have 'an adequate remedy at law,' such as sufficient monetary relief, they are not 'irreparable.'" *Grassi v. Grassi*, No. 24-3291, 2024 WL 4715614, at *4 (6th Cir. Nov. 5, 2024) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Therefore, a plaintiff must show that they are at risk of suffering some harm that "is not fully compensable by monetary damages" to establish irreparable harm. *Int'l Union of Painters & Allied Trades Dist. Council No. 6 v. Smith*, 148 F.4th 365, 371 (6th Cir. 2025) (quoting *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)). But, with respect to takings claims, "it is black letter law that a Takings Clause violation does not constitute irreparable harm for purposes of obtaining injunctive relief because monetary damages is the proper remedy for such a violation." *HAPCO*, 482 F. Supp. 3d at 361 n.131 (citing *Knick*, 588 U.S. at 201); *see also Narrigan*, 772 F. Supp. 3d at 193 n.3 ("An injury under the Takings Clause is . . . inherently reparable through just compensation.").

Here, Plaintiffs cannot establish that they will suffer irreparable harm without an injunction that prohibits Defendants from transferring unclaimed funds to a private entity on January 1, 2026, because monetary damages are available to compensate Plaintiffs for any alleged violation of the Takings Clause. As discussed above, (1) owners may file administrative claims to recover their unclaimed funds until January 1, 2036; (2) upon providing sufficient proof of the validity of the owner's claim, the Director of Commerce shall pay the administrative claim; (3) owners may pursue judicial review of their administrative claims; and (4) the Sixth Circuit has recognized that "Ohio's statutory mechanism for obtaining compensation to remedy a

Takings Clause violation does provide reasonable, certain, and adequate procedures."[3] Ohio Rev. Code §§ 169.08(A), 169.08(I)(3)(b), 169.08(G), 119.12; *Ladd*, 971 F.3d at 581–82. Therefore, the Court agrees with Defendants' point that Plaintiffs have failed to show that "either the administrative claims process or judicial review of denied claims are inadequate remedies." (ECF No. 37, PageID 364, n.7.) To the contrary, "just compensation remedies are available" to Plaintiffs, so injunctive relief is "foreclosed." *Knick*, 588 U.S. at 205.

At bottom, Plaintiffs ask this Court to enjoin an alleged taking, which the Court may not do under *Knick*. As Defendants noted at the December 8, 2025 hearing, Plaintiffs' request for preliminary injunctive relief relates to the escheatment provisions in House Bill 96 that are now codified at Ohio Revised Code § 169.08(I). (ECF No. 43; *see* ECF No. 1, PageID 25–26 (seeking preliminary injunction "prohibiting Defendants and those in active concert with them from implementing or enforcing any provision of HB 96 that *diverts, escheats, transfers, or expends* monies from the Unclaimed Funds Trust Fund for stadium construction or any non-custodial purpose") (emphasis added); ECF No. 37, PageID 243–44 (seeking preliminary injunction "prohibiting any action to *transfer* any of the funds held in the Ohio Unclaimed Funds Trust Fund scheduled to begin as of January 1, 2026" (emphasis added).) Plaintiffs dedicate much of their briefs to the merits of their Due Process Clause claim and the alleged lack of notice in this case. Their request for preliminary injunctive relief does not relate to the notice provisions in Chapter 169 of the Ohio Revised Code. Plaintiffs may not use their Due Process Clause claim to

---

[3] As discussed at the December 8, 2025 hearing, to the extent Plaintiffs argue that Ohio's administrative process for recovering unclaimed funds is inadequate because the funds in the UFTF may become insufficient to pay out valid claims once permanent escheatment begins on January 1, 2026, they did not provide evidence to this effect. (ECF No. 43.) Instead, Ohio Revised Code § 169.08 establishes that the Director of Commerce "shall" pay valid claims for unclaimed funds and creates a process to ensure the UFTF has a sufficient balance to pay pending claims. (*Id.*); Ohio Rev. Code §§ 169.08 (A), (I), (E).

circumvent the Supreme Court's reasoning in *Knick* and obtain an injunction when they have an adequate remedy at law to recover those unclaimed funds.

For these reasons, Plaintiffs have not established that they will suffer irreparable harm without their requested injunction, which is fatal to their Motion for Preliminary Injunction and Temporary Restraining Order because the existence of irreparable injury is "mandatory" and "indispensable" when it comes to obtaining a preliminary injunction. *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019).

### C.    Substantial Harm to Others and Public Interest

Under the third and fourth factors of the preliminary injunction framework, the Court assesses whether the injunction would cause substantial harm to others and whether it would serve the public interest. As noted above, the third and fourth preliminary injunction factors merge when the government is a party. *OPAWL – Building AAPI Feminist Leadership*, 118 F.4th at 785; *Daunt*, 956 F.3d at 422.

Plaintiffs make several arguments under these factors: (1) a property owner's interest in their property outweighs the state of Ohio's interest in seizing that private property to use as a revenue source, (2) the amendments to Chapter 169 of the Ohio Revised Code endanger the property rights of those with unclaimed funds, and (3) the public has a compelling interest in ensuring that the government abides by the Constitution and the rule of law. (ECF No. 20, PageID 276–79.) Defendants respond that the requested injunction will harm the state of Ohio's interest in enforcing its laws without interference from the federal government and that Chapter 169 of the Ohio Revised Code benefits the public by putting otherwise dormant funds to use. (ECF No. 37, PageID 383–85.) Defendants also note that Plaintiffs' arguments "presume[] the unconstitutionality of the statutes in question." (*Id.*)

22

The third and fourth preliminary injunction factors—substantial harm to others and public interest—arguably cut both ways. But even assuming both factors favor Plaintiffs, that would not overcome Plaintiffs' failure to establish irreparable harm, which forecloses preliminary injunctive relief because "even the strongest showing on the other three [preliminary injunction] factors cannot 'eliminate the irreparable harm requirement.'" *D.T.*, 942 F.3d at 326–27 (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

In sum, Plaintiffs have failed to carry their burden of justifying preliminary injunctive relief. Plaintiffs move this court to enjoin a taking, but *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180 (2019), and its progeny preclude their requested relief. Accordingly, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order. (ECF No. 20.)

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendants' Motion to Dismiss (ECF No. 3) and **DENIES** Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order (ECF No. 20).

This case remains open.

| | |
|---|---|
| **12/9/2025** | **s/Edmund A. Sargus, Jr.** |
| **DATE** | **EDMUND A. SARGUS, JR.** |
| | **UNITED STATES DISTRICT JUDGE** |