UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 25-3978

MARY BLEICK; TODD BUTLER; ALLEN SKIERSKI; GARY PETRIME,

    Plaintiffs - Appellants,

    v.

SHERYL MAXFIELD; AKIL HARDY; ROBERT SPRAGUE; JOY BLEDSOE,

    Defendants - Appellees.

**FILED**
Mar 10, 2026
KELLY L. STEPHENS, Clerk

Before: BOGGS, SILER, and KETHLEDGE, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

*Kelly L. Stephens*

Kelly L. Stephens, Clerk

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0075p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————

MARY BLEICK; TODD BUTLER; ALLEN SKIERSKI; GARY PETRIME,

        *Plaintiffs-Appellants*,

    *v.*

SHERYL MAXFIELD; AKIL HARDY; ROBERT SPRAGUE; JOY BLEDSOE,

        *Defendants-Appellees*.

No. 25-3978

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:25-cv-01140—Edmund A. Sargus, Jr., District Judge.

Argued:  Decided and Filed:  March 10, 2026

Before:  BOGGS, SILER, and KETHLEDGE, Circuit Judges.

———————

## COUNSEL

**ON BRIEF:**  William W. Palmer, PALMER LAW GROUP, PLC, Los Angeles, California, Jeffrey A. Crossman, Marc E. Dann, DANNLAW, Lakewood, Ohio, for Appellants.  Aneca E. Lasley, ICE MILLER LLP, Columbus, Ohio, Joshua A. Klarfeld, ICE MILLER LLP, Cleveland, Ohio, for Appellees.

———————

## OPINION

———————

    KETHLEDGE, Circuit Judge.  Plaintiffs Mary Bleick, Todd Butler, Allen Skierski, and Gary Petrime appeal the district court's denial of a preliminary injunction to prevent the transfer of ownership of funds from Ohio's Unclaimed Funds Trust Fund to the state itself.  We reject their arguments and affirm.

No. 25-3978                     *Bleick, et al. v. Maxfield, et al.*                    Page 2

Ohio's Unclaimed Funds Act requires entities holding certain funds—including bank accounts, certificates of deposit, insurance proceeds, dividends, rent deposits, and other accounts—to deposit the funds into Ohio's Unclaimed Funds Trust Fund if the funds have been "unclaimed" for a prescribed period, typically five years. Ohio Rev. Code §§ 169.02, 169.05. Entities holding such funds ("holders") must report them to Ohio's Division of Unclaimed Funds each year. *Id.* § 169.03. If the funds total $50 or more, holders must notify their last known owner that "the funds will, thirty days after the mailing of the notice, be reported as unclaimed funds." *Id.* § 169.03(E).

Each year, the Director of Commerce publishes an annual notice of unclaimed funds in all 88 Ohio counties, listing the names and last known addresses of the owners of unclaimed funds. *Id.* § 169.06(A), (B). The Director also posts notice to that effect on the Division's website. *Id.* § 169.06(D); *see* https://unclaimedfunds.ohio.gov/.

In June 2025, Governor Mike DeWine signed Ohio's House Bill 96, which amended the Act to provide that funds held in the Trust Fund for ten years or more shall escheat to the state. *Id.* § 169.08(I). Funds deposited in the Trust Fund before January 1, 2016, would escheat on January 1, 2026; funds deposited in the Fund after January 1, 2016, would escheat ten years after deposit. Even after funds escheat, however, owners have another ten years to "file a claim for payment of an equivalent amount" of the escheated funds, "together with interest earned by the state . . . less any expenses and costs incurred by the state in securing full title and ownership of the unclaimed funds." *Id.* § 169.08(I)(3)(b). Thus, owners of funds that escheated on January 1 of this year can seek recovery of those funds "at any time on or before January 1, 2036." *Id.*

The plaintiffs allege that they own funds that were subject to escheatment on January 1 of this year. In October 2025, they sued several Ohio officials charged with implementing this regime, claiming that the regime violates the Takings Clause of the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment, and various Ohio laws. The plaintiffs also moved for a preliminary injunction to prevent the escheatment of their funds, arguing that the Act provides them insufficient notice before their property escheats. (Why the plaintiffs did not simply claim their funds by the means provided in the statute, *see id.*, the complaint does not say.) The district court denied relief, holding that the plaintiffs had not shown any irreparable

harm from the escheatment of their funds.

We review the court's denial of injunctive relief for an abuse of discretion. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540-41 (6th Cir. 2007). Courts may grant a preliminary injunction "only if the plaintiffs present 'a clear showing' that they are likely to prevail on the merits, that they face irreparable harm without an injunction, that the balance of equities favors them, and that the public interest supports an injunction." *L. W. by & through Williams v. Skrmetti*, 83 F.4th 460, 471 (6th Cir. 2023).

We begin and end with the absence of any irreparable harm. At issue in this case is only money. The effect of escheatment is to transfer "[a]ll property rights, legal title to, and ownership of" the monies at issue to the state itself. Ohio Rev. Code § 169.08(I)(3)(a). The plaintiffs have fully ten years to claim their funds (with interest, but less expenses) from the state. *Id.* § 169.08(I)(3)(b). The plaintiffs have barely attempted to show that they cannot recover their monies by that means, offering little more than bare assertions that the state "refus[ed] to reconcile obvious clerical errors in the holder's report." R. 20-3, PageID 296. Nor have they shown that—if they were to prevail on the merits of their takings claim (or due-process claim, for that matter), and to sue an appropriate defendant—they could not obtain a money judgment to make them whole. Thus, the plaintiffs have ways other than injunctive relief to obtain the compensation they seek here. And the Supreme Court has made clear that, "[s]o long as the property owner has some way to obtain compensation after the fact, governments need not fear that courts will enjoin their activities." *Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019).

The plaintiffs counter that—under *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021)—injunctive relief (in the plaintiffs' words) "is available to prevent a future *per se* taking." Br. at 13. But in *Cedar Point*, the Court held only that the defendants had effected a taking, not that the plaintiffs were entitled to a particular remedy. *See id.* at 162; and *id.* at 179 (Breyer, J., dissenting) ("I touch briefly on remedies, which the majority does not address"). Meanwhile, the harm in *Cedar Point*—a physical trespass upon the plaintiffs' facility, in violation of their "right to exclude"—is patently harder to remedy, post hoc, than is a wrongful transfer of money.

The plaintiffs have made no showing whatever that a preliminary injunction, during the

No. 25-3978  *Bleick, et al. v. Maxfield, et al.*  Page 4

pendency of this suit, is necessary to make them whole in the event they ultimately prevail on the merits of their takings claim. In this case, rather, the Supreme Court's holding in *Knick* applies by its plain terms.

Nor can the plaintiffs show irreparable harm from the state's alleged violations of their due-process rights. The plaintiffs contend the Act provides insufficient notice to property owners that their funds are subject to escheatment. But they had actual notice, including from their own review of Ohio's unclaimed-funds website, that the state held certain of their funds. This apprised them of "the pendency of the [escheatment] and afford[ed] them an opportunity to present their objections," which remedied any harm from the Act's allegedly unlawful notice provisions. *Keene Grp., Inc. v. City of Cincinnati, Ohio*, 998 F.3d 306, 312 (6th Cir. 2021). The plaintiffs gesture toward "other property in Ohio that is subject to turnover and/or seizure under Ohio's unclaimed property regime," but do not identify any such property specifically. Thus, they have not shown a "likelihood" of irreparable harm. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

The district court's December 9, 2025 Order is affirmed.