UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MARY BLEICK, *et al.*,** | ) | **Case No.: 2:25-cv-01140** |
| | ) | |
| **Plaintiffs,** | ) | **Judge Edmund A. Sargus, Jr.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SHERYL MAXFIELD, in her official** | ) | |
| **capacity as Director of Commerce, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants Sheryl Maxfield (in her official capacity as Director of the Ohio Department of Commerce), Akil Hardy (in his official capacity as Superintendent of the Ohio Division of Unclaimed Funds), Robert Sprague (in his official capacity as Ohio Treasurer), and Joy Bledsoe (in her official capacity as Executive Director of the Ohio Facilities Construction Commission) (collectively, "Defendants"), by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 12(c), hereby move for judgment on the pleadings on the entirety of Plaintiffs' Complaint.

Plaintiffs have not asserted any viable claims. Many of the claims they have asserted are foreclosed by the Sixth Circuit's ruling on their appeal of this Court's denial of their Motion for Preliminary Injunction and Temporary Restraining Order (ECF No. 44). *See Bleick v. Maxfield*, 169 F.4th 713 (6th Cir. 2026), *pet. for rehearing en banc denied*, *Bleick v. Maxfield*, Sixth Cir. Case No. 25-3978, Doc. 39 (Apr. 10, 2026). The balance of Plaintiffs' claims are precluded by settled law. Accordingly, and for the reasons more fully stated in the attached memorandum in support, Defendants ask this Court to grant them judgment on the pleadings and dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,

*/s/ Aneca E. Lasley*

Aneca E. Lasley (0072366) (Trial Attorney)
Andrea E. Howell (0101138)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, Ohio 43215
Tel: (614) 462-2700/Fax: (614) 462-5135
Aneca.Lasley@icemiller.com
Andrea.Howell@icemiller.com

Joshua Klarfeld (0079833)
ICE MILLER LLP
600 Superior Ave East, Suite 1600
Cleveland, OH 44114
Tel: (216) 394-5063
Joshua.Klarfeld@icemiller.com

John D. French (#37629-53)
*(Pro Hac Vice)*
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
Tel: (317) 236-2100/Fax: (317)-236-2219
JD.French@icemiller.com

*Special Counsel for Defendants Sheryl Maxfield (in her official capacity as Director of the Ohio Department of Commerce), Akil Hardy (in his official capacity as Superintendent of the Ohio Division of Unclaimed Funds), Robert Sprague (in his official capacity as Ohio Treasurer), and Joy Bledsoe (in her official capacity as Executive Director of the Ohio Facilities Construction Commission)*

2

**MEMORANDUM IN SUPPORT**

## I. INTRODUCTION

Plaintiffs seek only two types of relief: injunctive and declaratory. As the Sixth Circuit already held, they are not entitled to injunctive relief because, among other reasons, they cannot demonstrate irreparable harm. That leaves only declaratory relief, which Plaintiffs seek under both state and federal law. As this Court has already held, it lacks jurisdiction over the state-law claims because of sovereign immunity. Even if the Court had jurisdiction over those claims, they still fail because Plaintiffs did not exhaust their administrative remedies. As for their federal claims, Plaintiffs are not entitled to declaratory relief. Nor can they demonstrate standing or ripeness. For any or all of these reasons, Defendants are entitled to judgment in their favor.

## II. FACTS

### A. PROCEDURAL BACKGROUND

On October 2, 2025, Plaintiffs filed this lawsuit challenging certain amendments to Ohio's Unclaimed Funds Law encompassed within Ohio House Bill 96 ("H.B. 96"), which dictate that certain funds held in the Ohio Unclaimed Funds Trust Fund ("UFTF") are deemed abandoned and escheat to the State after ten years. (Compl., ECF No. 1.) The Complaint contains seven counts:

- Counts I and II are brought under 42 U.S.C. § 1983, and claim that the amended Statute violates the Takings Clause and the Fourteenth Amendment Due Process Clause of the U.S. Constitution. (*Id.* at PageID 17–19.)

- Counts III through V allege various Ohio state-law claims including a violation of Article 1, Section 19 of the Ohio Constitution, breach of fiduciary duty under Ohio Rev. Code § 169.01, *et seq.*, and violation of the Single Subject Rule of the Ohio Constitution. (*Id.* at PageID 19–23.)

- Counts VI and VII attempt to state claims for Declaratory Judgment and Abuse of Legislative Authority/Ultra Vires Act, respectively. (*Id.* at PageID 23–25.)[1]

---

[1] As explained below, although Plaintiffs attempt to assert a standalone declaratory judgment count, they also seek declaratory relief as part of each substantive count in the Complaint. The

On October 31, 2025, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction (the "TRO/PI Motion"). (ECF No. 20.) On December 8, 2025, the Court held a full-day evidentiary hearing on that Motion. The next day, the Court issued its Opinion and Order denying the TRO/PI Motion. (ECF No. 44 (the "Order").)

