**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARY BLEICK,** *et al.*, | ) | **Case No.: 2:25-cv-01140** |
| | ) | |
| **Plaintiffs,** | ) | **Judge Edmund A. Sargus, Jr.** |
| | ) | |
| v. | ) | |
| | ) | |
| **SHERYL MAXFIELD, in her official** | ) | |
| **capacity as Director of Commerce,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE**
**PLEADINGS**

**I.      INTRODUCTION**

Plaintiffs seek two types of relief: injunctive and declaratory. In their Motion for Judgment on the Pleadings (ECF No. 59) (the "Motion"), Defendants established that Plaintiffs cannot proceed beyond the pleadings stage on either. Plaintiffs' Response in Opposition (ECF No. 60) (the "Response") largely concedes Defendants' arguments and, where it does not, it addresses arguments Defendants never made. Plaintiffs have not provided this Court with any basis to save any of their claims.

As this Court and the Sixth Circuit already determined, Plaintiffs cannot establish irreparable harm. That conclusion is dispositive on Plaintiffs' claims for ***injunctive relief***. In response, Plaintiffs do not argue that they have alleged or *can* demonstrate irreparable harm; instead, they insist the Sixth Circuit's holding does not bar their claims for ***declaratory relief***. But Defendants never argued that the declaratory relief claims are barred by the absence of irreparable harm—they are barred for other reasons.

Plaintiffs' claims for declaratory relief fail as a matter of law based on settled U.S. Supreme Court authority in *Standard Oil Co. v. New Jersey*, 341 U.S. 428 (1951), and *Texaco, Inc. v. Short*,

454 U.S. 516 (1982). Plaintiffs attempt to distinguish those cases. But the distinctions they identify do not change the outcome here. Those cases remain good law, and they are determinative of Plaintiffs' claims for declaratory relief.

Turning to Plaintiffs' state law claims, first, they concede that those claims are barred by sovereign immunity. Nonetheless, they insist that sovereign immunity does not bar the entire action. Once again, they offer a "response" to an argument Defendants did not make. Plaintiffs also fail entirely to respond to Defendants' argument that Plaintiffs' state-law claims are barred by exhaustion. Thus, Plaintiffs offer no rebuttal whatsoever to those two independent bases for why their state law claims fail: sovereign immunity and exhaustion.

After conceding most of Defendants' arguments and offering only "responses" to arguments Defendants did not make, Plaintiffs identify no theory on which they can proceed beyond the pleadings. And, because they have not explained how any claim they would try to bring would fix the legal deficiencies plaguing their Complaint, any proposed amendment would be futile. Therefore, Defendants respectfully ask this Court to dismiss this case in its entirety and with prejudice.

## II. ARGUMENT

### A. THE RESPONSE FAILS TO EXPLAIN HOW PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF CAN SURVIVE WHERE THERE IS NO IRREPARABLE HARM.

Plaintiffs concede they cannot establish the irreparable harm element of their claims for injunctive relief, without which those claims all fail. Nowhere in the Response do Plaintiffs explain how this Court's and the Sixth Circuit's determination that Plaintiffs have not pleaded, and cannot prove, irreparable harm are anything but dispositive on their claims for injunctive relief. On the contrary, Plaintiffs concede, as they must, that the Sixth Circuit ruled that they failed to demonstrate irreparable harm, and did so repeatedly and conclusively. (ECF No. 60 at PageID

2

800.) ("The Sixth Circuit affirmed on the same limited ground, stating that it would 'begin and end with the absence of any irreparable harm.'") (citing *Bleick v. Maxfield*, 169 F.4th 713, 715 (6th Cir. 2026)); *see also id.* at PageID 800 ("What *Knick* [*v. Twp. of Scott*, 588 U.S. 180 (2019)] limits, in circumstances where compensation remedies are available, is the availability of injunctive relief.")