On December 11, 2025, Plaintiffs appealed that Order to the Sixth Circuit. (ECF No. 46 at PageID 681.) The Sixth Circuit affirmed the denial of Plaintiffs' TRO/PI Motion. *See Bleick v. Maxfield*, 169 F.4th 713 (6th Cir. 2026). On March 24, 2026, Plaintiffs filed a Petition for Rehearing and Rehearing En Banc, which the Sixth Circuit also denied. (*Bleick*, Sixth Cir. Case No. 25-3978, Docs. 38-39.) The Sixth Circuit's analysis is preclusive of several of the claims in the Complaint.

## B.    FACTUAL BACKGROUND

The background to Ohio's Unclaimed Funds Statute, Ohio Rev. Code § 169.01 *et seq.* (the "Statute"), and the amendments to that Statute effectuated by H.B. 96, is set forth in Defendants' Opposition to Plaintiffs' TRO/PI Motion (the "TRO Opposition"). (ECF No. 37.) Sections II.A. and II.B. of the TRO Opposition detail that background. Rather than restating that entire background here, Defendants incorporate the TRO Opposition by reference, and offer the following brief summary of the relevant facts:

1.      The Statute establishes a thorough and longstanding structure for the State of Ohio to hold dormant financial assets in trust with the goal of reuniting them with their owners.

2.      Certain categories of property must be reported and transmitted to the UFTF after statutorily specified periods of time. Ohio Rev. Code §§ 169.02, 169.03.

---

analysis for why they are not entitled to declaratory relief is the same, regardless of whether that relief is pled as a standalone claim or as a request for relief in a substantive count.

3. The Statute imposes rigorous reporting obligations: holders of funds must provide information to the State including the owner's full name and last known address, a description of the property, the date the funds became payable, and the owner's social security number if available. § 169.03(A)(2).

4. The statutory notice requirements are equally robust. Before a holder may report property as unclaimed, it must send notice to the owner of the "unclaimed funds having a value of fifty dollars or more at the last known address of the owner as shown by the records of the holder." § 169.03(E). That notice must clearly describe the property and advise the owner that the funds will be reported as unclaimed within thirty days, among other requirements. For items valued at $1,000 or more, the notice must be sent by certified mail, return receipt requested. *Id.*

5. Finally, the State actively enforces these statutory duties. It retains broad authority to audit holders of unclaimed property to confirm compliance with Chapter 169's reporting and notice provisions, further strengthening the statutory design. *See* Ohio Rev. Code § 169.03(G). These safeguards are intended to ensure that owners receive meaningful, advance notice before the State ever takes custody of unclaimed funds.

6. On June 30, 2025, the Governor signed H.B. 96 into law.

7. As relevant here, H.B. 96 amended the Statute to incorporate a true escheat mechanism. Now, funds held in the UFTF for ten years or more are deemed abandoned and escheat to the State after owners have been given repeated opportunities to identify and recover their funds.

8. The amendments introduce clear, easily applied rules:

- Funds deposited before January 1, 2016 escheated on January 1, 2026 if no valid claim was filed. Ohio Rev. Code § 169.08(I)(1) (as amended by H.B. 96);

- Funds deposited after January 1, 2016 will escheat ten years after deposit in the UFTF—unless claimed at any time during that period. Ohio Rev. Code § 169.09(I)(2); and

3

- Even after escheat, claimants still may recover escheated funds until January 1, 2036 by filing a valid claim. Ohio Rev. Code § 169.08(I)(3)(b).[2]

9. The amendments direct the transfer of escheated funds to the Ohio Cultural and Sports Facility Performance Grant Fund, created under Ohio Rev. Code § 123.282. Ohio Rev. Code § 169.08(I)(4).

10. This transfer function is purely administrative; it does not alter any notice, reporting, or rights to claim funds embedded in Chapter 169.

## III. ARGUMENT

### A. STANDARD OF REVIEW

The standard of review for a Rule 12(c) motion is the same as that for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Conrad v. U.S. Bank Nat'l Ass'n*, 391 F. Supp. 3d 780, 786 (S.D. Ohio 2019) (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *Fritz*, 592 F.3d at 722).

To show grounds for relief, Federal Rule 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Rule "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

---

[2] In separate pending state court litigation, there is currently a TRO in place prohibiting "certifying, transferring, diverting, reclassifying, liquidating, or otherwise expending funds held in the Ohio Unclaimed Funds Trust Account." *John Reid, et al. v. Sheryl Maxfield, et al.*, Franklin County Court of Common Pleas Case No. 25CV10760, Amended TRO. Although Defendants are challenging that TRO, they continue to abide by its terms.

4

not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). In determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

Accordingly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" the case should be dismissed. *Id.*

Particularly relevant in assessing this Motion is the law-of-the-case doctrine. "The law-of-the-case doctrine declares that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.'" *Greene v. AB Coaster Holdings, Inc.*, 2010 WL 3119399, *2 (S.D. Ohio Aug. 6, 2010) (Sargus, J.) (quoting *Arizona v. California*, 460 U.S. 605 (1983), and *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)). Thus, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Miller v. Maddox*, 866 F.3d 386, 389–90 (6th Cir. 2017) (quoting *Arizona*, 460 U.S. at 618, and *Scott v. Churchill*, 377 F.3d 565, 569–70 (6th Cir. 2004)). Importantly, the doctrine is specifically "intended to enforce a district court's adherence to an appellate court's judgment." *Id*. The doctrine extends to rulings on preliminary injunctions; so long as the appellate court "has issued [a] fully considered appellate

5

ruling on an issue of law, then that opinion becomes the law of the case." *Howe v. City of Akron*, 801 F.3d 718, 740 (6th Cir. 2015) (internal quotation omitted).