Thus, regardless of the impact of the Sixth Circuit's ruling on "whether HB 96 effects a taking, whether the taking is for a constitutionally permissible public use, whether HB 96 violates due process, or whether Plaintiffs may obtain declaratory relief," (*id.* at PageID 800.), its decision on Plaintiffs' appeal of this Court's preliminary injunction ruling does, indeed, preclude their claims for injunctive relief. This Court and the Sixth Circuit have already ruled on that very issue, and because they concluded that there was no irreparable harm, Plaintiffs' claims for injunctive relief all fail. *See Bleick v. Maxfield*, 169 F.4th 713, 715 (6th Cir. 2026) ("At issue in this case is only money.")

**B.     PLAINTIFFS' NON-INJUNCTIVE CLAIMS ALL FAIL AS A MATTER OF LAW.**

Plaintiffs' Response contends that Defendants' Motion "seeks dismissal of Plaintiffs' Complaint in its entirety premised on an improper attempt to transform preliminary rulings concerning irreparable harm and available remedies into a final adjudication of Plaintiffs' constitutional claims." (ECF No. 60 at PageID 796.)[1] Not so. True, Defendants argue that the Sixth Circuit's ruling that Plaintiffs lack irreparable harm requires dismissal of Plaintiffs' claims for *injunctive* relief. (ECF No. 59 at PageID 785-86.) But Defendants do not argue that Plaintiffs' claims seeking *declaratory* relief are barred for the same reason—they are barred for other reasons.

---

[1] Apparently believing that argument somehow defeats Defendants' Motion, Plaintiffs repeat it throughout their brief. (*Id.* at PageID 796, 797, 798, 799, 800.)

1. **Plaintiffs' Declaratory Judgment Claim Based on an Alleged Taking Fails as a Matter of Law.**

   a. **The challenged portions of H.B. 96 do not constitute a taking under binding U.S. Supreme Court authority.**

To avoid the centuries-old, black-letter law of escheat, Plaintiffs attempt to distinguish *Standard Oil Co.*, 341 U.S. 428 and *Texaco*, 454 U.S. 516. Specifically, they argue that *Standard Oil* and *Texaco* are fundamentally different from this case because they "did not involve Ohio's custodial UFTF framework, did not address *Sogg* [*v. Zurz*, 121 Ohio St.3d 449, 2009-Ohio-1526]'s recognition that Ohio unclaimed funds are 'not abandoned,' and did not hold that a State may avoid the Takings Clause by converting previously recognized private property into public property through legislative declaration." (ECF No. 60 at PageID 807.) Plaintiffs' reasoning is incorrect and hopelessly circular.

First, Plaintiffs do not—and cannot—explain why the "custodial UFTF framework" makes any difference here. *Texaco* and *Standard Oil* stand for the proposition that, without running afoul of the Takings Clause, a state may regulate and escheat abandoned property. *Texaco*, 454 U.S. at 526 ("From an early time, this Court has recognized that States have the power to permit unused or abandoned interests in property to revert to another after the passage of time."); *Standard Oil*, 341 U.S. at 441-42 ("Unclaimed property at the disposal of the state may include deposits in banks doing business in the particular state . . . [s]uch a deposit 'is a part of the mass of property within the state whose transfer and devolution is subject to (the same) state control[.]'"). They carve out no exceptions for property held in the State's custody for the benefit of absentee owners. *Standard Oil* acknowledges just the opposite—the State may escheat abandoned property even when it "has the responsibility of looking after" that abandoned property. 341 U.S. at 435.

Second, Plaintiffs' *Sogg* argument is backwards. Prior to H.B. 96, the Ohio Supreme Court held that, **under the then-current statutes**, funds in the UFTF "are not abandoned; they are the

4

property of their owner." *Sogg*, 121 Ohio St. 3d 449, 2009-Ohio-1526, ¶ 16. But that finding was premised on the Court's holding that "[n]othing in the [statute] indicates that the General Assembly intended to treat unclaimed funds as if they had been abandoned, forfeited, or escheated." *Id.* at ¶ 8. Nothing in *Sogg* prevents the General Assembly from amending the statute as it did here, to specifically state that certain unclaimed funds are now, indeed, deemed abandoned and escheat.