Moreover, the "doctrine bars challenges to a decision made at a previous stage of litigation which could have been challenged in a prior appeal, but were not." *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 505 F. App'x 430, 435 (6th Cir. 2012); *see also Burley v. Gagacki*, 834 F.3d 606, 619 (6th Cir. 2016) ("The law-of-the-case doctrine bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not." (citations omitted)). Thus, "[a] party who could have sought review of an issue or a ruling during a prior appeal is deemed to have waived the right to challenge that decision thereafter, for '[i]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.'" *Burley*, 834 F.3d at 619 (quoting *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997)).

### B. THE ELEVENTH AMENDMENT BARS PLAINTIFFS' STATE-LAW CLAIMS (Counts III, IV, V, and VII).

The Court lacks jurisdiction over Plaintiffs' state-law claims under the Eleventh Amendment, which prevents a federal court from issuing an order instructing state officials on how to comply with state law.

#### 1. This Court Has Already Decided It Lacks Jurisdiction Over Plaintiffs' State-Law Claims.

This Court previously held that it lacked subject-matter jurisdiction over Plaintiffs' state-law claims because of sovereign immunity and *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–06 (1984). (*See* ECF No. 44 at PageID 477 ("This Court lacks subject matter jurisdiction over Plaintiffs' state-law takings claim brought under Article I, Section 19 of the Ohio Constitution").) Plaintiffs could have appealed that part of the Order but did not. (*See Bleick*, Appellants' Brief, Sixth Cir. Case No. 25-3978, Doc. 18.) It is therefore the law of the case that

6

this Court lacks subject-matter jurisdiction over Plaintiffs' state-law claims, and the Court should enter judgment in favor of Defendants on those claims. *See Burley*, 834 F.3d at 619.

### 2.      The Eleventh Amendment Bars Plaintiffs' State-Law Claims.

The law-of-the-case doctrine aside, the Eleventh Amendment, as interpreted by *Pennhurst* and its progeny, bars Plaintiffs' state-law claims. The Eleventh Amendment "prohibits suits naming the state or one of its agencies," including suits brought against state officials in their official capacity. *In re Ohio Execution Protocol Litig.*, 709 F. App'x 779, 783 (6th Cir. 2017) (citations omitted). "There are three exceptions to sovereign immunity: (1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), applies." *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017) (cleaned up).

With respect to state-law claims, however, only the waiver exception will avoid sovereign immunity. *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456–57 (6th Cir. 1998) ("It is…well-established that a federal court cannot entertain a lawsuit against state officials for violations of state law unless the state has waived its immunity under the Eleventh Amendment."). Congress cannot abrogate immunity for claims arising under state law, and the *Ex Parte Young* exception "does not extend to prospective injunctive or declaratory relief based on alleged violations of state law." *In re Ohio Execution Protocol*, 709 F. App'x at 783 (citing *Pennhurst*, 465 U.S. at 106 (1984)). "'[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.'" (ECF No. 44 at PageID 477 (quoting *Pennhurst*, 465 U.S. at 106).) Accordingly, absent waiver, suits against state officials seeking a declaration that they violated state law are barred by the Eleventh Amendment. *Id.*; *see also Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005) (en banc) ("[T]he states' constitutional immunity from suit prohibits *all* state-law claims filed against a [s]tate in

7

federal court, whether those claims are monetary or injunctive in nature." (emphasis in original)); *Gmeiner v. Kent*, 807 F. Supp. 3d 768, 776–77 (W.D. Mich. 2025) ("[W]hether we compel Defendant to conform her conduct to state law through a preliminary injunction or merely instruct her how to do so through a declaratory judgment…the result is the same: Sovereign Immunity does not allow the Court to intrude on Michigan's sovereignty by advising one of its officials on how to act under state law.").

Here, Plaintiffs pay lip service to the Eleventh Amendment, yet they seek to subvert it. Plaintiffs claim to assert their state-law causes of action "subject to the Eleventh Amendment" and *Pennhurst*. (*See, e.g.*, ECF No. 1 at PageID 21, ¶ 121.) Yet, they invite the Court to declare that Defendants, all of whom are state actors, have violated state law. (*See id.* at PageID 25 (seeking a declaration that confiscation of funds violates the Ohio Constitution "to the extent cognizable here").) This Court lacks subject matter jurisdiction over any of Plaintiffs' state-law claims. Ohio has not waived its immunity under the Eleventh Amendment, and there is no other basis for federal jurisdiction over those claims. *Turker*, 157 F.3d at 457. Accordingly, the Court should enter judgment in Defendants' favor on Plaintiff's state-law claims—Counts III, IV, V, and VII.