Plaintiffs' reliance on *Sogg* is curious because, again, they fail to offer any legal framework for the Court to determine whether or not H.B. 96 is constitutional. In fact, Plaintiffs suggest that *Sogg* somehow usurps the State's ability to regulate and dispose of abandoned property entirely. Their position also amounts to an argument that the Ohio Supreme Court in *Sogg* somehow prohibited the General Assembly from ever amending the statutes governing the UFTF, a proposition that finds no support in the law and, instead, would violate the separation of powers. (ECF No. 60 at PageID 803-4.) Plaintiffs' argument cannot be squared with *Texaco*, *Standard Oil*, and their progeny, which make crystal clear that the State has the right to escheat abandoned property.

Finally, Plaintiffs contend that *Texaco* and *Standard Oil* "did not hold that a State may avoid the Takings Clause by converting previously recognized private property into public property through legislative declaration." (ECF No. 60 at PageID 807.) In fact, Plaintiffs have— quite succinctly—summarized the fundamental holdings of both cases. They both held that the State, through "legislative declaration"—*i.e.*, statutes—could "convert[] previously recognized private property into public property[.]"

Specifically, in *Texaco*, the Supreme Court upheld an Indiana statute providing for the lapse of unused mineral rights—what Plaintiffs call "previously recognized private property"— after twenty years. *Texaco*, 454 U.S. at 518–19. That statute extinguished mineral owners' interests

and vested them in private parties, the surface owners. *Id.* The appellants argued that the law effected an unconstitutional taking. *Id.* at 522. The Court disagreed, explaining that "the State has the power to condition the permanent retention of [a] property right on the performance of reasonable conditions that indicate a present intention to retain the interest." *Id.* at 526. Likewise, in *Standard Oil*, the Supreme Court upheld New Jersey's Escheat Act, which provided that unclaimed personal property escheated to the State after fourteen years.

In short, Plaintiffs cannot distinguish *Texaco* or *Standard Oil*, nor the centuries of escheat precedent that support them. (*See* ECF No. 59 at PageID 789.) The State has the right to escheat abandoned property. It did so here. Consequently, H.B. 96 is constitutional, and does not effect a Taking. Plaintiffs' declaratory judgment claim on Takings fails on the face of the pleadings as a matter of law.

>    **b.      The Brook Park economic development project is not a taking for a private use.**

Plaintiffs argue that they have plausibly alleged an unconstitutional taking because the State "intends to confiscate and divert unclaimed funds from their custodial purpose and use them to finance construction of a private sports stadium project for the Cleveland Browns." (ECF No. 60 at PageID 805.) That argument fails for two reasons.

First, for the reasons outlined above, the legislation does not effect a taking and, therefore, the ultimate use of the escheated funds is irrelevant. It is true that, if the State were appropriating private property, it generally would be required to do so for a public use. *See* R.C. § 163.021(A). But here, the State is not appropriating or taking private property; it is escheating abandoned property which, by definition, does not constitute a taking. (*See* ECF No. 59 at PageID 787-791.)

Second, even if the State were appropriating private property, it is doing so for a public use. The term "public use" is statutorily defined in the negative; the statute—R.C. 163.01(H)(1)—

6

lists items that ***do not*** qualify as public uses. However, the starting point for all those items that are not public uses is that the funds must be conveyed "***to a private commercial enterprise***." R.C. 163.01(H)(1) (emphasis added). Specifically, the statute provides that a public use "does not include any taking that ***is for conveyance to a private commercial enterprise***, economic development, or solely for the purpose of increasing public revenue" unless one of the statutorily enumerated uses applies. *See State ex rel. Ohio History Connection v. Moundbuilders Country Club Co.*, 2022-Ohio-4345, ¶ 43 (explaining that the statute "defines 'public use' by negation; a 'public use' does not include any taking that is for conveyance to a private commercial enterprise, for economic development, or solely for the purpose of increasing public revenue.").