### C. PLAINTIFFS' FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES BARS THEIR STATE-LAW CLAIMS.[3]

Even if sovereign immunity did not bar Plaintiffs' state-law claim, Ohio law does. When the Ohio General Assembly provides an administrative remedy, parties must exhaust it before seeking judicial intervention. *Waliga v. Coventry Twp.*, 2004-Ohio-5683, ¶ 12 (9th Dist.) (citing *Noernberg v. Brook Park*, 63 Ohio St.2d 26, 29 (1980), and *State ex rel. Lieux v. Westlake*, 154 Ohio St. 412, 415–16 (1951)). Plaintiffs are relieved of the exhaustion requirement only when

---

[3] To be clear, Defendants are raising the failure to exhaust administrative remedies as a defense only to Plaintiffs' state-law claims. Defendants recognize that the exhaustion doctrine would not apply to Plaintiffs' federal-law claims under *Knick v. Twp. of Scott*, 588 U.S. 180 (2019).

(1) exhaustion would be futile or (2) the remedy would be onerous or unusually expensive. *Id.* This requirement applies broadly, including where (as here) the party ultimately intends to raise constitutional challenges. *Id.* ¶¶ 16–18.[4]

The Ohio Supreme Court has repeatedly emphasized that exhaustion serves a critical gatekeeping function. In *Driscoll v. Austintown Associates*, 42 Ohio St.2d 263 (1975), the court held that a property owner challenging a zoning ordinance on constitutional grounds was required to first seek a variance—even though the zoning board lacked authority to decide constitutional questions. *Id.* at 274. The rationale is simple: constitutional issues should not be adjudicated prematurely when an administrative remedy might resolve or moot the dispute:

> It is a fundamental principle of law that constitutional questions will not be decided until the necessity for their decision arises. *State ex rel. Herbert v. Ferguson, Aud.*, 142 Ohio St. 496; *Village of Strongsville v. McPhee*, 142 Ohio St. 534; *Rucker v. State*, 119 Ohio St. 189. In the instant case, if the relator had followed the administrative remedy provided for in the ordinance, the village Board of Appeals might have given her a special permit. If such special permit were given to relator, then relator would not be prejudiced by the zoning ordinance which she seeks to have declared unconstitutional. Whether it will ever be necessary for this court to consider the constitutionality of this zoning ordinance, in order to determine relator's right to a building permit, cannot be determined until relator has exhausted the administrative remedies provided for by that ordinance.

*Lieux*, 154 Ohio St. 412 at 415–16 (cleaned up).

Ohio courts have continued to apply this principle in diverse contexts. *See, e.g.*, *Jones v. Chagrin Falls*, 77 Ohio St.3d 456, 459 (1997) (endorsing *Driscoll*); *Karches v. City of Cincinnati*, 38 Ohio St.3d 12, 17 (1988) (discussing *Driscoll* and the exhaustion requirement); *Walker v. City of Toledo*, 2017-Ohio-416, ¶¶ 2, 5, 7, 35 (6th Dist.) (rejecting putative class action constitutional challenge to automated traffic law enforcement system where named plaintiff had failed to exhaust

---

[4] The Ohio Supreme Court has held that exhaustion of administrative remedies is a defense that may be raised in a motion to dismiss when apparent on the face of the complaint. *Mankins v. Paxton*, 142 Ohio App.3d 1, 9 (10th Dist. 2001). The defense appears on the face of a complaint where, as here, the administrative appeals process is set forth in statute. *See id.*

administrative remedies); *Accent Grp., Inc. v. N. Randall*, 2005-Ohio-5345, ¶¶ 10–15 (8th Dist.) (requiring exhaustion before constitutional challenge could be brought); *Waliga*, 2004-Ohio-5683, ¶¶ 17–19 (affirming dismissal of constitutional challenges for failing to exhaust administrative remedies); *Mankins*, 142 Ohio App.3d at 5 (42 U.S.C. § 1983 action). Most recently, in *Pivonka v. Corcoran*, 2020-Ohio-3476, the Ohio Supreme Court reiterated the principle that "even though administrative agencies cannot adjudicate constitutional questions…a party cannot circumvent the administrative-review process by first raising a constitutional challenge in the common pleas court." *Pivonka v. Corcoran*, 2020-Ohio-3476, ¶ 24. "***[T]he proper procedure for raising a constitutional challenge is to first exhaust all administrative remedies***." *Id.* (emphasis added).

That precedent controls. Plaintiffs' alleged injuries—loss of access to or control over unclaimed funds—are precisely the type of harm the administrative process exists to remedy. Plaintiffs do not allege that the straightforward administrative remedies are unavailable or burdensome. Instead, they attempt to circumvent the system by asserting that the administrative process cannot resolve their constitutional concerns. This argument is both legally incorrect and doctrinally irrelevant. Allowing litigants to bypass administrative channels merely by labeling their claims "constitutional" would nullify the exception entirely—precisely what Ohio courts have rejected for decades. The exhaustion requirement applies even when the administrative process cannot award the precise relief a plaintiff seeks, because exhaustion may still eliminate the need for constitutional adjudication altogether. *See, e.g.*, *Nemazee v. Mt. Sinai Med. Ctr.*, 56 Ohio St.3d 109, 111 (1990) ("[P]rior to seeking court action in an administrative matter, the party must exhaust the available avenues of administrative relief through administrative appeal.").