Here, the Plaintiffs have failed to adequately allege private ownership of the escheated funds. While Plaintiffs repeatedly allege that the State will use the funds for a private enterprise, they offer only self-serving, conclusory allegations and allegations made on information and belief. (*See, e.g.*, ECF No. 1 ¶ 95 ("Defendants intend to reallocate those funds for private use without just compensation or due process.")) In contrast to Plaintiffs' conclusory allegations, Ohio courts have found repeatedly that stadiums that are open to the public serve a public purpose. In *Cincinnati Enter. Assoc., Ltd. v. Hamilton Cnty. Bd. of Comm'rs*, 141 Ohio App.3d 803 (1st Dist. 2001), the court examined whether Hamilton County was required to condemn certain property rights associated with the county's public baseball and football stadiums. *Id.* at 808-09, 821-22. The court held that the county had a legal duty to appropriate "property interests taken for the public good" and "property interests taken for the construction of public structures." *Id.* at 821-22. Because the stadiums served the "public good," the court held "that the commissioners [had] a clear legal duty to appropriate" the property interests. *Id.* Similarly, in *Superior Laundry & Towel Supply Co. v. City of Cincinnati*, the court examined whether Cincinnati's taking of property for

use as off-street parking for its baseball stadium was a taking for a public purpose. 168 N.E.2d 445, 446-47 (Ohio C.P. 1959). The court held that doing so was "a valid exercise of the right of eminant [sic] domain and is within the public purpose." *Id.* at 447.

Similarly, the Ohio Fifth District Court of Appeals recently held that construction of a sports, entertainment, or convention facility was a public use. *Muskingum Cnty. Convention Facilities Auth. v. Barnes Advert. Corp.*, 2025-Ohio-1864, 2025 WL 1483981 (5th Dist.). While one goal of the project was to increase public revenue, the ultimate goal was to provide a space to host public events, which would ultimately generate a profit. That constituted a public use because the use, though partly motivated by generating revenue and promoting tourism, would serve the public in ways that were not solely related to revenue. *Id*. at ¶ 25.

In fact, this Court has already ruled that the challenged portions of H.B. 96 are intended to promote economic development. (ECF No. 44 at PageID 476, fn. 2.) (citing *Kelo v. City of New London, Connecticut*, 545 U.S. 469, 483–90 (2005)) It is clear that promoting economic development alone falls within the "…traditionally broad understanding of public purpose." *Kelo v. City of New London, Connecticut*, 545 U.S. 469, 485 (2005). Further, this Court previously concluded that the challenged legislation makes clear that the funds will be part of "…a Brook Park economic development project." (ECF No. 44 at PageID 476, fn. 2 (citations omitted).) Therefore, even if the Court were to conclude the legislation constitutes a taking (which it does not), that taking would be, by definition, for a public purpose.

**2.      Plaintiffs' Declaratory Judgment Claim Based on an Alleged Due Process Violation Fails as a Matter of Law.**

Plaintiffs concede that the Sixth Circuit already held that they could not establish that the statute contains "deficient notice provisions because they had actual notice sufficient to know that the State held certain funds." (ECF No. 60 at PageID 809 (citing *Bleick v. Maxfield*, 169 F.4th 713,

8

715 (6th Cir. 2026).) To avoid the effect of that holding, they contend that their Due Process argument is based on three distinct concepts: "notice that funds were held in the UFTF, notice that HB 96 would change the legal status of those funds, and notice sufficient to allow affected owners to object before the deprivation occurred." (ECF No. 60 at PageID 810.)

Even accepting that Plaintiffs were required to receive so particular a notice (which the law does not support), they *still* had actual notice here. Since this case's inception, in their Complaint, they admit they had notice that they had funds held in the UFTF. (ECF No. 1 ¶¶ 13, 87-88.) They also admit they had actual notice that H.B. 96 would change the legal status of those funds. (*Id*. ¶¶ 26-32). And, given that they filed suit before H.B. 96 went into effect, they certainly had notice sufficient to allow affected owners—like the Plaintiffs—to object. (*See generally id.*) In other words, Plaintiffs have alleged that they had actual notice far exceeding any constitutional minimum, which is fatal to their Due Process claims. *See Bleick*, 169 F.4th at 715.