Moreover, Plaintiffs' premise here (that the administrative process comes after an alleged constitutional violation) is fundamentally flawed. By statute and regulation, the administrative

10

claims process occurs *before* any alleged taking—namely, before funds escheat to the State. Had Plaintiffs fully pursued administrative remedies, they would not have any funds subject to escheat. Plaintiffs were required to (and still can) avail themselves of the codified procedure to claim their money, relieving this Court of having to wade into their constitutional challenges. Their failure to do so precludes their state law claims here, which should be dismissed on the face of the pleadings.[5]

**D.      DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF BECAUSE PLAINTIFFS HAVE NO IRREPARABLE HARM.**

A plaintiff seeking a permanent injunction must satisfy a four-factor test. Such a plaintiff must demonstrate that: (1) he or she has suffered irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In other words, both preliminary and permanent injunctions require a showing of irreparable harm. *Compare Bleick*, 169 F.4th at 715, *with eBay*, 547 U.S. at 391 (both requiring irreparable harm). The Sixth Circuit has already held that Plaintiffs lack irreparable harm: "At issue in this case is only money." *Bleick*, 169 F.4th at 715. That ruling is law of the case. Accordingly, the Court should dismiss Plaintiffs' requests for injunctive relief.

Even if the Sixth Circuit's ruling were not the law of the case, it prescribes the correct outcome here. The United States Supreme Court has made clear that "[s]o long as the property owner has some way to obtain compensation after the fact, governments need not fear that courts will enjoin their activities." *Id.* (quoting *Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019)). In

---

[5] In separate state court litigation, the Magistrate presiding over a preliminary injunction hearing held that there was no exhaustion requirement—ignoring settled, binding Supreme Court of Ohio precedent on this topic. *Reid*, Franklin County Court of Common Pleas Case No. 25CV10760. Defendants are challenging the Magistrate's holding.

11

*Knick*, the Supreme Court clarified that, while a taking gives plaintiffs a right to sue for damages in federal court, that does not give them the right to seek an injunction when they have post-taking remedies. *Knick*, 588 U.S. at 202 ("Given the availability of post-taking compensation, barring the government from acting will ordinarily not be appropriate."). That remains true under either Plaintiffs' takings or due process claims and for either a preliminary or permanent injunction— they must show irreparable harm, and the availability of post-taking compensation is conclusive proof that Plaintiffs have an adequate remedy at law, as both this Court and the Sixth Circuit have already recognized.

It bears mentioning that Plaintiffs' Complaint makes no mention whatsoever of why they have failed to pursue the administrative remedy available to them. Had they pursued that remedy and established they are entitled to the funds they claim belong to them, that process would have provided them with their funds. They can even pursue that process now, and even after their funds are deemed abandoned and escheat to the State; therefore, the statutory scheme still provides them with the very compensation required to remedy any purported taking or due process violation. Plaintiffs utterly fail to explain why that remedy is inadequate to compensate them for any alleged loss. *See Bleick*, 169 F.4th at 714 ("Why the plaintiffs did not simply claim their funds by the means provided in the statute...the complaint does not say."). In light of the statutory remedy available to Plaintiffs, which provides them an adequate remedy at law, the Complaint fails to allege any facts that would demonstrate they are entitled to injunctive relief.

### E.      PLAINTIFFS ARE NOT ENTITLED TO DECLARATORY JUDGMENT.

Plaintiffs seek declaratory judgment as a remedy for each substantive Count of the Complaint and also as a standalone claim as set forth in Count VI of the Complaint. (*See* Compl., ECF No. 1, at PageID 18, ¶ 100; PageID 19, ¶ 106; PageID 21, ¶ 119; PageID 21, ¶ 121; PageID 22, ¶ 126; PageID 25, ¶ 148; PageID 23–24, ¶¶ 133–140.) In their prayer for relief, Plaintiffs seek

a declaration "that the proposed confiscation/diversion of unclaimed funds violated the United States Constitution (and, to the extent cognizable here, the Ohio Constitution)." (*Id.* at PageID 25). Plaintiffs are not entitled to declaratory judgment, regardless of how presented.

### 1. The Amendments to H.B. 96 Do Not Result in a Taking.

Plaintiffs contend that H.B. 96 constitutes as a mechanism for the State of Ohio to engage in unconstitutional takings of Ohioans' personal property. Despite their allegations, escheat statutes, like that amended by H.B. 96, have been around—and have withstood constitutional challenges—for decades. The amended Statute here is constitutional, and the escheat to the State of abandoned property is not a taking.