Additionally and alternatively, even if Plaintiffs did not have actual notice (despite their admissions to the contrary), the notice provisions in H.B. 96 satisfy due process. (ECF No. 59 at PageID 792-793; ECF No. 37 at PageID 374-377.) The Court in *Standard Oil Co.* upheld New Jersey's unclaimed-property statute even though it required only notice by publication, which is far less notice than the statute provides (and far less than the actual notice Plaintiffs admit they received). *See Standard Oil Co. v. New Jersey*, 341 U.S. 428 (1951); R.C. 169.03(E). Given that Plaintiffs not only had actual notice, but also that the statute provides notice above-and-beyond the requirements in *Standard Oil Co.*, it is clear that Plaintiffs' due process claims fail.

### 3. Plaintiffs Have No Response to Defendants' Argument that Plaintiffs' State-Law Claims Are Barred as a Matter of Law.

In the Motion, Defendants argued that Plaintiffs' state-law claims should be dismissed because (1) this Court already held it lacked subject-matter jurisdiction over the state-law claims;

9

(2) even if the Court had not so ruled, Plaintiffs' state-law claims are barred by sovereign immunity; and (3) alternatively, Plaintiffs' state-law claims are barred by their failure to exhaust. (ECF No. 59 at PageID 780-785.) Plaintiffs have failed to meaningfully respond to any of those arguments.[2]

> **a.** **This Court lacks jurisdiction over Plaintiffs' state-law claims based on the Eleventh Amendment/Sovereign Immunity.**

Plaintiffs do note that "[t]o the extent *Pennhurst* [*State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)] limits this Court's authority to compel compliance with state law, any such limitation applies only to Plaintiffs' state-law claims . . . [it is] not a merits defense to Plaintiffs' federal constitutional claims." (ECF No. 60 at PageID 812-813.) Defendants have not argued otherwise. (*See* ECF No. 59 at PageID 780-785.)

As this Court has already held, sovereign immunity and *Pennhurst* deprive this Court of jurisdiction over Plaintiffs' state-law claims. (*See* ECF No. 44 at PageID 477 ("This Court lacks subject matter jurisdiction over Plaintiffs' state-law takings claim brought under Article I, Section 19 of the Ohio Constitution[.]")) Indeed, suits against state officials seeking, as Plaintiffs do here, a declaration that they violated state law, are barred by the Eleventh Amendment. *Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005) (en banc) ("[T]he states' constitutional immunity from suit prohibits *all* state-law claims filed against a [s]tate in federal court, whether those claims are monetary or injunctive in nature."). Plaintiffs have no answer to that argument, which precludes their state law claims.[3]

---

[2] As noted above, Plaintiffs' failure to respond to arguments presented in Defendants' Motion constitutes a waiver. *See McPherson*, 125 F.3d at 995.

[3] As Plaintiffs note, sovereign immunity is jurisdictional, and a dismissal for lack of jurisdiction is ordinarily made without prejudice. *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005). However, as discussed in Section II.D, below, any amendment here would be futile.

  **b.**  **Plaintiffs' state-law claims also are barred by the exhaustion doctrine.**

Plaintiffs' failure to exhaust administrative remedies separately bars their state-law claims. *See Waliga v. Coventry Twp.*, 2004-Ohio-5683, ¶ 12 (9th Dist.) (citing *Noernberg v. Brook Park*, 63 Ohio St.2d 26, 29 (1980), and *State ex rel. Lieux v. Westlake*, 154 Ohio St. 412, 415–16 (1951)). That remains true even where a plaintiff brings a constitutional challenge. *Pivonka v. Corcoran*, 2020-Ohio-3476, ¶ 24 ("[T]he proper procedure for raising a constitutional challenge is to first exhaust all administrative remedies."). This is yet another argument from Defendants' Motion to which Plaintiffs failed to respond. Accordingly, Plaintiffs' state-law claims are barred by the exhaustion doctrine, and must be dismissed.[4]