### a. H.B. 96 is presumed constitutional until proven otherwise.

Courts begin statutory analysis with a presumption that legislative enactments are constitutional, and the "party challenging the constitutionality of a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt." *Plain Loc. Sch. Dist. Bd. of Educ. v. DeWine*, 486 F. Supp. 3d 1173, 1196 (S.D. Ohio 2020) (quoting *State ex rel. Dix v. Celeste*, 11 Ohio St.3d 141, 142 (1984)). Further, "[a] facial challenge is 'the most difficult challenge to mount successfully,' because a plaintiff must carry a 'heavy burden' to 'establish that no set of circumstances exists under which the Act would be valid.'" *Williams v. Cuyahoga Cnty.*, 776 F. Supp. 3d 653, 670 (N.D. Ohio 2025) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Thus, "[c]ourts construe statutes to avoid constitutional difficulty when 'fairly possible.'" *Eubanks v. Wilkinson*, 937 F.2d 1118, 1122 (6th Cir. 1991) (quoting *Crowell v. Benson*, 285 U.S. 22 (1932)). Plaintiffs cannot show that there is no set of circumstances under which the Act would be valid.

### b. As amended, the Statute is a true escheat statute.

Escheat is a centuries-old doctrine providing that sovereign title vests in real or personal property when no owner exists. *See* Note, *Origins and Development of Modern Escheat*, 61 Colum.

13

L. Rev. 1319, 1326–27 (1961). Initially a principle of intestate succession, escheat later expanded to abandoned property. *See id.* at 1319–20, 1330. Rather than adopting "true" escheat statutes for personal property, many states enacted "custodial" escheat regimes under which the state held property for the benefit of absent owners without necessarily taking title. *See id.* at 1330. Ohio's enactment of H.B. 96 represents a policy shift from custodial escheat to pure escheat—both of which are constitutional and have been upheld for decades.

Among the extensive authority sustaining the constitutionality of escheat statutes, two United States Supreme Court decisions are dispositive. In *Standard Oil Co. v. New Jersey*, 341 U.S. 428, 430 (1951), the plaintiff challenged New Jersey's Escheat Act, which provided that unclaimed personal property escheated to the State after fourteen years. The plaintiff asserted that the statute effected an unconstitutional deprivation of property. *Id.* at 431–32. The Supreme Court rejected that claim, holding that "a state, subject to constitutional limitations, may use its legislative power to dispose of property within its reach, belonging to unknown persons." *Id.* at 436.

Thirty years later, the Supreme Court upheld an Indiana statute providing for the lapse of unused mineral rights after twenty years. *Texaco, Inc. v. Short*, 454 U.S. 516, 518–19 (1982). That statute extinguished mineral owners' interests and vested them in private parties—the surface owners. *Id.* The appellants argued that the law effected an unconstitutional taking. *Id.* at 522. The Court disagreed, explaining that "the State has the power to condition the permanent retention of [a] property right on the performance of reasonable conditions that indicate a present intention to retain the interest." *Id.* at 526. The Court concluded that "as a result of the failure of the property owner to perform the statutory condition, an interest in fee was deemed as a matter of law to be abandoned and to lapse." *Id.* at 529. That was not a taking because "this Court has never required the State to compensate the owner for the consequences of his own neglect." *Id.* at 530.

14

Courts have continued to uphold comparable statutes in the decades since *Standard Oil Co.* and *Texaco*. *See, e.g.*, *Delaware v. New York*, 507 U.S. 490, 497 (1993) ("States as sovereigns may take custody of or assume title to abandoned personal property as *bona vacantia*, a process commonly…called escheat."); *Texas Mun. League Intergovernmental Risk Pool v. Texas Workers' Comp. Comm'n*, 74 S.W.3d 377, 382 (Tex. 2002) ("Under absolute-escheat statutes, the state acquires title to property through operation of law or a judicial proceeding" and recognizing that escheat statutes "are constitutional if they give potential claimants notice after the state acquires the funds and an administrative and judicial hearing to adjudicate claims.").[6] The amended Statute here is consistent with this long-sustained framework.

As amended, Ohio Rev. Code § 169.01 *et seq.* forecloses Plaintiffs' takings claims. Once property has been abandoned, "the former owner retains no interest for which he may claim compensation." *Texaco*, 454 U.S. at 530. "[I]t is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires compensation." *Id.* at 517. A State may impose reasonable conditions on property ownership, including conditions that evidence a present intent to retain an interest. *See id.* at 526. Here, that reasonable condition is the filing of a claim to reclaim unclaimed property. If an owner fails or refuses to do so—as Plaintiffs have here—the State is not required "to compensate the owner for the consequences of his own neglect." *Id.* at 530.

H.B. 96 falls squarely within the constitutional bounds established by *Standard Oil Co.* and *Texaco*. What Plaintiffs characterize as a taking is instead the lawful imposition of reasonable

---

[6] *See also, e.g.*, *Christianson v. King Cnty.*, 239 U.S. 356 (1915) (holding that the legislature had authority to enact legislation codifying an escheat on death statute, and that an escheat under the law was proper); *Sec. Sav. Bank v. State of California*, 263 U.S. 282 (1923) (holding that abandoned funds properly escheated to the State of California after providing reasonable notice).