  **C.**  **PLAINTIFFS HAVE FAILED TO DEMONSTRATE STANDING AND RIPENESS.**

As Defendants acknowledged in their Motion, this Court has previously determined that Plaintiffs satisfied the standing and ripeness requirements for their federal claims. (ECF No. 59 at PageID 793.) Nonetheless, Defendants stand on their prior standing and ripeness arguments simply to avoid having been deemed to waive this argument for appeal.

  **D.**  **THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS WITH PREJUDICE BECAUSE AMENDMENT WOULD BE FUTILE.**

Plaintiffs ask the Court to grant them leave to amend their Complaint if the Court is inclined to grant Defendants' Motion. (ECF No. 60 at PageID 813-814.) Respectfully, Plaintiffs fail to address how any amendment would remedy the legal deficiencies that permeate their Complaint. Because any amendment would be futile, Plaintiffs should not be given leave to amend.

---

[4] Plaintiffs respond to exhaustion by arguing that their *federal* constitutional claims do not require dismissal under state law by citing to a non-binding, unadopted Magistrate's Decision arising out of the Franklin County Court of Common Pleas which indicates that state law does not require exhaustion. However, Plaintiffs do not address Defendants' argument for dismissal of Plaintiffs' state law claims for this same reason. (*See* ECF No. 60 at PageID 800.)

While Courts do, at times, provide plaintiffs with the opportunity to cure pleading deficiencies with an amendment to complaints, the right to do so is not absolute. *See E.E.O.C. v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993) (holding that a plaintiff must be given at least one chance to amend their complaint when a more carefully drafted complaint may state a claim). However, the Sixth Circuit has held that "[d]enial [of a request for leave to amend] may be appropriate, however, where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, ***futility of the amendment***, etc.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (emphasis added).

Here, any proposed amendment to the Complaint would not and could not add any information that alters the well-settled law on escheat, sovereign immunity, or injunctive relief. Plaintiffs do not even offer a single example of any allegation that they would offer in an amended pleading, much less how such an as-yet unpleaded and unidentified allegation would result in a viable claim on any legal theory. Accordingly, Defendants respectfully request that this Court dismiss the case in its entirety, with prejudice, and without leave to amend.

III.    **CONCLUSION**

For the foregoing reasons, and those more fully set forth in Defendants' Motion for Judgment on the Pleadings, Defendants respectfully ask the Court to enter judgment on the pleadings and dismiss the Complaint with prejudice.

12

Respectfully submitted,

*/s/ Aneca E. Lasley*
Aneca E. Lasley (0072366) (Trial Attorney)
Andrea E. Howell (0101138)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, Ohio 43215
Tel: (614) 462-2700/Fax: (614) 462-5135
Aneca.Lasley@icemiller.com
Andrea.Howell@icemiller.com

Joshua Klarfeld (0079833)
ICE MILLER LLP
600 Superior Ave East, Suite 1600
Cleveland, OH 44114
Tel: (216) 394-5063
Joshua.Klarfeld@icemiller.com

John D. French (#37629-53)
*(Pro Hac Vice)*
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
Tel: (317) 236-2100/Fax: (317)-236-2219
JD.French@icemiller.com

*Special Counsel for Defendants Sheryl Maxfield (in her official capacity as Director of the Ohio Department of Commerce), Akil Hardy (in his official capacity as Superintendent of the Ohio Division of Unclaimed Funds), Robert Sprague (in his official capacity as Ohio Treasurer), and Joy Bledsoe (in her official capacity as Executive Director of the Ohio Facilities Construction Commission)*

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 29th day of June, 2026, a true and accurate copy of the foregoing was filed with the Court and will be served by the Court's e-filing system.

/s/ Aneca E. Lasley
Aneca E. Lasley (0072366)