15

conditions on property ownership, with the loss of ownership resulting from "the owner's failure to make any use of the property—and not the action of the State." *Id.* at 530.[7] In fact, the legislation at issue here is consistent with other similar statutes, both federal and state. *See, e.g.*, 12 U.S.C. § 1822(e);[8] Haw. Rev. Stat. § 523A-19;[9] *Narrigan v. Goldberg*, 772 F. Supp. 3d 182, 188 (D. Mass. 2025) (quoting Mass. Gen. Law ch. 200A, § 9(a)).[10] Dozens of states have escheat statutes under which the state takes ownership of certain personal property like insurance company liquidation proceeds without notice or formal proceedings.[11]

Plaintiffs' reliance on two Ohio Supreme Court decisions is misplaced. First, they invoke *Sogg v. Zurz*, 121 Ohio St.3d 449 (2009), claiming that the court stated funds in the UFTF "are not abandoned; they are the property of their owner." (Compl., ECF No. 1 at PageID 6, ¶ 25.) That argument misconstrues *Sogg*. The court addressed whether, under the prior custodial framework

---

[7] The above analysis is the same under both the Federal and Ohio Constitutions. *See, e.g.*, *State ex rel. New Wen, Inc. v. Marchbanks*, 2020-Ohio-63, ¶¶ 14-16 (analyzing takings claims under United States and Ohio Constitutions together). To the extent the analysis is different, it does not matter here. As discussed, the escheat of funds in the UFTF is not a taking at all, making Article I, Section 19 inapplicable.

[8] The Federal Deposit Insurance Corporation ("FDIC") deposits unclaimed failed bank funds with respective state authorities "[i]f an insured depositor fails to make a claim for his, her, or its insured or transferred deposit within 18 months after the [FDIC] initiates the payment of insured deposits[.]" 12 U.S.C. § 1822(e)(2). If those funds go unclaimed for ten years, "the deposit shall be immediately refunded to the [FDIC] and become its property." *Id.* § 1822(e)(5). All rights of the depositor are subsequently barred. *Id.*

[9] Under Hawaii's unclaimed property law, monies in its unclaimed funds trust fund worth less than $100 "escheat to the State" and are "transferred to the general fund" after 10 years.

[10] In Massachusetts, immediately upon receipt of funds from holders, unclaimed funds "[v]est[] in the commonwealth."

[11] *E.g.*, Wash. Rev. Code § 48.31.155; W. Va. Code § 33-10-38; Vt. Stat. tit. 8, § 7084; Tenn. Code § 56-9-333; Ind. Code § 27-9-3-43; 40 Pa. Stat. & Cons. Stat. § 221.47; S.D. Codified Laws § 58-29B-128; Haw. Rev. Stat. § 431:15-335; Mich. Stat. § 500.8145; Colo. Rev. Stat. § 10-3-544; N.D. Cent. Code § 26.1-06.1-44; N.C. Gen. Stat. § 58-30-235; Ga. Code § 33-37-44; Idaho Code § 41-3345; Mont. Code § 33-2-1374; R.I. Gen. Laws § 27-14.3-49; Conn. Gen. Stat. § 38a-947. None of the above statutes have been struck down as unconstitutional, and they implicate the exact same challenge Plaintiffs raise here: the validity of a state taking ownership over property after a given amount of time.

16

of Chapter 169, the State could retain interest accrued on unclaimed funds. *Sogg*, 121 Ohio St.3d at 449–50. The court held that interest remained payable precisely because the statute was ***not*** a true escheat statute and owners therefore retained their property rights. *Id.* at 450–51. Far from casting doubt on escheat statutes, *Sogg* expressly left open the possibility of a different result under a true escheat regime—such as the one now enacted—and nowhere suggested such a statute would be unconstitutional. Plaintiffs' reading improperly converts *Sogg* into a permanent bar on legislative amendment, a conclusion unsupported by the decision itself or any other authority.

Second, Plaintiffs rely on *City of Norwood v. Horney*, 110 Ohio St.3d 353 (2006), which they contend prohibits takings for private purposes. (ECF No. 20 at PageID 254.) *Norwood* would be relevant if the amended Statute effected a taking. It does not, so *Norwood* is irrelevant.

The amended Statute is constitutional, and statutes like it have been upheld for decades. Given the Court's obligation to construe statutes to avoid constitutional infirmity, Plaintiffs' takings claims fail as a matter of law.

### 2. The Amendments to H.B. 96 do not violate Due Process.

Plaintiffs' Due Process claims fail at the threshold because Plaintiffs admit they had actual notice of the very property they claim is at risk of being taken without due process. In their Complaint, Plaintiffs allege that they have "confirmed, via a review of the public database maintained by the Ohio Division of Unclaimed Funds, that the State is currently holding unclaimed property to which they are entitled[.]" (Compl., ECF No. 1, at PageID 4, ¶ 13.) The Sixth Circuit found that Plaintiffs had actual notice of "the pendency of the [escheatment] and afford[ed] them an opportunity to present their objections," which remedied any harm from the Act's allegedly unlawful notice provisions. *Bleick*, 169 F.4th at 715 (citing *Keene Grp., Inc. v. City of Cincinnati, Ohio*, 998 F.3d 306, 312 (6th Cir. 2021)). Their admissions, coupled with the Sixth Circuit's finding that actual notice defeats any Due Process claim, forecloses Plaintiffs' Due Process claims

17

here. *See Howe*, 801 F.3d at 740 (law of the case). Plaintiffs nevertheless attempt to premise their Due Process challenge on the assumption that the amended Statute operates as a taking, thus triggering Due Process protections. There was no taking that would have triggered Due Process protections; even if such protections were triggered, Plaintiffs' actual notice precludes their Due Process claims.

Due process requires notice and an opportunity to be heard before deprivation of property or liberty occurs. *Jones v. Flowers*, 547 U.S. 220, 223 (2006); *Texaco*, 454 U.S. at 523. Notice is constitutionally sufficient if "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). It does not, however, "require that a property owner receive actual notice before the government may take his property," *Jones*, 547 U.S. at 226, and "[p]roperty owners are charged with knowledge of relevant statutory provisions affecting the control or disposition of their property." *Texaco*, 454 U.S. at 517. Here, Plaintiffs received more than constructive or imputed notice; they had actual notice.

Even setting Plaintiffs' conceded actual notice aside, the statutory notice regime independently satisfies due process. In the context of escheat statutes, the Supreme Court has already determined what notice is constitutionally adequate. In *Standard Oil Co.*, the Court upheld New Jersey's unclaimed-property statute even though it required only notice by publication. *Standard Oil*, 341 U.S. at 443. That minimal notice was sufficient. Ohio provides much greater notice than the notice in *Standard Oil*. Before funds even enter the State's custody, holders must notify owners. Ohio Rev. Code § 169.03. Ohio requires detailed written notice at the owner's last known address, identifies the nature and amount of the funds, and provides a straightforward method for owners to preserve their interest. § 169.03(E). Ohio's statutory protections go further

18

still. The Division of Unclaimed Funds may audit holders for compliance with notice requirements. § 169.03(G). Before escheat, the Division annually issues particularized notice of unclaimed funds and maintains a publicly searchable website where owners may identify their property at any time, free of charge. § 169.06. Funds escheat only after an additional ten years, and even then owners retain a grace period—until 2036—to submit claims and receive reimbursement. § 169.08(I)(3)(b).

Plaintiffs' Due Process complaints presume that the amended Statute operates to deprive them of their property which, as explained above, it does not. Regardless, Plaintiffs' Due Process claims collapse under their own admissions that they had actual notice. And, even if Plaintiffs' own admissions of actual notice are disregarded, the Statute still provides multiple layers of statutory notice exceeding constitutional requirements.

**F.** **PLAINTIFFS HAVE FAILED TO DEMONSTRATE STANDING AND RIPENESS ON THEIR FEDERAL LAW CLAIMS.**

Defendants acknowledge that this Court previously determined that Plaintiffs had satisfied the standing and ripeness requirements for their federal claims. Defendants incorporate their arguments made within their Opposition to Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction here simply to preserve the record for any later appeals.

Plaintiffs have not proven a basis for standing for two reasons. First, they cannot self-inflict an injury to obtain standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) ("self-inflicted injuries" did not give plaintiffs standing); *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020) (collecting cases) ("[Plaintiff's] alleged injury looks like a self-inflicted injury, in which case he lacks standing to sue[.]"). Second, Plaintiffs will not suffer any harm until January 1, *2036*, at the earliest, which is not imminent; it is a decade off. For the same reasons Plaintiffs' claims fail because they have not exhausted administrative remedies, they also cannot prove that their claims are ripe.

19

## IV. CONCLUSION

Plaintiffs' Complaint is fundamentally flawed and fails to state a single viable claim for relief for the reasons set forth above. Accordingly, Defendants respectfully ask the Court to enter judgment on the pleadings in their favor and dismiss the Complaint with prejudice.

Respectfully submitted,

/s/ Aneca E. Lasley
Aneca E. Lasley (0072366) (Trial Attorney)
Andrea E. Howell (0101138)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, Ohio 43215
Tel: (614) 462-2700/Fax: (614) 462-5135
Aneca.Lasley@icemiller.com
Andrea.Howell@icemiller.com

Joshua Klarfeld (0079833)
ICE MILLER LLP
600 Superior Ave East, Suite 1600
Cleveland, OH 44114
Tel: (216) 394-5063
Joshua.Klarfeld@icemiller.com

John D. French (#37629-53)
(Pro Hac Vice)
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
Tel: (317) 236-2100/Fax: (317)-236-2219
JD.French@icemiller.com

*Special Counsel for Defendants Sheryl Maxfield (in her official capacity as Director of the Ohio Department of Commerce), Akil Hardy (in his official capacity as Superintendent of the Ohio Division of Unclaimed Funds), Robert Sprague (in his official capacity as Ohio Treasurer), and Joy Bledsoe (in her official capacity as Executive Director of the Ohio Facilities Construction Commission)*

20

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 11th day of May, 2026, a true and accurate copy of the foregoing was filed with the Court and will be served by the Court's e-filing system.

/s/ Aneca E. Lasley
Aneca E. Lasley (0072366)